**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**CIVIL DIVISION**

**CLEVELAND COMMUNICATIONS,**
        **INC.**

        **Plaintiff,**

v.

**LORAIN COUNTY BOARD OF**
        **COMMISSIONERS,**

    **and**

**DAVID J. MOORE, an individual,**

    **and**

**JEFFREY ARMBRUSTER, an individual,**

    **and**

**JEFFREY RIDDELL, an individual,**

    **Defendants.**

**Case No. 1:23-cv-1561**

**Judge _____**

**(JURY DEMAND ENDORSE HEREON)**

### **COMPLAINT FOR EQUITABLE RELIEF AND MONEY DAMAGES**

Plaintiff CLEVELAND COMMUNICATIONS, INC. ("CCI"), by and through its undersigned counsel, brings this Complaint against Defendants LORAIN COUNTY BOARD OF COMMISSIONERS (the "Board"), DAVID J. MOORE ("Moore"), JEFFREY ARMBRUSTER ("Armbruster" and together with Moore and named and unnamed co-conspirators, the "Co-Conspirators"), and JEFFREY RIDDELL ("Riddell" and together with Moore, the "Board Majority") (collectively, the "Defendants") and alleges as follows:

## INTRODUCTION

1.  This action arises from a course of unlawful and corrupt conduct involving a contract to upgrade a countywide emergency radio communications system for Lorain County to be paid for by millions of dollars in federal grant money.  Despite the overwhelming support of police and fire emergency responders for CCI to upgrade the radio system with L3 Harris Radio products, the Co-Conspirators and their confederates schemed to steer the contract to Motorola Solutions ("Motorola") for reasons other than the public good.  Their corrupt methods included trying to extort a second county commissioner into voting for Motorola and against CCI, and making false allegations to initiate criminal investigations against the commissioner and CCI which they leaked to the media and in public meetings.  But notwithstanding a pattern of corrupt activity intended to intimidate, injure, and deceive, the Lorain County Board of Commissioners acted in the public interest and awarded by a 2-0 vote the contract to CCI and appropriated the federal funds for the contract.  Defendant Moore, the third County Commissioner, who was willing to cross the line into unlawful activity to control the awarding of the contract, did not attend the vote.

2.  But Moore, Armbruster, and their confederates, known and unknown,  had not given up.  With false representations of an improper relationship between CCI and at least one County Commissioner, Defendant Moore swayed the new Commissioner, Jeff Riddell, to support a resolution to rescind the valid and executed contract.  On January 9, 2023, Moore and Riddell, just days into his first term, voted as a 2-1 Majority to revoke the valid contract and to withdraw its federal funding.  They did so at a meeting where they faced outrage from the first responders of Lorain County, and denied CCI basic due process and equal protection rights in

taking away CCI's contract, a clearly established property right.  They now undertake a second

selection process where it is predetermined that the contract will be awarded to Motorola.

3.      The question that will be answered in this action is why Defendants would engage

in such shocking and corrupt conduct, including extortion, fraud, and obstruction of justice, to

subvert the public interest and the safety of the first responders whose lives depend on the radios

at issue.

## PARTIES

### *Plaintiff Cleveland Communications, Inc.*

4.      CCI is an Ohio corporation with its main business address at 5220 Hauserman

Road, Parma, Ohio 44130.  CCI has been qualified to conduct business in the State of Ohio at all

relevant times.

5.      CCI, among other things, is a full service two-way radio seller and service

organization, specializing in designing, installing, and servicing communications systems,

including those used by public safety organizations.  Prior to being awarded the Agreement to

Provide Goods and Services to Lorain County, Ohio on December 21, 2022 (the "Contract")—

the contract at issue in this action—CCI began serving the emergency communications needs of

ten or more local governments in Lorain County (the "County").

6.      Defendants have engaged in a pattern of corrupt activity proximately causing

injury to CCI in its business and property.

7.      CCI has standing to bring federal claims under the federal RICO statute pursuant

to 18 U.S.C. §§ 1961, 1962, and 1964 because the Co-Conspirators have by a pattern of

racketeering activity injured CCI in its business and property; and under 42 U.S.C. § 1983

because the Board Majority deprived CCI of substantive and procedural due process rights and

equal protection under the Fourteenth Amendment when the Board Majority rescinded the Contract and engaged in additional conduct with an intent to injure CCI.

### Defendant Lorain County Board of Commissioners

8.      The Lorain County Board of Commissioners is the statutorily authorized board for Lorain County, Ohio, conducting public business at 226 Middle Avenue, Fourth Floor, Elyria, Ohio 44035.

9.      Pursuant to its statutory authority under O.R.C. 305.01, *et seq.*, the Board conducts business on behalf of Lorain County, including but not limited to reviewing and approving contracts for the Lorain County Public Safety Radio System Program.  The Board acting with full statutory authority awarded the Contract to CCI on December 21, 2022, executed and delivered the Contract to CCI and then rescinded the Contract with CCI on January 9, 2023, without any right to do so.

### Defendant David J. Moore

10.     David J. Moore is an individual residing at 173 Terra Lane, Amherst, Ohio 44001.

11.     Moore was a Commissioner on the Lorain County Board of Commissioners between 2001 and 2005, and has currently served in that capacity since 2021.  Moore has engaged in a series of unlawful acts, including racketeering activity and federal constitutional violations, with the goal of controlling Lorain County government and the awarding of contracts and other benefits.  In particular, Moore extorted fellow Commissioner Hung and along with his confederates exposed her embarrassing personal details when she would not submit to the Co-Conspirators' plan to deny the contract to CCI.  Moore is a member of the enterprise described herein and the conspiracy to engage in a pattern of racketeering activity.  He is also a member of the Board Majority that deprived CCI of procedural Due Process and Equal Protection rights.

### *Defendant Jeffrey Armbruster*

12.      Jeffrey Armbruster is an individual residing at 33030 Woodhaven Circle, North Ridgeville, Ohio 44039.

13.      Armbruster is today the Lorain County Administrator, the chief executive official of Lorain County, and the former safety director of North Ridgeville.  Armbruster extorted Commissioner Hung and then Lorain County 911 Director Harry Williamson in a venal effort to steer the contract to Motorola.  Armbruster is a participant in the enterprise described herein and the conspiracy to engage in a pattern of racketeering activity.

### *Defendant Jeffrey Riddell*

14.      Jeffrey Riddell is an individual residing at 9611 Dean Rd., Vermillion, Ohio 44089.  Riddell undertook all actions described herein within Lorain County.

15.      Riddell joined the Board in January 2023, just days before voting in favor of rescinding the Contract.  Riddell claims to have run for election on a platform of targeting CCI's contractual relationship with the County.  Riddell is a member of the Board Majority that deprived CCI of procedural due process and equal protection in rescinding without justification the binding contract.

## JURISDICTION AND VENUE

16.      This Court has subject-matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States, and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

17.      The Court has personal jurisdiction over Defendants because they conduct business in Ohio, purposefully direct or directed their actions toward this District, and have the

5

requisite minimum contacts with the District necessary to constitutionally permit the Court to exercise jurisdiction.

18.     The Court has personal jurisdiction over Moore, Armbruster, Williams, and Riddell under 18 U.S.C. § 1965(a) and all of the Co-Conspirators under 18 U.S.C. § 1965(b).

19.     The Court has personal jurisdiction over the Board because it contractually consented to the jurisdiction of this Court.

20.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant Lorain County Board of Commissioners maintains an office and has its principal place of business within this District.  Moore, Armbruster, Williams, and Riddell are all residents of this District.  Moreover, the venue is proper in this District under 18 U.S.C. § 1965(a) because a substantial part of the unlawful acts asserted herein were planned and/or executed within this District.  The significant witness, documents, and other evidence are also located within this District.

## FACTS COMMON TO ALL CLAIMS

21.     In or about 2017, the Board determined that it was necessary to commission a survey in Lorain County to study and provide recommendations to the Board for systems to improve County-wide emergency and first responder communications.

22.     To conduct that study, the Board then made up of former Commissioners Ted Kalo, Matt Lundy, and Lori Kokosi, passed a unanimous resolution on May 9, 2018, to enter into an agreement with Mission Critical Partners, LLC ("MCP"), the leading independent provider of cybersecurity services for public safety agencies at the federal, state, and local levels.

23.     In or about February 2019, MCP issued a report of approximately 275 pages, finding that the current radio system was not a public-safety grade system and recommending

that the County modernize its radio system with a phase II trunk simulcast system that had

interoperability with the state-operated system, the Multi-Agency Radio Communications

System, better known as MARCS.

24.     In early 2021, the Board began to investigate how the County could fund such a

system, and eventually determined that the Board could use an American Rescue Plan Act

("ARPA) grant to fund the project.  The Board began to solicit proposals informally.

25.     By this time, Defendants Moore and Armbruster, and their confederates were

already in  communication with Motorola about fulfilling the contract.

26.     But CCI also expressed its interest in building and supporting the countywide

system with L3 Harris products.  Defendants Moore and Armbruster received an email from CCI

confirming its interest in winning the contract.

27.     In or about June of 2021 a police officer named Dana Gollner reached out to CCI.

At a meeting in the Northern District of Ohio on or about June 10, 2021, Gollner told CCI that he

could gain the support of all three County Commissioners if CCI paid Gollner a "lobbying" fee

of 10% of the multi-million dollar contract.  At this meeting, Gollner also showed a confidential

email from Motorola to the Lorain County Commissioners and one from CCI to the Lorain

County Commissioners and others to demonstrate his real access to Moore and other decision

makers in Lorain County.  When CCI advised Gollner that the upcoming contract would not

support a fee of this amount, Gollner told CCI to simply submit a bid for a higher amount

because there were a number of people to get paid and the higher bid would be accepted.

28.     CCI declined to agree to pay the money to Gollner, but continued to pursue the

contract.  CCI had already begun upgrading radio systems for municipalities in the Northeast

corner of Lorain County.  As first responders increasingly expressed their support for CCI and its L3 Harris product, Moore and Armbruster became concerned.

29.     Moore, Armbruster, and also their co-conspirator Tom Williams sought to control Commissioner Michelle Hung and thereby her valuable second vote so as to insure that the contract went to Motorola and not to CCI.   When Commissioner Hung demonstrated her independence, they increased the level of coercion and intimidation.

30.     Acting in concert with defendants Moore and Armbruster, co-conspirator Williams pressured County 911 Director Harry Williamson to influence Hung not to support CCI. Williams knew at the time that Williamson and Hung were involved in an extra-marital affair.  When in or about June 14 of 2021, Hung still voiced support for choosing the radio vendor supported by the County's fire departments, Moore told Williamson that Hung had "gone crazy."   .

31.     By late July or early August of 2021, Moore with Armbruster on the phone threatened Hung with the exposure of her extra-marital affair with Harry Williamson if she did not withdraw her support for CCI (L3 Harris) and support the MARCS System (Motorola).

32.     When Williamson later called Armbruster to discuss the situation, Armbruster reinforced that Michelle Hung had a difficult political decision to make regarding the awarding of the radio contract.

33.     When Hung did not submit to the threat, one or more Defendants participated in exposing the alleged extra-marital affair involving Hung and Williamson in August of 2021. They also terminated Williamson's employment as 911 Director for Lorain County and called for Hung's resignation.

34.     On May 4, 2022, the Board ordered a preliminary specification for such a system, and MCP advised the Board regarding the same.  At that time, the Board consisted of Commissioners Michelle Hung, Matt Lundy, and Defendant Moore.

35.     At the August 3, 2022 meeting of the Board, by a vote of 2-0.  Moore was absent from the meeting.  As a result of that vote, the Board instructed the Clerk to publish a Request for Proposals for a radio communications system to support mission-critical public safety communications within Lorain County.  Notice of the Request for Proposals was published on August 5 and 12, 2022.

36.     On August 4, 2022, Lorain County issued the  Request for Proposals and Technical Specifications for Project 25 Public Safety Radio Network (the "Radio Network RFP").

37.     The Radio Network RFP was issued "for the procurement of access to an Association of Public-Safety Communications Officials (APCO) International Project 25 (P25) Phase 2 radio communications system to support mission-critical public safety communications within Lorain County (county, geographically)."

38.     Lorain County explained that it was  "requesting proposals for the buildout of radio infrastructure to serve Lorain County first responders."

39.     As part of the winning proposal, "[t]he requested system shall be owned and operated by the proposing vendor or another partner agency, with Lorain County paying ongoing user fees for access to the system."

40.     The Radio Network RFP included 69 pages of specifications, terms, and conditions, including a reservation of "the right to terminate on lack of services, non-performance, or cost model changing."

41.     MCP continued to advise the Board throughout the RFP process.

42.     The Radio Network RFP did not include any minimum number of proposals that would be required to constitute a valid RFP process.

43.     The Radio Network RFP did include a Proposal Process Schedule of Events, setting forth the timeline upon which the Board intended to proceed:

### 1.3.2.    Proposal Process Schedule of Events

A. While the County is not obligated to comply with the following timeline, it intends to adhere to the following schedule, which may be changed at the County's sole discretion:

Table 1: Schedule of Events

| Event | Timeframe |
|---|---|
| RFP Solicitation Issued | August 4, 2022 |
| Pre-Proposal Conference | August 15, 2022 at 1:00 p.m. |
| Written Questions Due | August 22, 2022 by 3:00 p.m. |
| Response/Addendum Issued | As required, no later than September 19, 2022 |
| Proposals Due | September 30, 2022 by 1:00 p.m. |
| Vendor Presentations | As required, no later than October 14, 2022 |
| Proposal Evaluations | Beginning in October 2022 |
| Negotiations | October/November 2022 |
| Vendor Award and Contract Signing | It is the County's intention to review proposals and select primary vendors with which to negotiate in November 2022. The timing of negotiations and contract award(s) will be based on the duration of negotiations with the desire to award and sign a contract with the selected vendor in November/December 2022. |

44.     On August 15, 2022, the Board held a pre-bid vendor conference, during which MCP set forth the Board's expectations for proposals.

45.     The following vendors were present at the August 15, 2022 pre-bid vendor conference: CCI, Motorola Solutions, and Vasu Communications.

46.     The Board validly exercised its discretion to adjust the schedule of events, when in response to the separate requests of Motorola and CCI, the Board extended the proposal deadline by 14 days to October 14, 2022.

47.     Ahead of the extended deadline, the Board received a full response proposal from CCI, a letter of no bid from Motorola Solutions, and a partial-work bid from Vasu Communications.

48.     The Board established a five-member committee to rank and evaluate the proposals received (the "Evaluation Committee"), and the Evaluation Committee in consultation with MCP identified CCI's proposal as the one that was most advantageous to the County.

49.     The bid process and the Evaluation Committee followed all procedures required under Ohio law to constitute a valid and lawful request for proposal sealed bid under R.C. § 307.86, *et seq.*, and upon information and belief, the process was approved and validated by the Lorain County Prosecutor's Office following a careful review.

50.     On December 21, 2022, consistent with the findings of the Evaluation Committee, the Board determined that only CCI's proposal was compliant with the Radio Network RFP and that CCI had a proven track record in the County and surrounding counties.

51.     Moore was again absent from the December 21, 2022 meeting of the Board.

52.     During the December 21, 2022 meeting, the Board heard public comments from County first responders in unanimous support of the Contract and the L3 Harris radio system that CCI would provide to the County.

53.     On December 21, 2022, the Commissioners present—current Commissioner Michelle Hung and then-Commissioner Lundy—voted 2-0 to approve the Contract with CCI.

54.     The source of funding for the Contract, as stated in the Contract itself and the resolutions approving the Contract and its funding, was ARPA funds.

55.     CCI and the Board executed the Contract, which had been previously approved as valid by the Assistant Prosecutor for Lorain County on December 19, 2022.  Commissioner

Lundy, President of the Board, signed the Contract on behalf of the Board and Alan Close, President of CCI, signed on behalf of CCI.  A true and correct copy of the Contract is attached hereto as **EXHIBIT A**.

56.     But Moore and Armbruster planned to undo the contract.  In or about November and December of 2022, Moore made false representations via wire communications to candidate and then elected official Defendant Riddell.  Moore falsely stated that Hung and CCI had an improper relationship causing Hung to steer business to CCI.  Defendant Riddell relied on these false statements in announcing that he would right the injustice of the radio contract.

57.     Moore and his confederates further caused CCI to be investigated and defamatory stories to be published about CCI and Hung.  Moore then cited the investigations he started as proof of his false allegations .

58.     But in reliance upon the contract's approval and execution, CCI worked to implement the Contract.

59.     As a part of the Contract, CCI had 60 days to reach a Radio System User Agreement with the non-County political subdivisions within Lorain County for the provision of radios.

60.     On December 27, 2022, CCI and the Rochester Fire Department signed a Radio System User Agreement (the "Rochester User Agreement") that is only implementable if the network contemplated by the Contract comes into existence.  A true and correct copy of the Rochester User Agreement is attached hereto as **EXHIBIT B**.

61.     On January 4, 2023, CCI and the City of Oberlin signed a Radio System User Agreement (the "Oberlin User Agreement") that is only implementable if the network

contemplated by the Contract comes into existence.  A true and correct copy of the Oberlin User

Agreement is attached hereto as **EXHIBIT C** .

      62.    The Contract itself includes the following termination provision:

8.    **Termination of Agreement** - The County shall have the right to terminate this Agreement for breach by the Contractor of any milestone identified in the Scope of Services of the Proposal provided that the County first notifies the Contractor by written notice.  The County shall give the Contractor a period of sixty (60) days to cure any such breach, subject to force majeure.  The Parties further agree that the failure to limit any then ongoing efforts to cure to the sixty (60) day time period shall not be construed as a waiver of a breach.  In the event of termination pursuant to this paragraph, the County shall pay the Contractor for all equipment which had at that point been purchased for the Project, services rendered and expenses incurred in connection with the Project through the effective date of termination.

      63.    Former Commissioner Lundy ended his term, and the newly-elected

Commissioner defendant Jeff Riddell replaced him at the beginning of January 2023.

      64.    On January 6, 2023, the Board issued an agenda for an Organizational Meeting,

which is a special session of the Board to be held the following business day, January 9, 2023 at

9 am (the "Agenda").  The Agenda included item Number 21, a resolution under 911 to

"[r]escind Res#22-909, adopted December 21, 2022 entering into an agreement with Cleveland

Communications, Inc. to provide goods and services for a public safety radio system on behalf of

Lorain County 911and will be paid from the ARP Capital Equipment account."

      65.    The Agenda also included item Number 22, a resolution under 911 to "[r]escind

Res#22-910, adopted December 21, 2022 establishing a set aside of $4,033,542.97 subgrant for

participating political subdivisions for the Lorain County public radio system to be paid from

Acct# ARP other expenses."

      66.    The Agenda gave no notice of the purported reasons for the vote to rescind the

Contract and funding.  Nor did any other communication give CCI or other interested parties

sufficient notice of the meeting or advanced notice of the issues that they would need to address.

13

67.     Prior to the January 9, 2023 Organizational Meeting, the public and CCI were only made aware that the Board may terminate the Contract based on the item being listed on the meeting Agenda on a Friday afternoon, one business day before the Meeting scheduled for Monday.  A true and correct copy of the January 9, 2023 meeting agenda is attached hereto as **EXHIBIT D**.

68.     Defendant further breached the notice provision in the Contract, which provides as follows:

20.     **Notices** - Any notice, bills, invoices or reports required by this agreement shall be sufficient if sent by the parties hereto in the United States mail, postage paid, to the addresses noted below:

| If to the County: | If to the Contractor: |
|---|---|
| Lorain County Administrator | Cleveland Communications, Inc. |
| 226 Middle Avenue | 5220 Hauserman Rd. |
| Elyria, OH  44035 | Cleveland, Ohio  44130 |
| Attention:  J.R. White, County Administrator | Attention:  Alan L. Close, President |

69.     Prior to the January 9, 2023 Organizational Meeting, the Board issued no notices of its intent to terminate the Contract directly to CCI; did not state to CCI prior to the meeting any grounds that could justify termination; and did not provide CCI with an opportunity to cure any issues that might justify the Board's termination of the Contract.

70.     Prior to the January 9, 2023 Organizational Meeting, CCI learned of the agenda items and delivered a letter via email to the Board objecting to rescinding the Contract.  CCI did not have notice of what the grounds would be to rescind the Contract.

71.     Commissioner Moore, Commissioner Riddell, and Commissioner Hung were all in attendance at the January 9, 2023 Organizational Meeting.

72.     At the January 9, 2023 Organizational Meeting, the Board heard public comments from a packed audience on the resolutions to rescind the Contract and related funding.

73.     Comments at the meeting were limited to three minutes.

74.     Public comments were almost unanimously against rescinding the Contract and included:

      a.   The Honorable Frank Whitfield, Mayor of Elyria: "I truly believe if cancer – the cure for cancer would have got approved by Hung and Lundy, you would be against it."

      b.   Lucy DiNardo, Senior Staff Representative, Fraternal Order of Police: "The union will pursue a health and safety grievance if you do rescind this order and if you decide to go in the direction that you're going."

      c.   Elyria Fire Chief Joseph Pronesti: "Well, we're not playing a violin with the public. You know the right instrument you ought to talk about?  The bagpipes. Because that's what we play when we bury somebody."

75.     Only one public comment was made in support of rescinding the Contract based on the unsupported speculation that the Board could get a lower price if the project was re-submitted for bid.

76.     At the January 9, 2023 Organizational Meeting, CCI was given no opportunity to present actual evidence or the testimony of witnesses.

77.     At the January 9, 2023 Organizational Meeting, CCI's attorney was allowed to speak only during the open public comments portion of the meeting.  Like all members of public, CCI's attorney's comments were limited to three minutes.

78.     The Board issued no notices to CCI of its intent to terminate the Contract.

79.     The Board did not state to CCI prior to the January 9, 2023 meeting of the Board any grounds that could justify termination of the Contract.

80.     The January 9, 2023 meeting of the Board did not include testimony of witnesses.

81.     At the January 9, 2023 meeting of the Board, the Commissioners made no findings of fact.

82.     The Board did not provide CCI with an opportunity to cure any alleged issues that the Board identified as reasons for its termination of the Contract.

83.     Following public discussion, the Commissioners made statements concerning their positions, and no Commissioner made any comments or findings of fact concerning any breach of the Contract by CCI or any deficiency that needed cured.  To the contrary, Moore and Riddell purported to find – without any evidentiary or lawful basis – that the bidding process was flawed because in the end CCI presented the only sufficient bid:

    a.   Riddell supported rescinding the Contract because he objected to the bid process finding, "Two of the [potentially bidding] vendors needed extra time [to submit their bid]" and that instead the requested "additional time was denied and 15 days was allowed."

    b.   Moore supported rescinding the Contract, so the Board could "reset" and allow additional buy in among communities that needed to sign the contemplated user agreements.  Moore also pointed to objections he made prior to the issuance of the Radio Network RFP.

    c.   Commissioner Hung opposed rescinding the Contract on the basis that the statutory RFP process was lawful and recited the long history of the Board's evaluation of the necessity of a new radio network.  She also offered evidence supporting the Board's prior determination that the CCI proposal was most advantageous to the County.

84.     Moore and Riddell voted to rescind the resolution to enter into the Contract whereas Commissioner Hung voted against.

85.     Moore acted with ill-will and prejudice, in part, on the basis that in his words, CCI is an "out-of-town company," and Moore publicly and falsely stated that CCI had engaged in an illicit campaign to steer the Board's radio network to itself.  Moore made his false statements knowing of their falsity, and all the while he participated in an illegal enterprise to block CCI's contractual relationship with others in the County and deliver the radio network to Motorola Solutions.

86.     At the time of the vote, Riddell had only served on the Board for a matter of days. Riddell acted in reliance on the fraudulent representations and statements made privately and in public by the Co-Conspirators causing economic harm to CCI and subverting the public interest in an improved system.

87.     The Board also voted 2-1 along the same lines to rescind the federal funding of the Contract.

88.     The Lorain County Deputies Association filed a union grievance stating in part that Riddell and Moore voted to rescind the Contract knowing "that the current radio systems are not working properly and that the Sheriff cannot find replacement parts for the current system in the event of a failure.  This causes a significant safety issue."

89.     On January 18, 2023, the Fox 8 I-Team reported on a failure of the Lorain County radio system during an emergency involving a man who could not breathe.  The Media reported learning that "what happened in this case is not that unusual."  Confronted with a recording of the emergency responders unable to communicate over radio, Commissioner Riddell was quoted

as saying in part that "nobody's denying the equipment in Lorain County is not in need of upgrading."

90.     By rescinding the Contract without any right to do so and without affording CCI due process, the Board's decision was unconstitutional, illegal, arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence.

91.     CCI administratively appealed the Board's decision to Lorain County Common Pleas, pursuant to Ohio law.  The Court determined that the Board's decision to rescind the contract was not the result of a quasi-judicial proceeding, and as a result determined that the Board's decision was not the type subject to an administrative appeal under O.R.C. §2506.  The Board's decision to rescind the Contract resulted in CCI's loss of its Contract rights without Due Process, and the dismissal of the appeal further demonstrates the lack of an adequate remedy in the state court proceedings.

92.     The Board Majority rescinded the Contract in an unconstitutional manner that the Board Majority knew or should have known did not comply with constitutional mandates for depriving a person of property.  The Board Majority acted with ill-will and animus and directly targeted and affected CCI with its action, failing to afford CCI substantive due process and equal protection under the law.

93.     In furtherance of the conspiracy, Moore and others acting in concert with him devised a scheme to defraud and obstruct justice by instigating investigations of Commissioner Hung's ties to the radio project.  By correspondence sent by mail, including a letter sent on March 27, 2023, to Lt. Vansant of the Lorain County Sheriff's Office and copied to the Ohio Attorney General, Moore—notwithstanding his own act of extortion—falsely alleged misconduct

on the part of Commissioner Hung and others regarding the radio project and portrayed himself as a whistleblower. He further portrayed Commissioner Hung as "a known liar" who "pled the Fifth Amendment multiple times during a federal deposition just last year."

94.     Moreover, Moore and others obstructed an official investigation of the Lorain County Sheriff's Office. On March 27, 2023, Moore falsely represented that Lorain County Sheriff had "a clear conflict of interest in regard to this matter"(the circumstances surrounding the approval and rescinding of the Contract). In addition, one or more defendants corruptly persuaded the Lorain County Prosecutor's Office not to assist the investigation, corruptly persuaded one or more Lorain County employees and others not to comply with subpoenas and public records requests issued by the Sheriffs, and corruptly persuaded witnesses not to be interviewed as a part of the official investigation.

**COUNT ONE**

**(Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1962(c), 1964)**
**AGAINST DEFENDANTS DAVID J. MOORE and JEFFREY ARMBRUSTER**

95.     CCI incorporates as if fully rewritten herein all prior allegations in this Complaint.

96.     Plaintiff incorporates each and every allegation set forth above as if fully rewritten herein.

97.     Plaintiff CCI is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

98.     At all times relevant hereto, in the Northern District of Ohio, there existed an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4), 1962, and 1964 consisting of the Lorain County, Ohio Government, and its departments and subdivisions.

99.     The enterprise is engaged in interstate commerce in that it purchases goods sold in interstate commerce, including but not limited to L3 Harris and Motorola radio equipment at issue in this case.  The enterprise further receives federal government funds, including millions of dollars of American Rescue Plan Funds, which upon information and belief, the federal government paid from outside the State of Ohio in two tranches to Lorain County Government accounts in Ohio.

100.     The enterprise further is engaged in the supervision of Interstate I-80/90 (the Ohio turnpike), including by Lorain County police and fire emergency responses to crashes and other safety issues on the highway.

101.     From in or about a date unknown but at least 2021 to the present, defendants Moore and Armbruster together with others, known and unknown not named as defendants in this lawsuit, including but not limited to Tom Williams, Dick Miller, and Dana Gollner, have conspired to participate and participated directly and indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity, and to acquire and maintain control of Lorain County Government through a pattern of racketeering activity.  The object of the conspiracy is to corruptly control the awarding of contracts and the expenditure of state and federal funds for corrupt purposes to be further developed in discovery other than the public good.

102.     In furtherance of this conspiracy, defendants and their confederates have participated in the enterprise, directly and indirectly, through a pattern of unlawful racketeering activity, including the following:

    a.     On or about June  10, 2021, at a meeting in the Northern District of Ohio, a police officer named Dana Gollner told CCI that he could gain the support of all three

County Commissioners if CCI paid Gollner a "lobbying" fee of 10% of the multi-million dollar contract.  At this meeting, Gollner showed confidential communications from Motorola and CCI to the Lorain County Commissioners to demonstrate his real access to Moore, Williams, and other decision makers in Lorain County.  When CCI advised Gollner that the contract would not support a fee of this amount, Gollner told CCI to simply submit a bid for a higher amount because there were a number of people to get paid and the higher bid would be accepted.  In so soliciting this bribe, Gollner acted at the direction of Moore and other members of the conspiracy to violate the RICO statutes.  This solicitation of a bribe constitutes "racketeering activity" with the definitions of 18 U.S.C. § 1961 because it was an act of attempted bribery in violation of O.R.C. §2921.02(A) and (B).

b. Moore, Armbruster, Williams, and others working in concert with them have sought to control Commissioner Michelle Hung and thereby obtain control of her valuable second vote, through acts of intimidation, including racketeering activity in violation of Section 1961.  In or about late July or early August of 2021, Moore with Armbruster on the phone threatened Hung with the exposure of her extra-marital affair with Harry Williamson if she did not support the MARCS System (Motorola) and deny support to CCI (L3 Harris).    This constituted an act of extortion in violation of O.R.C. §2905.11(A)(4) and (5) and punishable by more than a year imprisonment.

c. When Williamson later called Armbruster to discuss the situation, Armbruster reinforced that Michelle Hung had a difficult political decision to make regarding the radio contract.

d. When Hung failed to submit to the threat, one or more defendants participated in exposing the alleged extra-marital affair involving Hung and Williamson in August of 2021. They also terminated Williamson's employment as 911 Director for Lorain County and called for Hung's resignation.

e. In furtherance of the conspiracy, Moore and others acting in concert with him devised a scheme to defraud and obstruct justice by instigating investigations of Commissioner Hung's ties to the Radio Project. By correspondence sent by mail, including a letter sent by U.S. mail on March 27, 2023, to Lt. Vansant of the Lorain County Sheriff's Office and copied to the Ohio Attorney General, Moore—notwithstanding his own act of extortion—falsely alleged misconduct on the part of Commissioner Hung and others regarding the radio project and portrayed himself as a whistleblower, all in violation of 18 U.S.C. §§ 1341. He further portrayed Hung as "a known liar" who "pled the Fifth Amendment multiple times during a federal deposition just last year."

f. Via wire communications in or about November and December of 2022, Moore made false representations to candidate and then elected official Defendant Jeffrey Riddell, that Hung and CCI had an improper relationship causing Hung to steer business to CCI, all in violation of 18 U.S.C. § 1343. These false representations were relied upon by Defendant Riddell, causing CCI to be

investigated, defamatory stories to be published, and Defendant Riddell to vote to rescind the Contract.

g.   In December of 2022, the Lorain County Prosecutor's office approved the Radio contract between Lorain County and CCI and sent it by wire communications, inducing the reliance of Commissioners Hung, Lundy, and CCI that the contract was final and enforceable, when in fact the Lorain County Prosecutor's Office knew that defendant Moore and others schemed to rescind it in January.

h.   In or about 2023, Moore and others did obstruct an official investigation conducted by the Lorain County Sheriff's Office.  On March 27, 2023, Moore did falsely represent that Lorain County Sheriff had "a clear conflict of interest in regard to this matter," *i.e.* the circumstances surrounding the approval and rescinding of the Contract.  In addition, one or more defendants did corruptly persuade the Lorain County Prosecutor's Office not to assist the investigation, did corruptly persuade one or more Lorain County employees and others not to comply with subpoenas and public records requests issued by the Sheriffs, and did corruptly persuade witnesses not to be interviewed as a part of the official investigation, all in violation of 18 U.S.C. § 1512.

103.   This unlawful conduct comprises a pattern of racketeering involving more than two predicate acts of racketeering activity, occurring with continuity after the effective date of the Racketeer Influenced and Corrupt Organizations Act and all within a ten year period.

104.   As a result of the racketeering activity in violation of 18 U.S.C. § 1962, CCI has been injured in its business and property, including but not limited to, by the rescinding of the

Contract and the damage to its good will. CCI should be awarded treble damages, attorneys' fees, and reasonable restrictions on the continuation of the racketeering activity.

## COUNT TWO
**(Fourteenth Amendment, Denial of Substantive Due Process, 42 U.S.C. § 1983)**
**AGAINST DEFENDANTS DAVID J. MOORE and JEFFREY ARMBRUSTER,**

105.    CCI incorporates as if fully rewritten herein all prior allegations in this Complaint.

106.    The Fourteenth Amendment Due Process Clause protects all persons from the deprivation of a protected property interest by arbitrary and capricious government action.

107.    Under Ohio and Federal law, an awarded public contract is a constitutionally-protected property interest.

108.    The Contract was a valid, enforceable, statutorily-compliant public contract awarded by the Board to CCI on December 21, 2022

109.    As described above, CCI was deprived of it property interest in the Contract as a result of the Co-Conspirators' corruption, fraud, extortion, and bribery.

110.    The Co-Conspirators' actions went well-beyond the typical politics and animosities that often animate local decision-making, and instead, shock the conscience. The Co-Conspirators engaged in the described pattern of criminal activity to deprive CCI of its constitutionally-protected property interest and to intentionally injure CCI and those that supported it through criminal conduct and in ways unjustified by any legitimate governmental interest..

111.    The Co-Conspirators carried forward their corrupt enterprise knowingly in violation of the law and are therefore not entitled to qualified immunity.

112.    The Co-Conspirators' actions are in violation of CCI's right to Substantive Due

Process in the Fourteenth Amendment of the United States Constitution, the Ohio Constitution,

and 42 U.S.C. § 1983.

## COUNT THREE
**(Fourteenth Amendment, Denial of Procedural Due Process, 42 U.S.C. § 1983)**
**AGAINST DEFENDANTS LORAIN COUNTY BOARD OF COMMISSIONERS, DAVID J. MOORE, AND JEFFREY LIDDELL**

113.    CCI incorporates as if fully rewritten herein all prior allegations in this

Complaint.

114.    The Fourteenth Amendment Due Process Clause protects all persons from the

deprivation of property without due process of law.

115.    Due process requires that the procedures by which laws are applied are

fundamentally fair so that persons are not subjected to the arbitrary exercise of government

power.

116.    Under Ohio and Federal law, an awarded public contract is a constitutionally-

protected property interest.

117.    The Contract was a valid, enforceable, statutorily-compliant public contract

awarded by the Board to CCI on December 21, 2022

118.    CCI's right to a pre-deprivation hearing concerning its property interests in the

Contract was clearly established prior to the Board Majority's action.

119.    When property interests are concerned, Due Process requires, at a minimum,

sufficient notice, and an opportunity to be heard in an impartial hearing.

120.    Notice must be reasonably calculated, under all the circumstances, to apprise

interested parties in advance of the pendency of the action and the grounds at issue for the action.

121.    The Board Majority did not provide CCI with direct notice of the hearing, that the Contract would be the subject of the hearing, or the basis for terminating the Contract awarded to CCI because there was no lawful basis in the Contract for terminating it.

122.    The notice of hearing and the opportunity to be heard must be granted at a meaningful time sufficient to prepare for what is at issue.

123.    The only notice provided was the identification of a proposed resolution to rescind the Contract when the January 9, 2023 Organizational Meeting agenda was released three (3) days before the Monday meeting and only one business day prior.

124.    The only opportunity to be heard afforded to CCI was during open public comments during the January 9, 2023 Organizational Meeting, and the Board Majority limited CCI's attorney's comments to three (3) minutes.  That hearing was not meaningful and did not allow for the presentation of testimony or the confrontation of adverse witnesses.

125.    The Board Majority's decision was predetermined thus denying any meaningful opportunity to be heard and evincing bias, recklessness, and malice.

126.    The Board and Board Majority also did not provide any post-deprivation hearing.

127.    CCI attempted to administratively appeal the Board's decision rescinding the Contract, pursuant to Ohio's statutory administrative appeal process, to the Lorain County Court of Common Pleas.  CCI's administrative appeal was dismissed by that court because the court concluded that the Board Majority had failed to afford CCI a quasi-judicial hearing prior to depriving CCI of its contract interests, and without a quasi-judicial hearing in the first instance, no administrative appeal could be heard.

128.    Each member of the Board Majority denied CCI its procedural Due Process and abused the power of government by voting in favor of rescinding the Contract on January 9,

2023.  Thereby, the Board and Board Majority deprived CCI of its property interests in the Contract without cause, compensation, notice, or a sufficient opportunity to be heard.  The Board and Board Majority further did so without hearing actual evidence, and did not sit as an impartial tribunal.

129.    By rescinding the Contract in the manner described, the Board and Board Majority extinguished CCI's well-established property interests without affording CCI pre-deprivation procedural rights.

130.    State remedies for the denial of due process are inadequate and arbitrarily enforced.  CCI's administrative appeal was dismissed in state court in a one page decision that failed to acknowledge that the rescinding of a contract, a firmly established property right, is a quasi-judicial function requiring due process of law.

131.    Because the Board Majority violated CCI's clearly established right to procedural due process in taking the Contract, the members of the Board Majority are not entitled to qualified immunity.

132.    The Board and the Board Majority's actions constitute a violation of CCI's right to procedural due process under the Due Process Clause in the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983.

## COUNT FOUR
### (Fourteenth Amendment, Denial of Equal Protection, 42 U.S.C. § 1983)
### AGAINST DEFENDANTS LORAIN COUNTY BOARD OF COMMISSIONERS, DAVID J. MOORE, AND JEFFREY RIDDELL

133.    CCI incorporates as if fully rewritten herein all prior allegations in this Complaint.

134.    The right to equal protection prohibits a state actor—here the Board Majority--from treating CCI differently without proper justification.  The disparate treatment maybe unlawful if it either burdens a fundamental right, targets a suspect class, or has no rational basis.

135.    Here the Board Majority targeted CCI and its contractual relationship with the County, intentionally treating it differently from its competitors with whom the County also has contractual relationships.  The Board Majority's actions were designed to strip CCI of its property interests for the likely benefit of CCI's competitors, and the Board Majority had no rational basis for the difference in treatment.

136.    Instead, as the comments from the members of the Board Majority make clear, the Board Majority was motivated by animus and ill-will toward CCI for being an "out-of-town company" and to spite Commissioner Michelle Hung for failing to obey, among other things.

137.    The Board Majority's decision was not based on an broadly applicable policy or the like, but instead were resolutions specifically directed at depriving CCI of its property interests and nothing else.  In other words, the Board Majority intentionally singled out CCI for discriminatory adverse treatment.

138.    The Board Majority disparate treatment of CCI with animus and ill-will negate any potential claim of qualified immunity by the Board Majority.

139.    The Board and the Board Majority's disparate treatment of CCI caused damages to CCI and deprived it of equal protection under the law in violation of the Equal Protection

Clause in the Fourteenth Amendment of the United States Constitution, the Ohio Constitution, and 42 U.S.C. § 1983.

## COUNT FIVE
### (Breach of Contract)
### AGAINST LORAIN COUNTY BOARD OF COMMISSIONERS

140.    CCI incorporates as if fully rewritten herein all prior allegations in this Complaint.

141.    CCI and the Board entered into the Contract reflected on **EXHIBIT A**, which is a valid, binding, and enforceable contract.

142.    In reliance upon the terms of the executed Contract, CCI immediately began implementing the Contract as required.

143.    CCI performed all duties and obligations required by the Contract through the date of this Complaint.

144.    The Board materially breached the Contract by taking one or more of the following actions: (1) rescinding the Contract and funding without cause; (2) failing to provide notices required by the Contract; (3) failing to give CCI the opportunity to cure any alleged breach; (4) failing to pay CCI for all equipment purchased, services rendered, and expenses incurred in connection with the Contract; and (5) stating that it was unilaterally rescinding the Contract in terms that were sufficiently clear and unequivocal such as to constitute an anticipatory repudiation of the Contract.

145.    By reason of said breaches, CCI has sustained damages in the form of lost profits and unrecovered costs incurred and other damages in excess of $1,000,000.00, the specific amount to be proven at trial.

**WHEREFORE**, Plaintiff Cleveland Communications, Inc. demands judgment as follows:

A.     Entering Judgment in favor of the Plaintiff in a final order against each of the Defendants;

B.     Awarding actual damages, treble damages, injunctive and equitable relief, forfeiture as deemed proper by the Court, and attorneys' fees and all costs and expenses of suit from Co-Conspirators, jointly and severally, pursuant to Plaintiff's racketeering claim;

C.     Awarding actual damages forfeiture as deemed proper by the Court, and attorneys' fees and all costs and expenses of suit from Co-Conspirators, jointly and severally, pursuant to Plaintiff's substantive due process claim;

D.     Awarding actual damages, injunctive and equitable relief, forfeiture as deemed proper by the Court, and attorneys' fees and all costs and expenses of suit from the Board and Board Majority, jointly and severally, pursuant to Plaintiff's equal protection and procedural due process claims;

E.     Awarding actual damages and specific performance from the Board pursuant to Plaintiff's breach of contract claim;

F.     Against the Board to nullify the votes to rescind the Contract and set aside funds for payment under the Contract;

G.     Injunctive relief preventing the awarding of the Contract to a third party;

H.     Granting the Plaintiff

1.     The cost of investigation, reasonable attorneys' fees, and all costs and expenses;

2.     Pre-judgment and post-judgment interest;  and

3.      All other and further relief as provided by law and/or the Court deems just, equitable, and proper.


## JURY DEMAND

Pursuant to Federal Civil Rule 38, Plaintiff requests a jury trial of all triable issues alleged herein.

Respectfully submitted,


*/s/ Allen T. Carter*
Allen T. Carter (0085393)
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, Ohio  43215
Phone:        614.227.2000
Fax:          614.227.2100
Email:        acarter@porterwright.com

Edmund W. Searby  (0067455)
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, Ohio  44113-7201
Phone:        216-443-2545
Fax:          216-443-9011
Email:        esearby@porterwright.com

Dean DePiero (0063629)
DEPIERO LAW
5546 Pearl Road
Parma, Ohio 44129
Phone:        440-884-2400
Email:        DEPIEROLAW@gmail.com

*Counsel for Plaintiff*