**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CLEVELAND COMMUNICATIONS, INC.,** | CASE NO. 1:23-cv-1561 |
| Plaintiff, | UNITED STATES DISTRICT JUDGE CHARLES ESQUE FLEMING |
| vs. | |
| **LORAIN COUNTY BOARD OF COMMISSIONERS, et al.** | |
| Defendants. | |

---

### DEFENDANTS' MOTION TO DISMISS

---

In accordance with Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Lorain County Board of Commissioners (the "Board"), David J. Moore, Jeffrey Armbruster, and Jeffrey Riddell (collectively, "Defendants") request that the Court dismiss all claims in Plaintiff's Complaint for failure to state a claim upon which relief can be granted. At core, CCI alleges a state law breach of contract claim, and the Court should decline to exercise supplemental jurisdiction over that claim.

## TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iii

INTRODUCTION ............................................................................................................1

RELEVANT FACTS ........................................................................................................ 2

LAW AND ARGUMENT..................................................................................................4

    A.  Standard of review ....................................................................................... 4

    B.  CCI's RICO claim against Defendants Moore and Armbruster does not pass muster............................................................................................................. 5

    C.  CCI alleges a state law breach-of-contract claim, not a due process violation. ..... 11

    D.  CCI does not identity any similarly situated individuals, so its equal protection claim must be dismissed. ..........................................................................15

    E.  The purported Agreement is void without a fiscal certificate. .............................. 18

CONCLUSION..............................................................................................................20

CERTIFICATE OF SERVICE .........................................................................................22

# Table of Authorities

**Cases**                                                                            **Page(s)**

*37712, Inc. v. Ohio Dep't of Liquor Control,*
    113 F.3d 614, 619 (6th Cir. 1997) ................................................................. 12

*Aaron v. Durrani, No. 1:13-cv-202,*
    2014 U.S. Dist. LEXIS 32693 (S.D. Ohio Mar. 12, 2014) ........................................... 7

*Amini v. Oberlin College,*
    259 F.3d 493 (6th Cir. 2001) ..................................................................... 5

*Beck v. Benton, N.D.Ohio No. 3:09CV2179,*
    2010 U.S. Dist. LEXIS 16395, *10 (Feb. 5, 2010) .................................................... 14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................. 4

*Bell v. Ohio State Univ.,*
    351 F.3d 240, 249-50 (6th Cir. 2003) ............................................................. 14

*Bogan v. Scott-Harris,*
    523 U.S. 44, 49 (1998) ........................................................................... 9

*Bowers v. City of Flint,*
    325 F.3d 758 (6th Cir. 2003) ..................................................................... 11

*Braun v. Ann Arbor Charter Twp.,*
    519 F.3d 564 (6th Cir. 2008) ..................................................................... 14

*Brown v. Lewis,*
    779 F.3d 401, 411 (6th Cir. 2015) ................................................................. 9

*Buck v. Thomas M. Cooley Law Sch.,*
    597 F.3d 812 (6th Cir. 2010) ..................................................................... 1

*Chappell v. Robbins,*
    73 F.3d 918 (9th Cir. 1996) ...................................................................... 10

*City of Oberlin v. Lorain Cnty. Joint Vocational Sch. Dist. Bd. of Educ.,*
    2019 Ohio 3977 (Ohio Ct. App. 2019) ............................................................. 17

*City of Painesville v. Schulte, No. 1:94-cv-1034,*
    1994 U.S. Dist. LEXIS 11419 (N.D. Ohio Aug. 12, 1994) ............................................ 13

*City of Toledo v. Corr. Comm. of Northwest Ohio,*
    2017-Ohio-9149, 103 N.E.3d 209 (6th Dist.) ....................................................... 17

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,*
    470 F.3d 286, 296 (6th Cir. 2006) ............................................................. 12

*Collins v. New Vienna,*
    75 F. App'x 486 (6th Cir. 2003) ................................................................. 9

*Cullinan v. Abramson,*
    128 F.3d 301 (6th Cir. 1997) ..................................................................... 9

*Dressler v. Winkler, S.D.Ohio No 1:11-cv-089,*
    2011 U.S. Dist. LEXIS 154236, *14 (Oct. 12, 2011).........................................9

*EJS Prop., LLC. v. City of Toledo,*
    698 F.3d 845, 862 (6th Cir. 2012) ............................................................. *14*

*Faughender v. City of North Olmsted,*
    927 F.3d 909 (6th Cir. 1991) ..................................................................... 18

*Frisbie Co. v. East Cleveland,*
    98 Ohio St. 266, 120 N.E. 309 (1918) ........................................................ 16

*Garvie v. Jackson,*
    845 F.2d 647 (6th Cir. 1988)...................................................................... 9

*GM, LLC v. FCA US, LLC,*
    44 F.4th 548 (6th Cir. 2022) .................................................................. 7, 8

*Grinter v. Knight,*
    532 F.3d 567, 572 (6th Cir. 2008) ............................................................. 14

*Hafer v. Melo,*
    502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ........................................ *17*

*Haskell v. Washington Township,*
    864 F.2d 1266, 1277 (6th Cir. 1988)..............................................................9

*Heyerman v. Cnty. of Calhoun,*
    680 F.3d 642 (6th Cir. 2012) ................................................................11, 12

*Kaminski v. Coulter,*
    865 F.3d 339 (6th Cir. 2017) ...............................................................11, 12

*Lancaster v. Miller,*
    58 Ohio St. 558, 51 N.E. 52 (1898) ........................................................... 17

*Lathrop Co. v. Toledo,*
    5 Ohio St.2d 165, 214 N.E.2d 408 (1966) .................................................... 17

*Mertik v. Blalock,*
    *983 F.2d 1353, 1367-68 (6th Cir. 1993)* ..................................................... *14*

*Moon v. Harrison Piping Supply*,
   465 F.3d 719 (6th Cir. 2006) ............................................................. 5

*Myers, 2019 U.S. Dist.*
   *LEXIS 103910 at 7* ...................................................................... 17

*NaphCare, Inc. v. Cnty. Council Ohio, 9th Dist. Summit No. 24906*,
   2010-Ohio-4458 ...................................................... 13, 16, 17, 18

*NRP Holdings LLC v. City of Buffalo*,
   916 F.3d 177 (2d Cir. 2019) ......................................................... 10

*Peatross v. City of Memphis*,
   *818 F.3d 233, 241 (6th Cir. 2016)* ............................................... 17

*Pincelli v. Ohio Bridge Corp.*,
   5 Ohio St.2d 41, 213 N.E.2d 356 (1966) .................................... 17

*R.S.W.W., Inc. v. City of Keego Harbor*,
   397 F.3d 427 (6th Cir. 2005) ......................................................... 9

*Radvansky v. City of Olmsted Falls*,
   395 F.3d 291, 312 (6th Cir. 2005) .......................................... 13, 14

*Range v. Douglas*,
   763 F.3d 573, 588 (6th Cir. 2014) ............................................... 14

*Ramsey v. Bd. of Educ.*,
   844 F.2d 1268, 1273 (6th Cir. 1988)) ...................................... 1, 11

*Robinson v. Ohio Dept. of Dev.*,
   69 F. App'x 204 (6th Cir. 2003) .................................................... 5

*Salehpour v. Radojits, No. 1:05CV363*,
   2006 U.S. Dist. LEXIS 112711 (S.D.Ohio Mar. 22, 2006)(6) ................... 7-8

*Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*,
   641 F.3d 197, 217 (6th Cir. 2011) ............................................... 12

*State ex rel. Stoll v. Logan Cnty. Bd. of Elections*,
   117 Ohio St.3d, 2008 .................................................................. 17

*Silberstein v. City of Dayton*,
   440 F.3d 306, 311 (6th Cir. 2006) ................................................. 9

*Taylor Acquisitions, LLC v. City of Taylor*,
   313 F. App'x 826 (6th Cir. 2009) ......................................... *passim*

used

*Trollinger v. Tyson Foods, Inc.*,
  370 F.3d 602 (6th Cir. 2004) .................................................................................. 5, 6

*Urbanek v. All State Home Mortgage, No. 1:06 CV 1279*,
  2006 U.S. Dist. LEXIS 81301 (N.D. Ohio Oct. 27, 2006) ......................................... 7

*Vaduva v. City of Xenia*,
  780 Fed. Appx. 331 (6th Cir. 2019) ............................................................................ 9

*Vision Real Estate Invest. Corp. v. Metro. Govt. of Nashville &
Davidson Cty., M.D.Tenn. No. 3:18-cv-00014*,
  2020 U.S. Dist. LEXIS 140670, \*17-18 (Aug. 6, 2020)  ............................................ *14*

*Williams v. Hooah Sec. Services, LLC*,
  729 F. Supp. 2d 1011 (W.D. Tenn. 2010)  ................................................................. 5

*Ziss Bros. Constr. Co. v. City of Independence, N.D.Ohio No. 1:07 CV 3767*,
  2008 U.S. Dist. LEXIS 104606 at \*9-10 (Sept. 30, 2008)  ....................................... 14

**Statutes**

R.C. 5705.01 ...................................................................................................... 17

R.C. 5705.41 ................................................................................................. *passim*

R.C. 5705.44 ................................................................................................... 16-17

R.C. 5705 ............................................................................................................ 17

**Rules**

Fed. R. Civ. P. 12 ............................................................................................. i, 4, 5

**INTRODUCTION**

This matter (although meritless in any court) demonstrably does not belong in this Court. Plaintiff's threadbare and baseless allegations seek to transform its state law breach of contract claim into a federal action. The Sixth Circuit has repeatedly recognized that a breach of contract does not become a due process violation merely because one of the parties is a state actor. *E.g.*, *Taylor Acquisitions, LLC v. City of Taylor*,[1] 313 F. App'x 826, 831 (6th Cir. 2009) ("it is neither workable nor within the intent of [42 U.S.C. § 1983] to convert every breach of contract claim against a state into a federal claim") (quoting *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273 (6th Cir. 1988)) (additional quotations omitted). CCI's breach of contract claim against the Board is native to state court, where it was just before CCI filed this federal action. *See Cleveland Communications, Inc. v. Lorain County Board of Commissioners*, Case No. 23CV207963 (Lorain County Common Pleas) (voluntarily dismissed on Aug. 10, 2023).[2]

In a naked act of forum shopping, CCI seeks a second bite at the apple after having a critical claim dismissed by the state court and after dismissing its state law case just eleven days before trial. (*See* Ex. A, noting jury trial scheduled for August 21, 2023). This time around, CCI seeks to convert a fatally flawed state court contract claim into a baseless RICO conspiracy allegedly to deprive CCI of a claimed contract that was never valid in the first place. The Court need look no further than CCI's initial state court complaint to

---

[1] In *Taylor Acquisitions*, the Sixth Circuit rejected contract-based due process claims following a city's rescission of a purchase agreement after an election altered the composition of the city government.

[2] A court may take judicial notice of other court proceedings and documents that are not reasonably in dispute without converting a motion to dismiss into one for summary judgment. *E.g.*, *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010); (*see also* Doc. 4-3) (CCI's state law complaint). Defendants also attach the state court docket sheet as Exhibit A.

evaluate the merits of CCI's new, defamatory allegations against Commissioner Moore and County Administrator Armbruster. CCI's obvious attempt to manufacture federal subject matter jurisdiction should be rejected, and this complaint should be dismissed.

**RELEVANT FACTS**

CCI's claims arise from the Board's decision to rescind a purported agreement between them.[3] (*See generally* Compl., Doc. 1 and 1-1 (attaching Agreement to Provide Goods and Services to Lorain County, Ohio) (the "Agreement")). The Agreement arises from an August 2022 Request for Proposal to upgrade the County's radio communications system (the "Radio Network RFP"). (Compl., Doc. 1, at ¶ 35-36). On August 15, 2022, three potential bidders, CCI, Motorola Solutions, and Vasu Communications, attended a pre-bid conference hosted by the Board. (*Id.*, at ¶¶ 44-45). Unfortunately, and despite a 14-day extension, the Board received only a single full response to the Radio Network RFP in October 2022—from CCI. (*Id.*, at ¶ 47).

With only one full bid, the Board moved forward with CCI. On December 21, 2022, the Board awarded the purported Agreement to CCI to install a new radio communications system and supply the required equipment and radios. (*Id.*, at Doc. 1-1). Former Commissioner Matthew Lundy, who had recently lost re-election to Commissioner Jeffrey Riddell, signed on behalf of the Board. (*Id.*).

Sections 4 and 5 of the alleged Agreement detail the expenditures required under the agreement. Specifically, the Board agreed to pay CCI $7,758,276.17 for the Agreement's equipment and services. (*Id.*). Despite this hefty expenditure of millions of

---

[3] Defendants fundamentally dispute that the alleged agreement constitutes a valid and binding contract. Instead, the Agreement was void *ab initio* for failure to attach the fiscal certificate required under Ohio Revised Code 5705.41(D)(1).

2

dollars in public funds, the alleged Agreement does not include a fiscal certificate as required under Ohio Revised Code 5705.41(D)(1).[4]

The alleged Agreement also included a 60-day window during which local governments would have the opportunity to sign subscription agreements acknowledging their participation in the new radio system and agreeing to pay monthly fees to CCI. (*Id.*) CCI could not begin performance until this window closed on February 21, 2023. (*Id.*). On January 9, 2023, 19 days after the Agreement was awarded and before CCI's performance began, the Board voted to rescind it. (*See* Jan. 9, 2023 Meeting Agenda, Doc. 1-4). Consequently, this contract contingency was never fulfilled. At the meeting, Commissioner Riddell supported rescission because "he objected to the bid process finding, '[t]wo of the [potentially bidding] vendors needed extra time [to submit their bid]' and that instead the requested 'additional time was denied and 15 days was allowed.'" (Compl., Doc. 1, at ¶ 83). Commissioner Moore also supported rescission based on his previously stated objections and a desire for the Board to "reset" and "allow additional buy in among communities...." (*Id.*)

On January 20, 2023, CCI filed its "Notice of Administrative Appeal and Complaint for Equitable Relief and Money Damages" in Lorain County Common Pleas. (Compl., Doc. 1, at ¶ 91)[5]; (*see also* Doc. 4-3, CCI's state court complaint, and Exhibit A). CCI's state

---

[4] As explained below, R.C. 5705.41(D)(1) prohibits an Ohio political subdivision from "mak[ing] any contract or giv[ing] any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the obligation..."

[5] CCI disingenuously claims that the state court's dismissal of its administrative appeal "demonstrates the lack of an adequate remedy in the state court proceedings." (Compl., Doc. 1, at ¶ 91). However, CCI neglects to disclose that its breach of contract and due process claims remained pending for trial before CCI chose to *voluntarily dismiss* them.

court complaint did not allege any RICO violations or any of the underlying "factual" allegations set forth in this action. The trial court granted the Board's motion to dismiss CCI's administrative appeal and set a jury trial on CCI's remaining claims for August 21, 2023. (*Id.*, at Ex. A). On August 10, 2023, facing a pending motion for summary judgment, CCI dismissed its state court complaint and filed this action. (*Id.*).

For the first time in this Court, CCI asserts baseless allegations of misconduct by Commissioner Moore and current County Administrator Armbruster[6] purportedly in a conspiracy aimed at preventing CCI from obtaining a contract for the radio system upgrade. (*See generally* Compl., Doc. 1, at Count One, ¶¶ 95-104). These woefully thin accusations, made with reckless abandon and without supporting evidence, do not allege a valid civil RICO claim—even under Fed. R. Civ. P. 12's lenient standard. CCI's civil RICO claim, like all of CCI's claims, should be dismissed.

## LAW AND ARGUMENT

### A. Standard of Review

A complaint can only survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss if it alleges sufficient facts "to state a claim to relief that is plausible on its face." *E.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims comprised solely of "labels and conclusions" or "formulaic recitations of a cause of action's elements will not do." *Id.* at 545. In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint but may also consider documents that a

---

[6] An integral element of CCI's claims against Armbruster alleges that he acted under color of law in perpetrating the alleged constitutional torts and RICO violations. However, Armbruster did not become county administrator until February 21, 2023, **after** the Agreement's rescission, and therefore had no authority or ability to control county governance with respect to CCI in the operative time frame. (*See* Ex. B, February 21, 2023 Board of Commissioners' Meeting Minutes, Resolution No. 23-166).

defendant attaches to its motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quotations and citations omitted).

Federal Rule 12(b)(1) permits dismissal of a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). When a defendant challenges subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction and the court may resolve factual disputes." *E.g.*, *Robinson v. Ohio Dept. of Dev.*, 69 F. App'x 204, 205 (6th Cir. 2003) (citations omitted); *see also Williams v. Hooah Sec. Services, LLC*, 729 F. Supp. 2d 1011, 1012 (W.D. Tenn. 2010) (noting that the court "has wide discretion to allow affidavit, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts") (quoting *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

### B. CCI's RICO claim against Defendants Moore and Armbruster does not pass muster.

To establish a violation of the RICO statute, a claimant must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). A plaintiff can only recover to the extent that it has been injured in business or property ***proximately caused*** by the conduct constituting the violation. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612 (6th Cir. 2004) (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)) (emphasis added).

In Count One of the Complaint, CCI alleges that Commissioner Moore and Administrator Armbruster, as part of an enterprise, conspired to "corruptly control the

awarding of contracts and the expenditure of state and federal funds for corrupt purposes" through a pattern of unlawful racketeering," and that as a result, CCI has been injured. (Compl., Doc. 1, at ¶¶ 101-104). In contrast to these conclusory (if salacious) statements, CCI pleads very little in the way of actual facts related to Administrator Armbruster's conduct:

- In early 2021, ***when he was not county administrator and had no authority***, Armbruster was in communication with Motorola about a potential contract with Lorain County. (*See* Compl., ¶ 25).

- In early 2021, ***when he was not county administrator and had no authority***, Armbruster received an email from CCI expressing interest in the potential contract. (*Id.*, at ¶ 26).

- In late July or early August 2021, ***when he was not county administrator and had no authority***, Armbruster was allegedly on the phone with Commissioner Moore when CCI claims Moore threatened to reveal Commissioner Hung's admitted extra-marital affair with then Lorain County 911 Director Harry Williamson if she supported CCI. (*See id.*, at ¶ 31).

- When Williamson called Armbruster after the Moore phone call, Armbruster allegedly said that Commissioner Hung "had a difficult political decision to make regarding the awarding of the radio contract." (*See id.*, at ¶ 32).

- "One or more Defendants" allegedly participated in exposing the Hung-Williamson affair in August 2021. "They" also terminated Williamson's employment as 911 Director and called for Hung's resignation. (*Id.*, at ¶ 33).[7]

These paper-thin accusations do not show that Armbruster was part of an enterprise, committed any predicate criminal acts, or otherwise participated in a pattern of corrupt activity. Moreover, this baseless alleged extortion occurred more than a year before the Radio Network RFP and almost two years before CCI ***was awarded*** the

---

[7] Since he was not employed by the County, Armbruster did not participate in or have any control over Williamson's termination.

Agreement, and Armbruster, who was not employed by the County at the time, was not involved in either awarding or rescinding the Agreement. There is absolutely no allegation that Armbruster's (or Moore's) purported predicate acts were the "factual and proximate cause" of CCI's alleged injuries—i.e., the loss of the Agreement. *See GM, LLC v. FCA US, LLC*, 44 F.4th 548, 558 (6th Cir. 2022) ("To state a [RICO] claim, the plaintiff must allege that the defendant's violation was both a factual and proximate cause of his injury.")

Because CCI fails to properly plead the elements of a RICO claim against Armbruster, the claim should be dismissed. *See Urbanek v. All State Home Mortgage*, No. 1:06 CV 1279, 2006 U.S. Dist. LEXIS 81301, *15-16 (N.D. Ohio Oct. 27, 2006) (Gaughan, J.); *see also Aaron v. Durrani*, No. 1:13-cv-202, 2014 U.S. Dist. LEXIS 32693, *24-28 (S.D. Ohio Mar. 12, 2014) (dismissing the second amended complaint because plaintiffs utterly failed to properly plead the elements of a §1962(c) RICO claim); *see also Salehpour v. Radojits*, No. 1:05CV363, 2006 U.S. Dist. LEXIS 112711, *11 (S.D.Ohio Mar. 22, 2006) ("Because the First Amended Complaint fails to plead all of the prima facie elements of a civil RICO claim, Defendant's Motion to Dismiss under Rule 12(b)(6)...is granted.").

In *Urbanek*, this Court dismissed federal RICO claims *sua sponte* against two defendants due to the complaint falling "far short" of pleading a RICO violation. (*Id.*, at 15-16). The Court found that the complaint "failed to allege a predicate act with regard to these defendants, let alone a pattern of racketeering activity." (*Id.*). As here, there, the plaintiff's generalized statements as well as a plain failure to satisfy heightened pleading requirements or the test for pleading mail or wire fraud could not constitute predicate acts that created a cognizable claim for racketeering activity. (*Id.*, at 9-10).

Presence on a call, merely communicating with or receiving communications from potential bidders, and stating that a public official engaged in an extramarital affair had a political decision to make, *assuming* any of this is true, is not enough to state a plausible allegation of racketeering activity. CCI entirely fails to state a viable RICO claim against Administrator Armbruster, and, therefore, this Court should dismiss the RICO claim against him.

Similarly, there is no viable RICO claim against Commissioner Moore based on alleged predicate acts that predated the Agreement by almost two years. Regarding the alleged improprieties of Mr. Gollner, CCI fails to offer a shred of evidence that Mr. Gollner acted "at the direction" of Commissioner Moore. (Compl., Doc. 1, at ¶ 102). It certainly is no coincidence that CCI never raised this allegation in its state court case, but now suddenly recalls Mr. Gollner's alleged unlawful proposition when it needs federal subject matter jurisdiction. Nonetheless, this purported "bribe" was never operational, so it had no bearing on the Agreement and did not cause CCI's alleged injury. *See GM LLC*, 44 F.4th at 559 (rejecting RICO claim based on alleged bribes used by a competitor to obtain an unfair business advantage because they did not cause plaintiff's injury).

The same is true of CCI's baseless claims that Commissioner Moore "extorted" Commissioner Hung with respect to her, now admitted extramarital affair with Harry Williamson in August ***2021***, or that Moore allegedly made "false statements" via wire to then-candidate Riddell, or that he instigated investigations into the Radio Network RFP. (Compl., Doc. 1, at ¶ 102). None of these claimed predicate acts is sufficient to manufacture a RICO claim against Commissioner Moore, particularly where CCI makes no effort to plead proper causation.

The undisputed cause of CCI's alleged injury was the Board's legislative decision to rescind the Agreement—the result of a protected process, not any of CCI's alleged predicate acts. Commissioner Moore (and Commissioner Riddell) have absolute immunity from suit for their legislative activities.[8] *Collins v. New Vienna*, 75 F. App'x 486, 488 (6th Cir. 2003) ("The Supreme Court clearly has determined that local legislators are absolutely immune from liability for legislative activities.") (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)); *accord Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997) ("Section 1983 was not intended to abolish [absolute government] immunity, and we have been given no reason to suppose that RICO was intended to abolish it either. It would be anomalous, we think, if officials who are immune from suit for alleged violations of the Constitution itself should be denied immunity from suit for alleged violations of a statute that does not incorporate the Constitution—particularly a statute as amorphous as RICO.").

Where a local legislator undertakes activities "in the sphere of legitimate legislative activity," he is immune from suits based on those activities. *See R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 437 (6th Cir. 2005); *Vaduva v. City of Xenia*, 780 Fed. Appx. 331, 335 (6th Cir. 2019) (additional citations omitted). Determining whether an act

---

[8] Alternatively, Commissioners Moore and Riddell would be entitled to qualified immunity for any of their actions that could be characterized as administrative. Qualified immunity is afforded to local legislators performing administrative discretionary functions, to the extent the actions were within the scope of their duties and were taken with a reasonable belief that they were lawful. *Haskell v. Washington Township*, 864 F.2d 1266, 1277 (6th Cir. 1988), cited by *Dressler v. Winkler*, S.D.Ohio No 1:11-cv-089, 2011 U.S. Dist. LEXIS 154236, *14 (Oct. 12, 2011); *see also Garvie v. Jackson*, 845 F.2d 647 (6th Cir. 1988). Qualified immunity protects government officials performing discretionary functions unless their conduct "violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). As outlined in the analysis related to CCI's § 1983 claims, CCI fails to show that any Defendant's conduct violated CCI's constitutional rights. As such, they cannot overcome the protection provided to the Commissioners under qualified immunity.

was legislative depends upon the nature of the act **without regard to the motive or intent of the officials involved**. *Collins*, 75 F. App'x. at 488 (citing *Bogan,* 523 U.S. at 54-55) (emphasis added).  Legislative immunity attaches to actions taken where an act is legislative in form and legislative in substance. *Bogan*, 523 U.S. at 55-56. An action is legislative in form if it is an integral step in the legislative process, like voting for or vetoing a bill, passing an ordinance, or introducing a budget. (*Id.*). There can be little dispute that the Board's resolutions rescinding the purported Agreement and related funding is legislative in both form and substance.

Several other circuits also extend legislative immunity to RICO allegations against elected officials for legislative acts in far more troubling circumstances. In *Chappell v. Robbins*, the Ninth Circuit granted a former state senator's motion to dismiss a civil RICO claim against him for bribes which he had admittedly taken while in office. 73 F.3d 918, 925 (9th Cir. 1996). The Court found that plaintiff could not prove proximate causation because his alleged injuries were caused by legislative acts, i.e., the voting and sponsoring of bills that the senator accepted bribes to perform. (*Id.*, at 921) ("These legislative acts cannot, under *Tenney* [*v. Brandhove*, 341 U.S. 367 (1951)], give rise to liability for damages. This is not a problem of proof. Plaintiff could not state a claim upon which relief could be granted because the conduct by which the bribe proximately caused his injury was legislative, and therefore immune.")  Here, where there are no allegations of bribes, and could not be, dismissal is all the more warranted.

Likewise, in *NRP Holdings LLC v. City of Buffalo*, the Second Circuit rejected civil RICO claims against elected officials accused of soliciting bribes for a public development project. 916 F.3d 177, 194 (2d Cir. 2019). In *NRP Holdings*, the plaintiff alleged that the mayor had refused to approve its development because the plaintiff refused to hire a

political ally of the mayor. *Id.*, at 183. The Court concluded that the plaintiff's claims were barred by legislative immunity:

> Having concluded that by declining to submit the resolutions for approval, Mayor Brown engaged in protected legislative conduct, we next consider whether that conduct is an essential component of NRP's civil RICO claim. We conclude that NRP's theory of RICO liability against all three individual defendants depends, in part, on a showing that Brown's legislative decision not to introduce Common Council resolutions was fatally tainted by improper motive. The Mayor could have declined to introduce the resolutions for either legitimate or illegitimate reasons; either way, this decision is protected by legislative immunity. We therefore affirm the District Court's conclusion that legislative immunity bars NRP's civil RICO claim against the individual defendants.

*Id.*, at 194. Here, because CCI's claims rest entirely on a legislative decision by the Board, Commissioner Moore is immune, and the RICO claim must be dismissed.

### C. CCI alleges a state law breach-of-contract claim, not a due process violation.

Sixth Circuit precedent is clear: "[B]ecause a due-process claim is predicated on the deprivation of a constitutionally protected interest *without due process of law*, the availability of a state breach-of-contract remedy defeats a due-process claim." *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017) (emphasis original); *see also Bowers v. City of Flint*, 325 F.3d 758, 764 (6th Cir. 2003) (holding that a state-created contractual right is an "'interest that is redressed adequately in a state law breach of contract action," and is simply not a proper subject of federal protection under the doctrine of substantive due process.") (quoting *Ramsey*, 844 F.2d at 1274).

Each of CCI's Fourteenth Amendment claims[9] relies on its alleged contractual rights under the Agreement. (*See* Compl., Doc. 1, at ¶¶ 108, 117, and 135).[10] To quote the Sixth Circuit, "the only difference between this case and any other garden-variety breach of contract case is that the [Board] happened to be one of the contracting parties." *Taylor Acquisitions*, 313 F. App'x at 832. CCI explicitly recognizes an adequate remedy by also pleading a breach of contract claim, both here and before the state court. (Compl., Doc. 1, at p. 29, Count 5); (*see also* Doc. 4-3, CCI's state court complaint). So, even assuming CCI has a protectable property interest in the Agreement, "[a] state breach of contract is most clearly an adequate remedy for a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties." *Ramsey*, 844 F.2d at 1273.

---

[9] Even if CCI had a cognizable property interest (it does not), CCI fails to allege facts sufficient to support its claim that it was deprived of procedural due process. Procedural due process generally requires that the state "provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F.App'x 826, 830 (6th Cir. 2009). To allege that it was deprived of due process, a plaintiff must allege that 1) it possessed a constitutionally protected property or liberty interest; 2) it was deprived of that interest; and 3) the state did not afford it adequate procedural rights prior to depriving it of that interest. (Id. citing *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006)). CCI does not allege facts sufficient to turn its weak breach of contract claim into a deprivation of due process. CCI alleges that the Board (or the undefined term "Board Majority") deprived CCI of procedural due process because the Board provided insufficient notice and no opportunity to be heard. (*See* Compl. at ¶¶128-132). First, because the Board's decision to rescind the Purported Contract was a legislative action, the Organizational Meeting provided all the process that was constitutionally due. *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 217 (6th Cir. 2011), citing *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 619 (6th Cir. 1997) (concluding that since no notice or hearing is required before legislative action, the board's action, in making the budgetary determinations that eliminated an alternative school, did not require that the teachers be given notice or an opportunity to be heard prior to the board's decision).

[10] For this same reason, CCI has no due process claim against the individual Defendants—only the Board with whom the alleged contractual relationship existed. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.")

12

The Sixth Circuit's decision in *Taylor Acquisitions* presents a factually analogous case where the Court rejected federal due process claims that could be remedied via a state breach of contract action. 313 F. App'x at 827. In *Taylor*, the plaintiff entered into a purchase agreement with a city for a residential development. *Id.* A subsequent election brought a new mayor and new city council majority, and the new administration canceled the purchase agreement. *Id.* at 829. The plaintiff sued alleging substantive and procedural due process violations and an equal protection claim. *Id.* The Sixth Circuit affirmed the district court's denial of the plaintiff's federal claims and held that a state law breach of contract claim provided an adequate remedy for plaintiff's state-based property interests. *Id.*, at 831.

The same is true here. Any alleged property interest in the Agreement, to the extent the Agreement is enforceable, is remedied by CCI's breach-of-contract claim previously pursued in state court. CCI cannot dispute that a breach of contract claim provides an adequate remedy, which is likely why it included such a claim in this action. The existence of this remedy is fatal to CCI's federal lawsuit. *See, e.g.*, *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017) (granting dismissal of contract-based due process claims and noting that plaintiffs-appellees "do not attempt to explain why a state breach-of-contract claim against the City of Lincoln Park is insufficient to safeguard their contractual property rights.")

The purported Agreement itself is void *ab initio*, so CCI also lacks any contract-based property interest necessary to sustain a due process claim. Under Ohio Revised Code 5705.41(D)(1), a political subdivision must attach a fiscal certificate from the relevant fiscal officer to any contract involving the expenditure of money. "***Every*** such contract made without such a certificate shall be ***void***, and no warrant shall be issued in

payment of any amount due thereon." *Id.* (emphasis added). The Agreement undisputedly does not have the requisite fiscal certificate and was void at inception. *See NaphCare, Inc. v. Cnty. Council Ohio*, 9th Dist. Summit No. 24906, 2010-Ohio-4458, ¶ 19 (holding that county contract lacking fiscal certificate was void and unenforceable); *see also City of Painesville v. Schulte*, No. 1:94-cv-1034, 1994 U.S. Dist. LEXIS 11419, *15 (N.D. Ohio Aug. 12, 1994). Without a valid contract, CCI has no cognizable property interest, and its claims fail.[11]

---

[11] In addition to the procedural due process claim, CCI does not sufficiently plead that it was deprived of substantive due process. Substantive due process is the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures in place. *Grinter v. Knight,* 532 F.3d 567, 572 (6th Cir. 2008). The doctrine "protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience." *Range v. Douglas,* 763 F.3d 573, 588 (6th Cir. 2014) (*citing Bell v. Ohio State Univ.,* 351 F.3d 240, 249-50 (6th Cir. 2003)); see also *Beck v. Benton, N.D.Ohio No. 3:09CV2179,* 2010 U.S. Dist. LEXIS 16395, *10 (Feb. 5, 2010) (citing *Mertik v. Blalock,* 983 F.2d 1353, 1367-68 (6th Cir. 1993)).

To state a substantive due process claim, CCI must allege that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action or an action that "shocks the conscience." *Braun v. Ann Arbor Charter Twp.,* 519 F.3d 564, 573 (6th Cir. 2008).

CCI had no cognizable property interest in the Agreement. This is fatal to its substantive due process claim. See *Ziss Bros. Constr. Co. v. City of Independence, N.D.Ohio No. 1:07 CV 3767,* 2008 U.S. Dist. LEXIS 104606 at *9-10 (Sept. 30, 2008) (establishing that a plaintiff must have a legitimate claim of entitlement to property to properly plead a substantive due process claim). A court in this Circuit has directly addressed the question of whether termination of a contract meets the "shock the conscience" standard and held in does not. *See Vision Real Estate Invest. Corp. v. Metro. Govt. of Nashville & Davidson Cty., M.D.Tenn. No. 3:18-cv-00014, 2020 U.S. Dist. LEXIS 140670, *17-18 (Aug. 6, 2020)* (citing *EJS Prop., LLC. v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012)) ("[T]ermination of contracts with the plaintiff, even if intentional and preplanned or clandestine and deceitful, does not shock the conscience in a manner that raises a substantive due process claim.").

CCI further fails to allege any specific conduct depriving it of its rights (such as they were) in the Agreement by conduct that could be said to "shock the conscience." The only action that deprived CCI of its interest in the Agreement was the vote to rescind it. The other salacious or conclusory allegations in the Complaint do not allege any causal relationship between that conduct and rescinding the Agreement.

**D. CCI does not identify any similarly situated individuals, so its equal protection claim must be dismissed.**

CCI's final constitutional claim, under the Equal Protection clause, is similarly meritless. "Under the Equal Protection Clause, the states cannot make distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Taylor Acquisitions*, 313 F. App'x at 836 (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). CCI alleges a violation of the third type since it does not allege the violation of a fundamental right and is not a member of a suspect class.

To succeed on such "class of one" equal protection claims, CCI must prove both that (i) it has been treated differently from similarly situated individuals, and (ii) that the disparate treatment was without rational basis. *Id.* This requires CCI to demonstrate that it and other individuals who were treated differently were similarly situated in *all* material respects. *Id.*; *see also Taylor Acquisitions*, 313 F. App'x at 836 (recognizing that "bare allegations that 'other' applicants, even 'all other' applicants, were treated differently is insufficient; a plaintiff must show that these 'other' applicants were similarly situated to the plaintiff.")

CCI fails to allege the existence of similarly situated individuals, which dooms its equal protection claim. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals, let alone evidence of situations where the proposed rezoning was similar in scale or impact. As a result, we need not apply the rational basis test because the plaintiffs have failed to demonstrate the existence of any similarly situated

15

landowners.") (Emphasis original). Indeed, as the only fully responsive bidder for the Radio Network RFP, CCI's allegations concede that no similarly situated individuals exist. (*See* Compl., Doc. 1, at ¶¶ 50) (alleging that "only CCI's proposal was compliant with the Radio Network RFP).

At best, even under the Rule 12 standard, CCI alleges that the Board unfairly targeted it *individually* when it rescinded the Agreement. But "[i]nasmuch as [CCI] merely alleges that [it] was treated unfairly as an individual by [the Board's] actions, [its] equal protection claim was properly dismissed." *Radvansky*, 395 F.3d at 313 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999)).

The similarly situated element is not the only insurmountable hurdle for CCI's equal protection claim. CCI must also establish that the Board's decision to rescind the Agreement lacked *any* rational basis. "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis by either negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *Taylor Acquisitions*, 313 F. App'x at 837 (quoting *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005)). To overcome such a burden, a plaintiff "must demonstrate that the differential treatment [it] was subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [government's] actions were irrational." *Id.*

CCI concedes that the Board rescinded the Agreement due, in part, to concern about awarding an almost $8,000,000 public contract with only one bidder. (Compl., Doc. 1, at ¶ 83). The Board's noted concern about the proper stewardship of public funds confirms that the decision to rescind was not irrational. *Taylor Acquisitions*, 313 F. App'x at 837 (noting that the City's justification of protecting the City's financial interests and

eliminating overly generous financial subsidies to developers precluded a finding that the decision was irrational for purposes of an equal protection claim).

Nor was it motivated by ill-will or animus toward CCI. To demonstrate animus or ill-will, "a plaintiff must prove that the challenged government actions were motivated by personal malice *unrelated to the defendant's official duties*." *Id*., at 838 (quoting *Klimik v. Kent County Sheriff's Dep't*, 91 F. App'x 396, 401 (6th Cir. 2004) (emphasis original) (additional quotations omitted). CCI's groundless allegations of prejudice extend only to Commissioner Moore[12]—not to the Board itself. There is no allegation that Commissioner Riddell, who cast the deciding vote to rescind the Agreement, acted with any personal animus or ill-will toward CCI. (*See* Compl., Doc. 1, at ¶ 86).

Likewise, potential animus toward a *project* (or contract) does not establish animus toward the plaintiff itself. *See Taylor Acquisitions*, 313 F. App'x at 838 (rejecting plaintiff's equal protection claim where the new administration demonstrated animus toward the development project—not the plaintiff). Like in *Taylor Acquisitions*, CCI concedes that Commissioner Riddell campaigned on redoing the radio project, which included rescinding the purported Agreement with CCI. (*See* Compl., Doc. 1, at ¶ 15). This

---

[12] Indeed, CCI fails to state individual-capacity claims against Commissioners Moore and Riddell. Section 1983 claims can be brought as official-capacity claims and individual-capacity claims. *Myers*, 2019 U.S. Dist. LEXIS 103910 at 7. Official-capacity claims against a person are "essentially claim[s] against the municipality." (*Id.)* (quoting *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent")). On the other hand, individual-capacity claims seek to hold an official personally liable for the wrong alleged. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).

CCI's claim that it was deprived of constitutional rights rests entirely on a legislative decision by the Board to rescind the Purported Contract. (*See* Compl. generally). The Complaint does not and cannot plead any specific factual conduct allegations pertaining to the actions that Commissioners Moore or Riddell took to deprive CCI of its constitutional rights ***outside*** of the vote to rescind the Purported Contract. As such, CCI fails to state § 1983 claims against Commissioners Moore and Riddell in their individual-capacities.

is plainly insufficient to establish an equal protection claim, and the Court should grant Defendants' motion to dismiss.

**E. The purported Agreement is void without a fiscal certificate.**

As established above, "[i]t is a long-standing principle of Ohio law that all governmental liability *ex contractu* must be express and must be entered into in the prescribed manner, and that a municipality or county is neither liable on an implied contract nor upon a *quantum meruit*." *NaphCare*, 2010-Ohio-4458, at ¶ 23; *see also Frisbie Co. v. East Cleveland*, 98 Ohio St. 266, 120 N.E. 309 (1918) (syllabus) ("Where a statute prescribes the mode of exercise of the power therein conferred upon a [public] body, the mode specified is likewise the measure of the power granted, and a contract made in disregard of the express requirements of such a statute is not binding or obligatory upon the [public body].")

The Ohio Revised Code provides that a political subdivision shall not make a contract involving the expenditure of money without attaching thereto a certificate of the fiscal officer. R.C. 5705.41(D)(1). This fiscal certificate must certify that "the amount required to meet the obligation ... has been lawfully appropriated for such purpose and is in the treasury or in the process of collection to the credit of an appropriate fund free from any previous encumbrances." *Id.* "***Every*** such contract made without such a certificate shall be ***void***, and no warrant shall be issued in payment of any amount due thereon." *Id.* (Emphasis added).

There are only two exceptions to the fiscal certificate requirement, and neither is applicable here: (1) where a board of county commissioners adopts a resolution exempting county purchases of one thousand dollars or less; and (2) where a contract obligates only the earnings of a public utility or water works. R.C. 5705.41(D)(2); R.C.

18

5705.44. There are no exceptions to the fiscal certificate requirement other than those granted by statute. *City of Toledo v. Corr. Comm. of Northwest Ohio*, 2017-Ohio-9149, 103 N.E.3d 209, ¶ 54 (6th Dist.) (citing *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 15); *see also State ex rel. Stoll v. Logan Cnty. Bd. of Elections*, 117 Ohio St.3d, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 39 (a court may not add an exception to a statute where the statute contains none).

The Board is a political subdivision subject to the fiscal obligations and limitations of R.C. Chapter 5705. *See* R.C. 5705.01(A). Because the alleged Agreement obligated the Board to expend a specific amount of money, in the millions of dollars, R.C. 5705.41 undisputedly required a fiscal certificate to be attached. (*See* Doc. 1-1, at ¶¶ 4-5).

A contract entered into contrary to one or more legislative requirements is void and unenforceable. *See Lathrop Co. v. Toledo*, 5 Ohio St.2d 165, 172, 214 N.E.2d 408 (1966); *Lancaster v. Miller*, 58 Ohio St. 558, 576-577, 51 N.E. 52 (1898) (denying recovery under a municipal contract entered into for the installation of certain sewer components without the required fiscal certificate); *Pincelli v. Ohio Bridge Corp*., 5 Ohio St.2d 41, 46, 213 N.E.2d 356 (1966) (holding that the failure to attach a fiscal certificate to a county contract, as required under R.C. 5705.41, voided the contract); *accord City of Oberlin v. Lorain Cnty. Joint Vocational Sch. Dist. Bd. of Educ.,* 2019 Ohio 3977 (Ohio Ct. App. 2019), ¶ 13 (recognizing that the failure to attach a fiscal certificate to a public contract, where required, is fatal to the contract's validity).

The Ohio Ninth District Court of Appeal's decision in *NaphCare* is dispositive. *See* 2010-Ohio-4458. In *NaphCare*, a purported county contract for healthcare services at the local jail lacked a fiscal certificate. *Id.*, at ¶¶ 2; 11. The Ninth District found that the parties' failure to attach a fiscal certificate was fatal to the contract and affirmed the trial court's

grant of summary judgment in favor of the county. *Id.*, at ¶ 11 ("Where a [fiscal] certificate is required, failure to include one is fatal to the validity of the contract."). The Court further held that NaphCare could not recover for breach of contact where the contract was void. *Id.*, at ¶ 19.

Here, it is undisputed that the purported Agreement does not attach the required fiscal certificate. (*See* Doc. 1-1, Exhibit A to Pl.'s Compl.). Without it, the alleged Agreement is void and unenforceable under Ohio law. R.C. 5705.41(D)(1) (stating that every such contract without a fiscal certificate is void). Furthermore, CCI cannot recover under a void contract. *NaphCare*, 2010-Ohio-4458 at ¶ 19. (citing *Buchanon Bridge Co. v. Campbell*, 60 Ohio St. 406, 420, 54 N.E. 372 (1899) (holding that contracts made in violation of statutory requirements are void, not merely voidable, and courts will not lend their aid to enforce such contracts); *see also Frisbie Co.*, 96 Ohio St. at 274 (same).

For this reason alone, CCI's breach of contract claim should be dismissed. However, the Court need not weigh this issue to dispose of CCI's state law claim, it can (and should) decline to exercise supplemental jurisdiction over this claim. *See Faughender v. City of North Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991) (noting that where the federal claims have been dismissed, a district court should dismiss be dismissed without reaching the merits on jurisdictional grounds). Moreover, given the state-law specific issues raised by the lack of a fiscal certificate, CCI's breach of contract claim is best interpreted at the state court level.

## CONCLUSION

For the reasons set forth above, CCI's claims lack merit and should be dismissed.

Respectfully submitted,

*/s/ Stephen M. Bosak*
Matthew A. Dooley (0081482)
Ryan M. Gembala (0079431)
Patrick M. Ward (0095420)
Stephen M. Bosak, Jr. (0092443)
Michael R. Briach (0097986)
5455 Detroit Road
Sheffield Village, Ohio 44054
Tel:    (440) 930-4001
Fax:    (440) 934-7208
Email: mdooley@dooleygembala.com
          rgembala@dooleygembala.com
          pward@dooleygembala.com
          sbosak@dooleygembala.com
          mbriach@dooleygembala.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies the foregoing was served upon the following

individuals via electronic mail on October 27, 2023:

Edmund W. Searby
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, Ohio 44113
Email: esearby@porterwright.com

Allen T. Carter
Porter Wright Morris & Arthur LLP
41 South High Street
Columbus, Ohio 43215
Email: acarter@porterwright.com

Dean DePiero
DePiero Law
5546 Pearl Road
Parma, Ohio 44129
Email: depierolaw@gmail.com

/s/ Stephen M. Bosak
Stephen M. Bosak
*Counsel for Defendant Lorain County Board of*
*Commissioners*