IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CLEVELAND COMMUNICATIONS, INC.,** | CASE NO. 1:23-cv-1561 |
| Plaintiff, | UNITED STATES DISTRICT JUDGE CHARLES ESQUE FLEMING |
| vs. | |
| **LORAIN COUNTY BOARD OF COMMISSIONERS, et al.** | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (DOC. 19)**

**INTRODUCTION**

Cleveland Communications, Inc. (CCI) now attempts a *fifth* bite at the apple through a supplemental motion proffering a second proposed "Second Amended Complaint." (*See* Doc. 19 and Doc. 19-1).[1] This new amendment adds a meritless cause of action for malicious prosecution and includes additional and slanderous factual allegations aimed at bolstering CCI's faulty claims.[2] Just like the last attempt, this new "amendment" is futile, and the Court should deny CCI's motion for leave, and grant Defendants' pending motion to dismiss (Doc. 12).

---

[1] This dispute originated in the Lorain County Court of Common Pleas on January 20, 2023. This latest "Second" Amended Complaint represents the *fifth* iteration of CCI's claims, none of which have ever reached the merits. *See Cleveland Communications, Inc. v. Lorain County Board of Commissioners*, Lorain Cty. Common Pleas Case No. 23-CV-207964.

[2] CCI's initial proposed Second Amended Complaint (Doc. 13-1) previously added a retaliation claim against Defendant Jeffrey Armbruster, but Mr. Armbruster was not even a Lorain County employee when the Board of Commissioners voted to sever any ties with CCI on January 9, 2023. (See Doc. 13-1, at Count Seven).

**RELEVANT BACKGROUND[3]**

Several years ago, the Lorain County Board of Commissioners began searching for a solution to replace its emergency radio communications system with new technology that would give first responders the ability to communicate within buildings and remote areas. After examining various options, in the spring of 2022, the County solicited bids for a new system that would solve these challenges not only for the benefit of first responders, but also for the citizens they serve. Vasu Communications, Motorola, and CCI all expressed an interest in the project, but only CCI submitted a proposal after the County granted CCI's request for additional time to prepare a response but denied similar requests by Vasu and Motorola. Thus, with only one bid, the County accepted CCI's proposal in late December 2022, just before Commissioner Jeff Riddell took office in January 2023.

Commissioner Riddell's campaign platform included criticisms of the process leading to the CCI contract. Not only did the process lead to a sole-bid multi-million dollar contract, but the end product was not in the County's best interest. Indeed, CCI's contract with the County only related to the sale of portable radios manufactured by L3 Harris – not the construction of the underlying communication network. Under CCI's proposal, the County would never own the antennas, towers, or other infrastructure comprising the system. Instead, the County would pay uncapped fees to lease access to the infrastructure, which would be owned and operated by CCI and almost certainly funded through the County's purchase of radios from CCI at marked up prices.

---

[3] Defendants' renewed motion to dismiss (Doc. 12) and prior opposition to CCI's motion for leave (Doc. 15) set forth the relevant facts in greater detail and are incorporated herein.

CCI made no firm commitments to build the underlying infrastructure, nor did it guarantee functionality or accessibility. Most significantly, it made no promises regarding the future cost to access its private network, which would also remain at CCI's whim. Importantly, CCI is not a radio manufacturer nor is it in the business of owning and operating communication networks for first responders. It markets itself as a "full service two-way radio sales and service organization" and highlights the fact that it "represent[s] Harris Public Safety and Professional Communications". *See* http://clecom.com/CCI-SITE-3-ABOUT-US-.html (last visited May 30, 2024). Thus, CCI is a classic middleman making a profit off the sale of other companies' products.[4]

Delving deeper into CCI's proposal, it also became clear that the price for the various radio units offered by CCI was higher than the price guaranteed through a separate contract negotiated between the State of Ohio and L3 Harris. Perhaps unknown to most citizens, the Ohio Department of Administrative Services (DAS) regularly negotiates prices with vendors of all types, which are then available to public agencies to purchase without first advertising for bids. In this case, CCI marked up the price of the radios to be greater than the price the County would pay if simply buying the radios directly from L3 Harris under the DAS contract.

Knowing that CCI planned to own and control the County's emergency radio communication system – and was price-gouging the County for the radios – the County rescinded its approval of the CCI proposal on January 9, 2023. This decision was met with

---

[4] Although L3 Harris radios are sometimes sold for civil applications, the company primarily focuses on defense-related technologies. *See* https://www.l3harris.com/capabilities (last visited May 30, 2024). In fact, its portable radio technology is geared toward battlefield use, and the need to coordinate communications among multiple battalion-sized elements engaged in combat operations.

3

relentless criticism from first responders, who had been told by CCI that only the L3 Harris radios would solve their communication needs. Against this backdrop, CCI attempted to administratively appeal the County's decision to the Lorain County Common Pleas Court. The court dismissed the appeal, and CCI later voluntarily dismissed its remaining breach of contract claim after facing a hard deadline to disclose its alleged lost profits. The company then immediately filed this case alleging the same facts but attempting to create a false sense of illegality by adding extravagant but meritless RICO and constitutional claims.

In the summer of 2023, the County published a new RFP seeking proposals from companies capable of building a radio system *to be owned by the County*, which would be interoperable among all agencies and accessible inside buildings and remote areas. Only Motorola and EF Johnson/Kenwood provided a response. Although CCI attended various meetings about the RFP, the company openly refused to submit a proposal.

The County's consulting firm, MCM Consulting Group, Inc., evaluated the two proposals and recommended that the County move forward Motorola's plan to construct a Project 25 compliant,[5] 700-800 MHz system compatible with the State of Ohio MARCS network. As radio technologies have evolved over the last decade, so has the State's interest in ubiquity among agencies who may be called upon to coordinate a response to mass casualty or other significant event. In Ohio, this effort to standardize the emergency communications network is known as MARCS – Multiagency Radio Communications

---

[5] The P25 standard was promulgated by the federal government specifically to "provide a number of technical specifications for emergency communications equipment designed to ensure that equipment is interoperable, regardless of manufacturer." *See* https://www.cisa.gov/sites/default/files/publications/SAFECOM%20Guidance%20FAQ_P25%20Compliance_05-08-2017_508.pdf (last visited May 30, 2024).

System – and is managed by the Department of Administrative Services. *See* https://das.ohio.gov/technology-and-strategy/marcs (last visited May 30, 2024).

Today, the MARCS network is used by more than 3,000 agencies operating more than 140,000 mobile radios. MARCS already operates several tower sites in Lorain County that support communication by the Ohio Highway Patrol and other state agencies. To build out this network further, Motorola proposed to build additional tower sites *owned and controlled by the County*, which together would cast a wide net capable of supporting communications from Vermilion to Avon, and Wellington to Lake Erie. Under Motorola's proposal, various agencies throughout Lorain County would be free to use any P25-compliant radio, whether manufactured by Motorola, Kenwood, or L3 Harris. Additionally, the maintenance costs associated with the infrastructure will be borne by MARCS through 2038 (and likely beyond), saving County taxpayers millions of dollars.

Facing the fact that the County is moving forward with its own system and not willing to simply *lease* access to safety-critical infrastructure from a small private Cleveland company, CCI continues to fan the flames by further stretching its allegations of illegality, even though its claims – old and new – are facially meritless. For CCI, this may be a bet-the-company case, not because the County rescinded the 2022 contract, but because CCI made promises to first responders in the last year that it cannot keep. After all, CCI originally planned to build its own infrastructure and lease public safety forces the right to use its private system. But now that CCI has sold more radios than it originally expected, it still has no plans to build the underlying infrastructure. Instead, the company seeks to force the County into financing CCI's obligation through this lawsuit, in a continuing effort to privately operate a safety-critical system. As a small company led by a single person, CCI likely always lacked the financial liquidity to bond such a large

5

project, and therefore focused solely on its role as a radio storefront and not a communications network provider. Put another way, CCI paints itself as a victim to hide from its inability to deliver on its own promises.

Rather than weaponizing local first responders and promoting a false narrative, CCI should be echoing the fact that L3 Harris radios will function seamlessly on the County's new system, just like radios manufactured by Motorola, Kenwood, and other P25-compliant companies. But CCI is not litigating this case because it cares about what is best for first responders and County taxpayers; it cares only about its ability to charge uncapped fees to access a private emergency communication system indefinitely.

CCI's supplemental motion for leave seeking a second "Second Amended Complaint" does nothing more than delay the inevitable. Like its prior attempted amendments, CCI's latest version does not state a cognizable claim. Instead, CCI merely regurgitates its conspiratorial accusations in a thin-veiled effort to denigrate the County, its commissioners, and its employees. CCI's motion for leave should be denied, and its case should be dismissed in its entirety.

## LAW AND ARGUMENT

### A. Standard of Review

As CCI recognizes, leave to amend under Fed. R. Civ. P. 15 need not be given if the reason for the amendment suggests "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of amendment, etc." (Doc. 13, *quoting Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 640 (6th Cir. 2018) (additional citations omitted). Likewise, "courts need not give leave to amend when doing so would be futile." *E.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355

6

(6th Cir. 2014) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). Amendment is futile when the proposed amendment would not survive a motion to dismiss. *Id.*

CCI's *new* proposed second amended complaint inserts a new claim for malicious prosecution against County Commissioner David J. Moore. (Doc. 19-1, Count Eight). But like previous claims, its new amendment is facially defective and subject to dismissal. Certainly, CCI should not be granted unlimited opportunities to piece together or reshape claims that cannot survive no matter how far it leaps into fanciful fiction. Simply put, both the malicious prosecution claim and CCI's previously proposed retaliation claim (Count Seven) cannot pass muster under Fed. R. Civ. P. 12(b)(6), and as a result, the Court should deny CCI's supplemental request for leave to amend.

**B. CCI's new malicious prosecution claim is meritless and subject to dismissal outright.**

In Ohio, a cause of action for malicious criminal prosecution requires a plaintiff to prove: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. *E.g.*, *Froehlich v. Ohio Dep't of Mental Health*, 114 Ohio St.3d 286, 288 (2007) (quoting *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 146 (1990)). CCI cannot pass the first hurdle because Commissioner Moore did not "institute" any prosecution against CCI. At bottom, CCI alleges that Commissioner Moore wrote a letter to the Auditor of the State of Ohio "seeking a criminal investigation" that included "false allegations concerning CCI's involvement in purported criminal wrongdoing[.]" (Doc. 19-1, at ¶¶ 193-94). Even if CCI could prove that Commissioner Moore wrote the letter with malice, simply asking for a criminal investigation does not constitute actionable malicious prosecution. *See Barnes*

*v. City of Beachwood*, 2006-Ohio-3948, ¶ 20 (8th Dist.) (finding that a city law director who submitted a report accusing plaintiff of criminal conduct did not institute the criminal proceedings against him and dismissing malicious prosecution claim).

In *Barnes*, the appellate court noted that "[e]ven if, as alleged, defendant Levin knowingly and maliciously ordered the report's preparer to omit plaintiff's version of events from the final report submitted to the prosecutor, the decision to charge plaintiff with a crime was ultimately within the sole discretion of the prosecutor, and defendant Levin was not the party who instituted the criminal proceedings against plaintiff." *Id.* (citing *Archer v. Cachat*, 165 Ohio St. 286, 288 (Ohio 1956) ("if an informer merely provides a statement of his belief of criminal activity and leave the decision to prosecute entirely to the uncontrolled discretion of the prosecutor…the informer is not regarded as having instituted the criminal proceedings."). Moreover, CCI concedes that no criminal proceeding has taken place to date, and the company has not faced criminal prosecution.

Equally fatal to CCI's malicious prosecution claim is the absolute immunity that cloaks Commissioner Moore's letter to the State Auditor. "[T]he doctrine of absolute privilege protects any person who makes a statement or submits an affidavit to a prosecutor for the purpose of reporting the commission of a crime – even if the statements are false, and are made in bad faith with knowledge of their falsity and with actual malice." *Barnes*, 2006-Ohio-3948, ¶ 17 (citing *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505 (Ohio 1994)). As the *Barnes* court recognized, absolute privilege has repeatedly been applied in Ohio courts to preclude malicious prosecution claims against individuals who report perceived criminal activity. *Id.*, at ¶ 19 (citing cases, including *Fair v. Litel Communication, Inc.*, 10th Dist. Franklin No. 97AP06-804, 1998 Ohio App. LEXIS 930 (observing that Ohio Supreme Court's decision in *DiCorpo* "provided an absolute

8

privilege against civil liability in an action for malicious prosecution to one who presented information to a prosecutor which resulted in criminal proceedings."); *see also Reasbeck v. Wheeling Pittsburgh Steel Corp.*, No. 99-3441, 2000 U.S. App. LEXIS 23678, at *10 (6th Cir. Sept. 18, 2000) (affirming dismissal of malicious prosecution claim and recognizing that the absolute privilege against civil liability for statements made to a prosecutor is settled Ohio law).

Like in *Barnes*, writing a letter to state authorities citing potential criminal activity does not create civil liability for malicious prosecution. Such statements, regardless of alleged falsehood or malicious intent, are protected by an absolute privilege against civil liability. Thus, CCI's proposed malicious prosecution claim is meritless and the proposed amendment is futile.

**C. CCI's proposed retaliation claim against Armbruster is facially deficient.**

The same is true of CCI's proposed retaliation claim. (*See* Doc. 13-1, at Count Seven; Doc. 19-1, Count Seven). Although originally claiming that Armbruster's alleged misconduct was motivated by his purported preference for Motorola, CCI now alleges that the federal lawsuit caused him to retaliate against CCI by interfering with CCI's contract with the City of Elyria. (Doc. 19-1, at ¶ 189). Putting aside these dubious factual allegations, there is no general right to claim retaliation under 42 U.S.C. § 1983. *Evans v. Celeste*, No. C-2-87-1181, 1989 U.S. Dist. LEXIS 6203, at *7-8 (S.D. Ohio Feb. 24, 1989) ("Unlike Title VII, Section 1983 contains no specific provisions relating to retaliation…Therefore, a claim for retaliation under Section 1983 will only be valid if the retaliatory action itself violates some federal right.") (citing *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984)).

9

Here, the retaliatory conduct itself is described, at best, as alleged tortious interference with CCI's purported contract and business relationships. (Doc. 13-1, at ¶¶ 111-113 (alleging that Armbruster has blocked CCI from servicing its equipment and encouraged unnamed first responders not to purchase radios from CCI); (Doc. 19-1, at ¶¶ 123-127) (same). Retaliation claims arising from alleged violations of state law are insufficient to support a claim under Section 1983. *Saal v. City of Wooster*, 2020 U.S. Dist. LEXIS 28808, at *14 (N.D. Ohio Feb. 20, 2020) (rejecting retaliation claim under 42 U.S.C. § 1983 and noting "[i]t is well established that "a mere violation of...state law will not establish a proper claim under § 1983.") (quotations and citations omitted); *see also id.* (recognizing that "no clearly established right exists under the equal protection clause to be free from retaliation.") (quoting *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340 (11th Cir. 1995)).

There simply is no constitutional protection for filing groundless federal lawsuits, so CCI cannot claim alleged retaliation arising from this action. *See Nestle Ice Cream Co. v. NLRB*, 46 F.3d 578, 585 (6th Cir. 1995) ("there is no First Amendment right to 'baseless litigation'") (citations omitted); *see also Goodell v. Lewis*, 2023 U.S. Dist. LEXIS 124068, at *8 (E.D. Mich. June 29, 2023) (citing *Henry v. Dinelle*, 2011 U.S. Dist. LEXIS 136583, at *7 (N.D.N.Y. Nov. 29, 2011) ("of course, filing a court action that is frivolous is not constitutionally protected activity.") As set forth above, CCI has no cognizable federal claims and no basis for federal jurisdiction. CCI cannot claim constitutional retaliation based on claims that do not belong in federal court in the first place.

CCI also makes little effort to demonstrate causation. *See Ryan v. Gerlach*, 2015 U.S. Dist. LEXIS 121975, at *15 (W.D. Mich. Aug. 17, 2015) (recognizing that a plaintiff must establish that the protected activity was the but-for cause of defendant's retaliation

(quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 ("We have interpreted this inquiry to mean that a 'motivating factor' is essentially but-for cause—'without which the action being challenged simply would not have been taken.'") (citations omitted). CCI's complaint clearly alleges that Armbruster's purported preference for Motorola was the "motivating factor" driving his conduct. (Doc. 13-1, at ¶ 1) ("the Co-Conspirators schemed to steer the contract to Motorola Solutions…"; *and* ¶ 86 ("Moore, Armbruster, and their confederates schemed to award the contract to Motorola…"); (Doc. 19-1, at ¶¶ 2; 97). CCI cannot establish but-for causation when the crux of its lawsuit relies on an alleged conspiracy to award the contract to Motorola—not retaliate against CCI.

### D. CCI's existing claims remain subject to dismissal.

CCI concedes that its first six claims for relief remain unchanged in its proposed second amended complaints. (*Compare* Doc. 10 with Doc. 13-1 and Doc. 19-1). Again, CCI attempts to convert its previously dismissed state law breach of contract claim into a baseless RICO conspiracy. (*See generally* Doc. 12).[6] CCI's redundant RICO claims fail to allege that Armbruster's (or Moore's) purported predicate acts were the "factual and proximate cause" of CCI's alleged injuries—i.e., the purported loss of the Agreement. *See GM, LLC v. FCA US, LLC*, 44 F.4th 548, 558 (6th Cir. 2022) ("To state a [RICO] claim, the plaintiff must allege that the defendant's violation was both a factual and proximate cause of his injury.")

Instead, the undisputed cause of CCI's alleged injury was the Board's legislative decision to rescind the Agreement—the result of a protected process, not any of CCI's alleged predicate acts. Commissioner Moore (and Commissioner Riddell) have absolute

---

[6] Defendants fully incorporate its renewed motion to dismiss, which details the fundamental flaws in CCI's existing claims. (Doc. 12).

11

immunity from suit for their legislative activities. *Collins v. New Vienna*, 75 F. App'x 486, 488 (6th Cir. 2003) ("The Supreme Court clearly has determined that local legislators are absolutely immune from liability for legislative activities.") (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)); *accord Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997) ("Section 1983 was not intended to abolish [absolute government] immunity, and we have been given no reason to suppose that RICO was intended to abolish it either. It would be anomalous, we think, if officials who are immune from suit for alleged violations of the Constitution itself should be denied immunity from suit for alleged violations of a statute that does not incorporate the Constitution—particularly a statute as amorphous as RICO.").

As a result, CCI cannot maintain a RICO claim arising from the performance of legislative acts. (*See* Doc. 12, at pp. 10-11) (citing *Chappell v. Robbins*, 73 F.3d 918, 925 (9th Cir. 1996) (dismissing RICO claim against state legislator and noting that "Plaintiff could not state a claim upon which relief could be granted because the conduct by which the bribe proximately caused his injury was legislative, and therefore immune"); *and NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 194 (2d Cir. 2019) ("We conclude that NRP's theory of RICO liability against all three individual defendants depends, in part, on a showing that Brown's legislative decision not to introduce Common Council resolutions was fatally tainted by improper motive. The Mayor could have declined to introduce the resolution for either legitimate or illegitimate reasons; either way, this decision is protected by legislative immunity. We therefore affirm the District Court's conclusion that legislative immunity bars NRP's civil RICO claim against the individual defendants.")

Likewise, CCI's Fourteenth Amendment claims rest entirely on its purported contractual rights to the Agreement. (*See* Doc. 10, at ¶¶129, 138, and 156); (*see also* Doc.

12

13-1, at ¶¶ 133, 142, and 161; Doc. 19-1, at ¶¶ 149, 156, 175). However, Sixth Circuit precedent is clear: "[b]ecause a due-process claim is predicated on the deprivation of a constitutionally protected interest *without due process of law*, the availability of a state breach-of-contract remedy defeats a due-process claim." *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017) (emphasis original); *see also Taylor Acquisitions, LLC v. City of Taylor*, 313 F. App'x 826, 832 (6th Cir. 2009) (rejecting due process claims and noting that "the only difference between this case and any other garden-variety breach of contract case is that the City happened to be one of the contracting parties.")[7]

CCI explicitly recognized that it had an adequate remedy via its state law breach of contract claim brought in state court. (*See* Doc. 4-3, CCI's state court complaint). CCI's decision to **voluntarily dismiss** that claim does not suddenly create federal jurisdiction. *See Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273 (6th Cir. 1988) ("A state breach of contract claim is most clearly an adequate remedy for a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties.")

Here, the Agreement itself is void *ab initio* and cannot support *any* contract-based property interest. Under Ohio Revised Code 5705.41(D)(1), a political subdivision must attach a fiscal certificate from the relevant fiscal officer to any contract involving the expenditure of money. "Every such contract made without such a certificate **shall be void**, and no warrant shall be issued in payment of any amount due thereon." R.C. 5705.41(D)(1) (emphasis added). CCI does not—and cannot—allege that the alleged

---

[7] In *Taylor Acquisitions*, the Sixth Circuit rejected contract-based due process claims following a city's rescission of a purchase agreement after an election altered the composition of the city government.

13

Agreement has the requisite fiscal certificate that would create an enforceable contract. As a matter of law, without the fiscal certificate, the Agreement was void at inception. *NaphCare, Inc. v. Cnty. Council Ohio*, 9th Dist. Summit No. 24906, 2010-Ohio-4458, ¶ 19 (holding that county contract lacking fiscal certificate was void and unenforceable); *see also City of Painesville v. Schulte*, No. 1:94-cv-1034, 1994 U.S. Dist. LEXIS 11419, *15 (N.D. Ohio Aug. 12, 1994). Without a valid contract, CCI has no cognizable property interest, and its breach of contract and constitutional claims fail.

CCI's Equal Protection claim suffers additional facial deficiencies due to the complete lack of similarly situated individuals. (*See* Doc. 12, at pp. 15) (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals, let alone evidence of situations where the proposed rezoning was similar in scale or impact. As a result, we need not apply the rational basis test because the plaintiffs have failed to demonstrate the existence of any similarly situated landowners.") At best, CCI alleges that the Board unfairly targeted its alleged Agreement *individually* when it rescinded the Agreement. But "[i]nasmuch as [CCI] merely alleges that [it] was treated unfairly as an individual by [the Board's] actions, [its] equal protection claim was properly dismissed." *Radvansky*, 395 F.3d at 313 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999)).

## CONCLUSION

CCI's proposed second amended complaints do nothing to cure the fatal deficiencies that have persisted throughout CCI's prior pleadings. Any further amendment with respect to these claims is futile and should be rejected. Instead, the

Court should grant Defendants' existing motion to dismiss terminating the case entirely. (Doc. 12).

                                                    Respectfully submitted,

                                                    */s/ Matthew A. Dooley*
                                                    Matthew A. Dooley (0081482)
                                                    Ryan M. Gembala (0079431)
                                                    Patrick M. Ward (0095420)
                                                    Stephen M. Bosak, Jr. (0092443)
                                                    Michael R. Briach (0097986)
                                                    DOOLEY, GEMBALA, McLAUGHLIN
                                                    & PECORA CO., LPA
                                                    5455 Detroit Road
                                                    Sheffield Village, Ohio 44054
                                                    Tel:   (440) 930-4001
                                                    Fax:   (440) 934-7208
                                                    Email: mdooley@dooleygembala.com
                                                                  rgembala@dooleygembala.com
                                                                  pward@dooleygembala.com
                                                                  sbosak@dooleygembala.com
                                                                  mbriach@dooleygembala.com
                                                   *Counsel for Defendants*

## CERTIFICATE OF SERVICE

     I hereby certify that the foregoing was filed electronically on May 31, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                                  */s/ Matthew A. Dooley*
                                                 Matthew A. Dooley
                                                 *Counsel for Defendants*