IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| **CLEVELAND COMMUNICATIONS, INC.** | ) | |
| | ) | |
| | ) | **Case No. 1:23-cv-1561** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Charles Esque Fleming** |
| **LORAIN COUNTY BOARD OF COMMISSIONERS,** | ) | **Magistrate Judge Jonathan D. Greenberg** |
| | ) | |
| | ) | **(JURY DEMAND ENDORSED** |
| **and** | ) | **HEREON)** |
| | ) | |
| **DAVID J. MOORE, an individual,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JEFFREY ARMBRUSTER, an individual,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JEFFREY RIDDELL, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff CLEVELAND COMMUNICATIONS, INC. ("CCI"), by and through its

undersigned counsel, brings this Second Amended Complaint against Defendants LORAIN

COUNTY BOARD OF COMMISSIONERS (the "Board"), DAVID J. MOORE ("Moore"),

JEFFREY ARMBRUSTER ("Armbruster" and together with Moore and named and unnamed

co-conspirators, the "Co-Conspirators"), and JEFFREY RIDDELL ("Riddell") (collectively, the

"Defendants") and alleges as follows:

1

## INTRODUCTION

1.      Like other American political bodies, Lorain County, Ohio is organized to afford checks and balances on the exercise of power, and afford the due process of law.  This case arises because the defendants named herein and their cohorts sought to remove checks on their power, acquire complete control of Lorain County through corrupt activity, and to deny due process of law.

2.      Specific to this action, Defendants engaged in a course of unlawful and corrupt conduct involving a contract to upgrade a countywide emergency radio communications system for Lorain County to be paid for by millions of dollars in federal grant money.  Despite the overwhelming support of police and fire emergency responders for CCI to upgrade the radio system with L3 Harris Radio products, the Co-Conspirators schemed to steer the contract to Motorola Solutions ("Motorola") for reasons other than the public good, and to exclude CCI from doing business in Lorain County.  Their corrupt methods included trying to pressure and extort a second county commissioner into voting for Motorola and against CCI, and making false allegations to initiate criminal investigations against the commissioner and CCI which they leaked to the media and in public meetings.  But notwithstanding a pattern of corrupt activity intended to control, intimidate, and deceive, the Lorain County Board of Commissioners acted in the public interest and awarded by a 2-0 vote the contract to CCI and appropriated the federal funds for the contract.  Defendant Moore, the third County Commissioner, did not attend the vote.

3.      But Moore, Armbruster, and their Co-Conspirators, known and unknown, had not given up.  With false representations of an improper relationship between CCI and at least one

County Commissioner, Defendant Moore swayed the new Commissioner, Jeff Riddell, to support rescinding the valid and executed contract.  On January 9, 2023, Moore and Riddell, just days into his first term, voted as a 2-1 Majority to revoke CCI's valid contract and to withdraw its federal funding.  They did so at a meeting where they faced outrage from the first responders of Lorain County, and denied CCI basic due process and equal protection rights in taking away CCI's contract, a clearly established property right.  They then undertook a second slanted selection process where it was predetermined that the contract would be awarded to Motorola for millions of dollars in additional cost.

4.      In furtherance of their scheme to exclude CCI from business within Lorain County, one or more defendants have also sought to unlawfully prevent CCI from providing equipment and services to first responders in Lorain County, and to unlawfully retaliate against CCI for exercising its constitutional right to petition this Court.

5.      The question that will be answered in this action is why Defendants would engage in such shocking and corrupt conduct, including extortion, fraud, obstruction of justice, and deprivations of due process, to subvert the public interest and take a contract from one company to award it to another at a higher cost to the County.

## PARTIES

### *Plaintiff Cleveland Communications, Inc.*

6.      CCI is an Ohio corporation with its main business address at 5220 Hauserman Road, Parma, Ohio 44130.  CCI has been qualified to conduct business in the State of Ohio at all relevant times.

7.      CCI, among other things, is a full service two-way radio seller and service organization, specializing in designing, installing, and servicing communications systems,

including those used by public safety organizations.  Prior to being awarded the Agreement to Provide Goods and Services to Lorain County, Ohio on December 21, 2022 (the "Contract"), CCI had begun serving the emergency communications needs of certain first responders in Lorain County.

8.      Moore, Armbruster, and their Co-Conspirators have engaged in a continuing pattern of corrupt activity proximately causing injury to CCI in its business and property.  CCI has standing to bring federal claims under the federal RICO statute pursuant to 18 U.S.C. §§ 1961, 1962, and 1964 because the Co-Conspirators have by a pattern of racketeering activity injured CCI in its business and property; and under 42 U.S.C. § 1983 because the Board Majority deprived CCI of substantive and procedural due process rights, and equal protection under the Fourteenth Amendment when the Board Majority rescinded the Contract without adequate notice and a hearing.  CCI further has standing to bring this action because one or more Defendants have retaliated against CCI for bringing this action.

### *Defendant Lorain County Board of Commissioners*

9.      The Lorain County Board of Commissioners is the statutorily authorized board for Lorain County, Ohio, conducting public business at 226 Middle Avenue, Fourth Floor, Elyria, Ohio 44035.

10.     Pursuant to its statutory authority under O.R.C. 305.01, *et seq.*, the Board conducts business on behalf of Lorain County, including but not limited to reviewing and approving contracts for the Lorain County Public Safety Radio System Program.  The Board acting with full statutory authority awarded the Contract to CCI on December 21, 2022, executed and delivered the Contract to CCI and then without justification unlawfully rescinded the Contract with CCI on January 9, 2023.

### *Defendant David J. Moore*

11.     David J. Moore is an individual residing at 173 Terra Lane, Amherst, Ohio 44001.

12.     Moore was a Commissioner on the Lorain County Board of Commissioners between 2001 and 2005, and has now served again in this capacity since 2021.  Moore is also sued in his individual capacity for engaging in a series of unlawful acts, including racketeering activity and federal constitutional violations, with the goal of controlling Lorain County government and the awarding of contracts and other benefits.  He has further participated in the operation and management of Lorain County, including by directing the unlawful acts alleged herein.  In particular, Moore, directly and indirectly through others, did control and sought to control Commissioner Hung, County Prosecutor Tomlinson, and others in order to enhance his power and control over Lorain Country, including to support the Multi-Agency Radio Communications System ("MARCS"), reward Motorola Solutions, and restrain competition from CCI.   Moore has also knowingly made false allegations to initiate investigations of CCI in order to damage its credibility and justify his own unlawful conduct. Moore is a participant in the enterprise(s) described herein and a member of  the conspiracy to violate RICO and established federal constitutional rights.  He is also a member of the Board Majority that deprived CCI of procedural Due Process and Equal Protection rights in unlawfully taking CCI's property.

### *Defendant Jeffrey Armbruster*

13.     Jeffrey Armbruster is an individual residing at 33030 Woodhaven Circle, North Ridgeville, Ohio 44039.

14.     Armbruster is today the Lorain County Administrator, and he is the former safety director of North Ridgeville.

15.     Armbruster is sued in his individual capacity for participating in a pattern of racketeering activity and the conspiracy to violate RICO. Acting in concert with Moore and others, Armbruster has also participated in the operation and management of Lorain County, including, by directly and indirectly, controlling County employees through racketeering activity and other inequitable conduct.   Armbruster pressured  Commissioner Hung and then Lorain County 911 Director Harry Williamson in a protracted effort to steer the Contract to Motorola and to prevent CCI from upgrading emergency communication radio systems.  He has also sought by unlawful means to prevent CCI from supplying and servicing emergency radio equipment to first responders in Lorain County and to retaliate against CCI for seeking redress in this Court. Armbruster is a participant in the enterprise described herein and the conspiracy to engage in a pattern of racketeering activity.

### *Defendant Jeffrey Riddell*

16.     Jeffrey Riddell is an individual residing at 9611 Dean Rd., Vermillion, Ohio 44089.  Riddell undertook all actions described herein within Lorain County.

17.     Riddell joined the Board in January 2023, just days before voting in favor of rescinding the Contract.  In running for election, Riddell promised to target CCI's contractual relationship with the County.  Riddell is a member of the Board Majority that deprived CCI of procedural due process and equal protection in rescinding without justification the binding contract.

### JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States and present substantial federal questions.  There is also supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367, which claims are factually intertwined with and related to the federal claims.

19.     The Court has personal jurisdiction over Defendants because they conduct business in Ohio, purposefully direct or directed their actions toward this District, and have the requisite minimum contacts with the District necessary to constitutionally permit the Court to exercise jurisdiction.

20.     The Court has personal jurisdiction over Moore and Armbruster under 18 U.S.C. § 1965(a) because they reside in or transact their affairs within this District, and this Court has personal jurisdiction over all of the Co-Conspirators under 18 U.S.C. § 1965(b) because all Co-Conspirators reside in a judicial district of the United States.

21.     The Court also has personal jurisdiction over the Board because it contractually consented to the jurisdiction of this Court.

22.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant Lorain County Board of Commissioners maintains an office and has its principal place of business within this District.  Moore, Armbruster, and Riddell are all residents of this District.  Moreover, venue is proper in this District under 18 U.S.C. § 1965(a) because a substantial part of the unlawful acts asserted herein were planned and executed within this District.  The significant witnesses, documents, and other evidence are also located within this District.

## FACTS COMMON TO ALL CLAIMS

### Need For An Improved Emergency Radio System

23.     In or about 2017, the Board determined that it was necessary to commission a survey in Lorain County to study and provide recommendations to the Board to improve County-wide emergency and first responder communications.

24.     To conduct that study, the Board then made up of former Commissioners Ted Kalo, Matt Lundy, and Lori Kokosi, passed a unanimous resolution on May 9, 2018, to enter into an agreement with Mission Critical Partners, LLC ("MCP"), the leading independent provider of cybersecurity services for public safety agencies at the federal, state, and local levels.

25.     In or about February 2019, MCP issued an approximately 275 page report, finding that the current radio system was not a public-safety grade system and recommending that the County modernize its radio system with a phase II trunk simulcast system that had interoperability with the state-operated system, known as MARCS.

26.     In early 2021, the Board began to investigate how the County could fund such a system, and eventually determined that the Board could use an American Rescue Plan Act ("ARPA") federal grant.  The Board began to solicit proposals informally.

27.     By this time, Defendants Moore and Armbruster, and their confederates, including Dick Miller, were already in  communication with Motorola about fulfilling the Contract.

28.     But CCI also expressed its interest in building and supporting the countywide system with L3 Harris products.  Moore, Armbruster, and Williams received an email from CCI confirming its interest in bidding for the Contract and including a proposal to supply the county-wide radio system for 6.5 million dollars.

8

## Bribery and Extortion

29.     Thereafter, a retired Beachwood police officer named Dana Gollner reached out to CCI.  At a meeting in the Northern District of Ohio on or about June 10, 2021, Gollner told CCI that he could gain the support of all three County Commissioners if CCI paid Gollner a "lobbying" fee of 10% of the multi-million dollar contract.  At this meeting, Gollner also showed a confidential email from Motorola to the Lorain County Commissioners and an email from CCI to the Lorain County Commissioners and others to demonstrate his real access to decision-makers in Lorain County.  Gollner could only have obtained these emails from a limited number of decision-makers, including Moore and Williams.  Alan Close of CCI had sent the email on June 2, 2021, to the County Commissioners, Tom Williams, and Harry Williamson in response to a request for information from Williams.  Within eight days, Gollner had a copy of the email.

30.     When CCI advised Gollner that the project would not support a fee of 10% of the total contract payment, Gollner told CCI to simply recall the bid and resubmit the bid for a higher amount including the 10% fee.  Gollner said there were a number of people to get paid and the higher bid would be accepted.

31.     Gollner later provided a draft "consulting agreement" between CCI and an entity called Energy Resources Unlimited, LLC ("the Consultant"), wherein the Consultant agreed to provide introductions to individuals and entities in exchange for 10% of any compensation received as a result of the introduction.

32.     CCI declined to agree to pay the money to Gollner, but continued to pursue the Contract.

33.     CCI had already begun upgrading radio systems for municipalities in the Northeast corner of Lorain County for what was termed "the Five Cities Radio Program."

34.     Through "the Five Cities Radio Program," the municipalities involved sought on their own initiative to upgrade their emergency radio systems with L3 Harris Radio Equipment. They eventually won a FEMA/Department of Homeland Security grant award of $997,166 in federal funds to improve their radio communications.  They then entered into agreements with CCI to upgrade their emergency communications with a 700 MHZ frequency system and L3 Harris equipment.

35.     Moore, Armbruster, and their confederates Williams and Miller became increasingly concerned that the L3 Harris system was gaining entry into Lorain County.  To stop CCI, they focused on the need for the "Five Cities Radio Program" to install repeaters to increase the range of radio communications within Lorain County.

36.     In calls on or about February 8 and March 5 of 2021, Armbruster contacted Michelle Hung to pressure her to exclude CCI.  In one call, Armbruster told Hung in forceful language that "you have some political decisions to make" regarding "who was going to be allowed to go up on the tower." The "tower" was a reference to a tower on Burns Road in Lorain County, Ohio where CCI planned to install a repeater necessary for radio communications between first responders in the Five Cities.

**Further Efforts To Exclude CCI And To Steer The Contract To Motorola**

37.     Acting in concert with Moore, Armbruster, and Williams, Dick Miller threatened emergency personnel that if they did business with CCI or L3 Harris that Miller would deny them access to State of Ohio funds.  With a kinder approach in public, Miller spoke at a meeting in July of 2021 discouraging Lorain County first responders from switching to the new system to be installed by CCI.

38.     Despite the pressure placed on Commissioner Hung not to support CCI, she demonstrated her independence.  The Defendants then increased the level of coercion and intimidation.

39.     Acting in concert with defendants Moore and Armbruster, co-conspirator Williams pressured County 911 Director Harry Williamson to influence Hung not to support CCI.

40.     Williams had learned that Williamson and Hung were involved in an extra-marital affair.  Williams obtained a February 26, 2021 surveillance video of a kiss between Hung and Williamson.  According to Hung, the video was used "to leverage" her to vote how Moore and his confederates wanted.  Hung told a trusted first responder that in 2021 Armbruster threatened to "air" and "put out on front street" her "dirty laundry" if she did not submit.

41.     When on or about June 14, 2021, Hung still voiced support for choosing the radio vendor supported by the County's fire departments and other first responders, Moore and Williams called Hung "crazy."

42.     Hung went to County Prosecutor Tomlinson to express her fear for Williams' treatment of her and to ask for protection.   Tomlinson declined to help her.

43.     Armbruster also pressured Williamson to control Hung.  He said to Williamson: "You have an interesting decision to make."  Armbruster further reinforced that Michelle Hung had a difficult political decision to make regarding the awarding of the radio contract.

44.     Williams further made clear that if Williamson wanted to retain his job, he needed to help control Hung – the woman with whom Williamson had an ongoing relationship.

45.     When Williamson later called Armbruster to discuss the situation, Armbruster also stated an implied threat that there would be ramifications if Hung did not do as directed.  .

46.     By August of 2021, when Hung did not submit to the threat and pressure, one or more Co-Conspirators participated in exposing the alleged extra-marital affair involving Hung and Williamson.  They also terminated Williamson's employment as 911 Director for Lorain County and called for Hung's resignation. Williamson was never provided a reason why he was terminated.

47.     By a letter sent to the Ohio Auditor of State dated August 23, 2021, Moore falsely accused Hung and Williamson of trying to steer a "no-bid" contract to CCI.  In this letter, Moore falsely alleged that Alan Close the President of CCI stated in a meeting that "Michelle Hung needed to form an alliance with Commissioner Lundy to get this to go to a no-bid contract." This statement was false when made, and Moore knew it.  Moore further implied in other statements that Hung had supported CCI because of an improper relationship with CCI.

48.     Moore also caused a Cleveland law firm representing Lorain County to send a letter to the Ohio Auditor of State "requesting an investigation into the circumstances related to a potential contract between Lorain County and CCI."  The letter further asked the Ohio Auditor of State to make the Lorain County Sheriff's Office "stand down" from any investigation.

49.     Moore used the existence of one or more investigations which he wrongly instigated as support for excluding CCI from upgrading emergency communication systems in Lorain County.

50.     The allegations have now been investigated by the Ohio Auditor of State and the Lorain County Sheriff's Office. Both agencies in written reports released in October of 2023 found Moore's allegations to be unsupported by the evidence.  The Ohio Auditor of State, Special Investigations Unit's ("SIU") report concluded "(t)his case has been reviewed by three legal attorneys for SIU with no evidence to confirm the allegations" made by Moore.

51.     The Lorain County Sheriff's Office's report of investigation concluded that "no evidence was found that the bidding process was 'rigged or steered,'" and that "(n)one of the complaints forwarded…by Commissioner Moore could be validated by this investigation."

52.     These conclusions are further supported by the allegations below, which demonstrate CCI's participation in an open and lawful bidding process.

**Lorain County Moves Forward With A Lawful Bidding Process**

53.     On May 4, 2022, the Board ordered a preliminary specification for the county-wide radio system, and MCP advised the Board regarding the same.  By this time, the Board consisted of Commissioners Michelle Hung, Matt Lundy, and Defendant Moore.

54.     At the August 3, 2022 meeting of the Board, by a vote of 2-0, the Board approved publication of a request for proposal.  Moore was absent from the meeting.  As a result of that vote, the Board instructed the Clerk to publish a Request for Proposals for a radio communications system to support mission-critical public safety communications within Lorain County.

55.     On August 4, 2022, Lorain County issued the  Request for Proposals and Technical Specifications for Project 25 Public Safety Radio Network (the "Radio Network RFP").  Notice of the Request for Proposals was published on August 5 and 12, 2022.

56.     The Radio Network RFP was issued "for the procurement of access to an Association of Public-Safety Communications Officials (APCO) International Project 25 (P25) Phase 2 radio communications system to support mission-critical public safety communications within Lorain County (county, geographically)."  In other words, the RFP sought proposals for an improved county-wide emergency radio system.

57. Lorain County explained that it was "requesting proposals for the buildout of radio infrastructure to serve Lorain County first responders."

58. As part of the winning proposal, "[t]he requested system shall be owned and operated by the proposing vendor or another partner agency, with Lorain County paying ongoing user fees for access to the system."

59. The Radio Network RFP included 69 pages of specifications, terms, and conditions, including a reservation of "the right to terminate on lack of services, non-performance, or cost model changing."

60. MCP continued to advise the Board throughout the RFP process.

61. The Radio Network RFP did not include any minimum number of proposals that would be required to constitute a valid RFP process.

62. The Radio Network RFP did include a Proposal Process Schedule of Events, setting forth the timeline upon which the Board intended to proceed:

### 1.3.2. Proposal Process Schedule of Events

A. While the County is not obligated to comply with the following timeline, it intends to adhere to the following schedule, which may be changed at the County's sole discretion:

Table 1: Schedule of Events

| Event | Timeframe |
|---|---|
| RFP Solicitation Issued | August 4, 2022 |
| Pre-Proposal Conference | August 15, 2022 at 1:00 p.m. |
| Written Questions Due | August 22, 2022 by 3:00 p.m. |
| Response/Addendum Issued | As required, no later than September 19, 2022 |
| Proposals Due | September 30, 2022 by 1:00 p.m. |
| Vendor Presentations | As required, no later than October 14, 2022 |
| Proposal Evaluations | Beginning in October 2022 |
| Negotiations | October/November 2022 |
| Vendor Award and Contract Signing | It is the County's intention to review proposals and select primary vendors with which to negotiate in November 2022. The timing of negotiations and contract award(s) will be based on the duration of negotiations with the desire to award and sign a contract with the selected vendor in November/December 2022. |

14

63.     On August 15, 2022, the Board held a pre-bid vendor conference, during which MCP set forth the Board's expectations for proposals.

64.     The following vendors were present at the August 15, 2022 pre-bid vendor conference: CCI, Motorola Solutions, and Vasu Communications.

65.     The Board validly exercised its discretion to adjust the schedule of events, when in response to the separate requests of Motorola and CCI, the Board extended the proposal deadline by 14 days to October 14, 2022.

66.     Ahead of the extended deadline, the Board received a full response proposal from CCI, a letter of no bid from Motorola Solutions, and a partial-work bid from Vasu Communications.

67.     The Board established a five-member committee to rank and evaluate the proposals received (the "Evaluation Committee"), and the Evaluation Committee in consultation with MCP identified CCI's proposal as the one most advantageous to the County.

68.     The bid process and the Evaluation Committee followed all procedures required under Ohio law to constitute a valid and lawful request for proposal sealed bid under O.R.C. § 307.86, *et seq.*, and, upon information and belief, the process was reviewed and approved by the Lorain County Prosecutor's Office.

**The Board Awards The Contract To CCI**

69.     On December 21, 2022, consistent with the findings of the Evaluation Committee, the Board determined that only CCI's proposal was compliant with the Radio Network RFP and that CCI had a proven track record in the County and surrounding counties.

70.     Moore was again absent from the December 21, 2022 meeting of the Board.

71.     During the December 21, 2022 meeting, the Board heard public comments from County first responders in unanimous support of awarding the Contract to CCI and in support of the L3 Harris radio system that CCI would provide to the County pursuant to the Contract.

72.     On December 21, 2022, the Commissioners present—current Commissioner Michelle Hung and then-Commissioner Lundy—voted 2-0 to approve the Contract with CCI. Defendant Moore was again absent.

73.     The source of funding for the Contract, as stated in the Contract itself and the resolutions approving the Contract and its funding, was federal ARPA funds.

74.     CCI and the Board executed the Contract, which had been previously approved as valid by the Assistant Prosecutor for Lorain County on December 19, 2022.  Commissioner Lundy, President of the Board, signed the Contract on behalf of the Board and Alan Close, President of CCI, signed on behalf of CCI.  A true and correct copy of the Contract is attached hereto as **EXHIBIT A**.

## The Unlawful Scheme To Rescind The Contract

75.     But Moore and Armbruster planned to undo the Contract.  In or about November and December of 2022, Moore made false representations via wire communications to candidate and then elected official Defendant Riddell as well as others.  Moore falsely stated that Hung or Williamson had an improper relationship with CCI causing Hung to steer business to CCI. Moore also relied on the existence of the Auditor of State Investigation, which he had initiated with his own false allegations, to undermine the legitimacy of the Contract.

76.     Defendant Riddell relied on these false statements in announcing that he would right the injustice of the radio contract.

16

77.     Moore and his confederates further caused defamatory stories to be published about CCI and Hung.

78.     Upon information and belief, Moore further schemed with the Prosecutor's Office to fraudulently withhold a fiscal certificate certifying that there were sufficient funds for the Contract  in order to later state without legal justification grounds to terminate the Contract.

79.     The County Prosecutor's Office certified its approval of the Contract, and CCI relied upon this certification.  The Board should be estopped from claiming it to be voidable. Furthermore, because CCI would be paid with federal ARPA funds, the fiscal certificate was unnecessary.

### CCI Works To Implement The Contract

80.     In reliance upon the Contract's approval and execution, CCI worked to implement the Contract.

81.     As a part of the Contract, CCI had 60 days to reach a Radio System User Agreement with the non-County political subdivisions within Lorain County for the provision of radios.

82.     On December 27, 2022, CCI and the Rochester Fire Department signed a Radio System User Agreement (the "Rochester User Agreement") that is only implementable if the network contemplated by the Contract comes into existence.  A true and correct copy of the Rochester User Agreement is attached hereto as **EXHIBIT B**.

83.     On January 4, 2023, CCI and the City of Oberlin signed a Radio System User Agreement (the "Oberlin User Agreement") that is only implementable if the network contemplated by the Contract comes into existence.  A true and correct copy of the Oberlin User Agreement is attached hereto as **EXHIBIT C** .

17

84.    The Contract itself includes the following termination provision:

> 8.    **Termination of Agreement** - The County shall have the right to terminate this Agreement for breach by the Contractor of any milestone identified in the Scope of Services of the Proposal provided that the County first notifies the Contractor by written notice.  The County shall give the Contractor a period of sixty (60) days to cure any such breach, subject to force majeure.  The Parties further agree that the failure to limit any then ongoing efforts to cure to the sixty (60) day time period shall not be construed as a waiver pursuant to this paragraph.  In the event of termination pursuant to this paragraph, the County shall pay the Contractor for all equipment which had at that point been purchased for the Project, services rendered and expenses incurred in connection with the Project through the effective date of termination.

## Rescinding The Contract Without Due Process of Law

85.    Former Commissioner Lundy ended his term, and the newly-elected Commissioner defendant Jeff Riddell replaced him at the beginning of January 2023.

86.    On January 6, 2023, the Board issued an agenda for an Organizational Meeting, which is a special session of the Board, to be held the following business day, January 9, 2023 at 9 am (the "Agenda").  The Agenda included item Number 21, a resolution under 911 to "[r]escind Res#22-909, adopted December 21, 2022 entering into an agreement with Cleveland Communications, Inc. to provide goods and services for a public safety radio system on behalf of Lorain County 911 and will be paid from the ARP Capital Equipment account."

87.    The Agenda also included item Number 22, a resolution under 911 to "[r]escind Res#22-910, adopted December 21, 2022 establishing a set aside of $4,033,542.97 subgrant for participating political subdivisions for the Lorain County public radio system to be paid from Acct# ARP other expenses."

88.    The Agenda gave no notice of the purported reasons for the vote to rescind the Contract and funding.  Nor did any other communication give CCI or other interested parties sufficient notice of the meeting or advanced notice of the issues that they would need to address.

89.    Prior to the January 9, 2023 Organizational Meeting, the public and CCI were only made aware that the Board may terminate the Contract based on the item being listed on the

meeting Agenda on a Friday afternoon, one business day before the Meeting scheduled for

Monday.  A true and correct copy of the January 9, 2023 meeting agenda is attached hereto as

**EXHIBIT D**.

90.     The Board further breached the notice provision in the Contract, which provides

as follows:

> 20.     **Notices** - Any notice, bills, invoices or reports required by this agreement shall be sufficient if sent
> by the parties hereto in the United States mail, postage paid, to the addresses noted below:
>
> If to the County:                                    If to the Contractor:
> Lorain County Administrator              Cleveland Communications, Inc.
> 226 Middle Avenue                           5220 Hauserman Rd.
> Elyria, OH  44035                              Cleveland, Ohio  44130
> Attention:  J.R. White, County Administrator      Attention:  Alan L. Close, President

91.     Prior to the January 9, 2023 Organizational Meeting, the Board issued no notices

of its intent to terminate the Contract directly to CCI; did not identify to CCI prior to the meeting

any grounds that could justify termination; and did not provide CCI with an opportunity to cure

any issues that might justify the Board's termination of the Contract.

92.     Prior to the January 9, 2023 Organizational Meeting, CCI learned of the agenda

items and delivered a letter via email to the Board objecting to rescinding the Contract.

93.     Commissioner Moore, Commissioner Riddell, and Commissioner Hung were all

in attendance at the January 9, 2023 Organizational Meeting.

94.     At the January 9, 2023 Organizational Meeting, the Board heard public comments

from a packed audience on the resolutions to rescind the Contract and related funding.

95.     Comments at the meeting were limited to three minutes.

96.     Public comments from first responders and public officials were almost

unanimously against rescinding the Contract and included:

a. The Honorable Frank Whitfield, Mayor of Elyria: "I truly believe if cancer – the cure for cancer would have got approved by Hung and Lundy, you would be against it."

b. Lucy DiNardo, Senior Staff Representative, Fraternal Order of Police: "The union will pursue a health and safety grievance if you do rescind this order and if you decide to go in the direction that you're going."

c. Elyria Fire Chief Joseph Pronesti: "Well, we're not playing a violin with the public. You know the right instrument you ought to talk about?  The bagpipes. Because that's what we play when we bury somebody."

97.    Only one public comment was made in support of rescinding the Contract based on the unsupported speculation that the Board could get a lower price if the project was re-submitted for bid.  Upon information and belief, this comment would prove conspicuously wrong as Moore, Armbruster, and their confederates schemed to award the contract to Motorola for millions of dollars more than the award to CCI.

98.    At the January 9, 2023 Organizational Meeting, CCI was given no opportunity to present actual evidence or the testimony of witnesses.

99.    At the January 9, 2023 Organizational Meeting, CCI's attorney was allowed to speak only during the open public comments portion of the meeting.  Like all members of public, CCI's attorney's comments were limited to three minutes.

100.    The Board issued no notices directly to CCI of its intent to terminate the Contract. Nor did it provide notice of the grounds claimed to terminate the Contract.  These facts are admitted by the Board in its answers to CCI's First Request for Admissions.  *See* **Exhibit E** attached.

20

101.    The January 9, 2023 meeting of the Board did not include testimony from witnesses.

102.    At the January 9, 2023 meeting of the Board, the Commissioners made no findings of fact.

103.    The Board did not provide CCI with an opportunity to cure any alleged issues that the Board identified as reasons for its termination of the Contract.

104.    Following public discussion, the Commissioners made statements concerning their positions, and no Commissioner made any comments or findings of fact concerning any breach of the Contract by CCI or any deficiency that needed cured.  To the contrary, Moore and Riddell purported to find – without any evidentiary or lawful basis – that the bidding process was flawed because in the end CCI presented the only sufficient bid.

105.    Moore and Riddell voted to rescind the resolution to enter into the Contract whereas Commissioner Hung voted against.

106.    Moore acted with ill-will and malice against CCI which he strangely described as an "out-of-town company," and Moore publicly and falsely stated that CCI had engaged in an illicit campaign to obtain the contract through an improper process.  Moore referenced the existence of the investigation which he had initiated in part with false allegations against CCI to support that the Contract should be rescinded.  Moore made his false statements knowing of their falsity, and all the while he participated in blocking CCI's contractual relationship with others in the County and to deliver the radio network to Motorola.

107.    At the time of the vote, Riddell had only served on the Board for a matter of days.  Riddell acted in reliance on the fraudulent representations and statements made privately and in public by the Co-Conspirators thus causing economic harm to CCI.

108.    The Board also voted 2-1 along the same lines to rescind the federal funding of the Contract.

109.    The Board Majority rescinded the Contract in an unconstitutional manner that the Board Majority knew or should have known did not comply with clearly established constitutional mandates for depriving a person of a property interest.  The Board Majority acted with ill-will and animus and directly targeted and affected CCI with its action, failing to afford CCI substantive due process and equal protection under the law.

110.    The Lorain County Deputies Association filed a union grievance stating in part that Riddell and Moore voted to rescind the Contract knowing "that the current radio systems are not working properly and that the Sheriff cannot find replacement parts for the current system in the event of a failure.  This causes a significant safety issue."

111.    On January 18, 2023, the Fox 8 I-Team reported on a failure of the Lorain County radio system during an emergency involving a man who could not breathe.  The media reported learning that "what happened in this case is not that unusual."  Confronted with a recording of the emergency responders unable to communicate over radio, Commissioner Riddell was quoted as saying in part that "nobody's denying the equipment in Lorain County is not in need of upgrading."

112.    By rescinding the Contract without any right to do so and without affording CCI due process, the Board's decision was unconstitutional, illegal, arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence.

113.    CCI administratively appealed the Board's decision to Lorain County Common Pleas, pursuant to Ohio law.  The Lorain County Prosecutor claimed to be conflicted and hired

outside counsel to defend the action, but then remained involved in the defense. Representatives of the County Prosecutor's Office attended judicial conferences and hearings for the case.

114. The Court determined that the Board's decision to rescind the Contract was not the result of a quasi-judicial proceeding (even though it negated a defined property right), and as a result determined that the Board's decision was not the type subject to an administrative appeal under O.R.C. §2506. The Board's decision to rescind the Contract resulted in CCI's loss of its Contract rights without Due Process, and the dismissal of the appeal further demonstrated the lack of an adequate remedy in the state court proceedings.

**Continuing Racketeering Activity**

115. Moore, Williams, and others acting in furtherance of their object to control Lorain County, including the awarding of valuable contracts, tried to destroy Commissioner Hung and end her influence. Moore portrayed Commissioner Hung as "a known liar" who "pled the Fifth Amendment multiple times during a federal deposition just last year."

116. Moore and others also obstructed an official investigation by the Lorain County Sheriff's Office of conduct alleged herein. On March 27, 2023, Moore falsely represented that the Lorain County Sheriff had "a clear conflict of interest in regard to this matter"(the circumstances surrounding the approval and rescinding of the Contract). In addition, one or more Co-Conspirators corruptly persuaded the Lorain County Prosecutor's Office not to assist the investigation, corruptly persuaded one or more Lorain County employees and others not to comply with subpoenas and public records requests issued by the Sheriffs, and corruptly persuaded witnesses not to be interviewed as a part of the official investigation.

117. Based upon the allegations herein and others contained in the Sheriff's Report regarding its investigation, there is a more than plausible basis to conclude that the members of

the RICO Conspiracy tried to control and did control County Prosecutor Tomlinson and assistant prosecutors in his office.  Williams learned of a video reportedly showing a family member of the County Prosecutor engaged in sexual activity with a County employee at a highway rest stop. Williams then sought to obtain the video for unlawful purposes.  Williams shared with an assistant County prosecutor the existence of the video as well as other sexual misconduct expecting that the County Prosecutor would be advised of the issues.

118.    In his August 23, 2021 letter to the Auditor of State, Moore portrays Williams as a "whistle blower" for providing false information to the County Prosecutor's Office regarding the supposed effort to award CCI a 6.7 million dollar "no bid contract," as well as salacious information regarding the purported sexual conduct of Hung, Williamson, and the County Prosecutor's family member.  Moore states in this letter that "Commissioner Hung claims that Director Williamson and a family member of JD Tomelson's (sic) family would meet up for sex in cheap hotels."  The Report of the Lorain County Sheriff's Office released on or about October 24, 2023, raises substantial questions about whether the County Prosecutor lost his independence given the reported existence of the video.

119.    Concern about the County Prosecutor's independence has only grown now that it is known that Tomlinson further depended upon Moore and Riddell to approve funding of one or more settlements of legal claims made against Tomlinson in his individual capacity.  One such matter involved a $100,000 payment from public funds to a former Prosecutor's employee, Jennifer Battistelli.  According to the Chronicle Telegram, Tomlinson now admits a "romantic relationship while she (Battistelli) was his employee."  The matter is now the subject of allegations that the payment was made outside of the proper channels.

120.    The County Prosecutor's Office took actions and failed to take actions in service of the interests of the unlawful conspiracy alleged herein and in disservice to the public good, including the safety of first responders and the public in Lorain County.  Causing proximate harm to CCI, the County Prosecutor's Office stalled the approval of the Contract so as to shorten the time available for CCI to implement it prior to the planned rescinding of the Contract.  When the County Prosecutor's Office approved the Contract in December of 2022, it did so apparently without obtaining the fiscal officer's certificate that the Board of Commissioners has wrongly argued invalidates the Contract, and while misleadingly signing the Contract to certify its validity.

121.    Upon information and belief, the County Prosecutor has further stalled the appointment of a special prosecutor to investigate the alleged illegal rescission of CCI's contract for the countywide radio system.  Based upon information received, Tomlinson has both claimed that the appointment of a special prosecutor is unnecessary and that he is unable to find anyone to serve in the role from nearby counties.  The appointment of a special prosecutor was necessary to assist the Lorain County Sheriff's investigation which defendant Moore and his confederates seek to obstruct.

122.    Having obstructed the Lorain County's Sheriff Office, County Officials, including upon information and belief one or more Defendants in this case, now reportedly face a joint investigation involving the Federal Bureau of Investigation, the State Auditor's Special Investigation Unit, and the Lorain County Sheriff's Office.

### Retaliating Against CCI For Protected Conduct

123.    Even after rescinding the Contract and commencing a new process to award the countywide radio contract to Motorola, Defendants have worked to exclude CCI from servicing

25

and expanding the range and number of users on "the Five Cities Radio System." In an effort to expand the Five Cities Radio System to include the city of Elyria, Ohio, CCI requested in October of 2023 cooperation in the purchase of a second "PTT box" necessary for effective radio communications and required under the National Fire Protection Act.

124.    After a county official gave the City of Elyria authorization to purchase the "PTT box," Defendant Armbruster became involved. In October of 2023, Armbruster placed a hostile phone call to a CCI employee stating that the County opposed CCI's effort to expand its radio system. In a state of anger, Armbruster asked "do you want to meet me today," which the employee took to be a threat of physical violence.

125.    Working in concert with Moore, Armbruster has further attempted to block CCI from servicing its equipment which is installed in public buildings in Lorain County.

126.    By December of 2023, Armbruster increased his efforts not only to exclude CCI in order to benefit Motorola, but to retaliate against CCI for engaging in the constitutionally protected conduct of filing this lawsuit. Now, Armbruster told County employees and others in Lorain County that they could not speak to any employee of CCI because of the pending lawsuit filed by CCI. When one first responder protested that they needed to purchase L3 Harris products, Armbruster told the first responder that they could purchase from another L3Harris dealer but not from CCI. This position marks a clear extension or escalation of the effort to harm CCI (even when it does not directly benefit Motorola) and is tied directly to CCI's filing of the lawsuit.

127.    Armbruster has further delayed the execution of a contract to add the City of Elyria to the Five Cities Radio System by blocking final testing of the fire station alerting

function.  By this conduct, Armbruster not only obstructs CCI, but risks harm to first responders and the public.

128.     Without allowing public comment, Moore and Riddell voted to approve a 13.8 million dollar contract to Motorola Solutions to install the county-wide radio system.  This amounts to a $6.1 million dollar or some seventy-nine percent base cost increase to take the contract away from CCI and L3 Harris – the provider almost all of the first responders support.

## COUNT ONE

**(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(b) and (c))**
**AGAINST DEFENDANTS DAVID J. MOORE and JEFFREY ARMBRUSTER**

129.     CCI incorporates as if fully rewritten herein all prior allegations in this First Amended Complaint.

130.     Plaintiff CCI is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

131.     At all times relevant hereto, in the Northern District of Ohio, there existed an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4), 1962, and 1964 consisting of the Lorain County, Ohio Government, and its departments and subdivisions.

132.     This enterprise is engaged in interstate commerce in that it purchases goods sold in interstate commerce, including but not limited to L3 Harris and Motorola radio equipment (which are manufactured, in whole or in part, outside the State of Ohio) at issue in this case.  The enterprise further receives federal government funds, including millions of dollars of American Rescue Plan Funds, which upon information and belief, the federal government paid from outside the State of Ohio in two tranches to Lorain County Government accounts in Ohio.

133.    The enterprise further is engaged in the supervision of Interstate I-80/90 (the Ohio Turnpike), including by Lorain County police and fire emergency responders to crashes and other safety issues on the highway.

134.    Alternatively, the enterprise is defined as an association-in-fact of Moore, Armbruster, Williams, Miller, Gollner and others at all times engaged in governmental activity in Lorain County and the State of Ohio, and affecting and interfering with interstate commerce, including the sale of emergency radio equipment manufactured outside of the State of Ohio and shipped in interstate commerce, and the allocation of millions in federal grant money.

135.    From in or about a date unknown but at least 2021 to the present, Defendants Moore and Armbruster together with others known and unknown, not named as defendants in this lawsuit, including but not limited to Tom Williams, Dick Miller, and Dana Gollner, have participated directly and indirectly in the conduct of the affairs of the enterprise through a continuing pattern of racketeering activity, and acquired and maintained control of Lorain County Government through a pattern of racketeering activity.  The object of the conspiracy is to corruptly participate in and control the operation of Lorain County, including the awarding of contracts and the expenditure of state and federal funds for other than the public good.

136.    Moore and Armbruster have participated in the operation and management of Lorain County through a pattern of racketeering activity, and acquired control of Lorain County through a pattern of racketeering activity. Moore and his confederates sought to control Hungs' second vote on the Board of Commissioners, and to control the County Prosecutor's Office for their own purposes, including stopping CCI from providing and maintaining radio communications systems in Lorain County.  In furtherance of this scheme, Moore supervised and directed other employees and persons, including but not limited to Williams.  Armbruster

likewise has supervised and directed County employees and other persons to assist in blocking CCI from conducting business in Lorain County and in retaliating against CCI for filing this lawsuit.

137.    In violation of 18 U.S.C. § 1962 (b) and (c), the Co-Conspirators have participated in the enterprise, directly and indirectly, through a pattern of continuing and unlawful racketeering activity, including the following:

a.  On or about June 10, 2021, at a meeting in the Northern District of Ohio, a retired police officer named Dana Gollner told CCI that he could gain the support of all three County Commissioners if CCI paid Gollner a "lobbying" fee of 10% of the multi-million dollar contract.  At this meeting, Gollner showed confidential communications from Motorola and CCI to the Lorain County Commissioners to demonstrate his real access to Moore and other decision makers in Lorain County. When CCI advised Gollner that the Contract would not support a fee of this amount, Gollner told CCI to simply submit a bid for a higher amount because there were a number of people to get paid and the higher bid would be accepted. In so soliciting this bribe, Gollner acted at the direction of one or more members of the conspiracy to violate the RICO statutes.  This solicitation of a bribe constitutes "racketeering activity" with the definitions of 18 U.S.C. § 1961 because it was an act of attempted bribery in violation of O.R.C. §2921.02(A) and (B).

b.  Moore, Armbruster, Williams, and others working in concert with them have sought to control Commissioner Michelle Hung and thereby obtain control of her valuable second vote, through acts of intimidation, including racketeering activity

in violation of Section 1961.  In or about late July or early August of 2021, one or more Defendants acting in concert threatened Hung and Williamson overtly or implicitly with the exposure of their extra-marital affair if Hung did not support the MARCS System (Motorola) and deny support to CCI (L3 Harris).   This scheme and the express or implied threat  constituted extortion in violation of O.R.C. §2905.11(A)(4) and (5) and punishable by more than a year imprisonment, and so qualifies as a RICO predicate offense.

c.  When Hung failed to submit to the threat, one or more Co-Conspirators participated in exposing the alleged extra-marital affair involving Hung and Williamson in August of 2021.  Acting at Moore's direction, Williams obtained a nine second surveillance video of Hung and Williamson kissing in a public building and provided it to Moore and others.  Upon information and belief, Williams at Moore's direction also leaked the affair to the media.  They further terminated Williamson's employment as 911 Director for Lorain County and called for Hung's resignation.

d.  In furtherance of the conspiracy, Moore and others acting in concert with him devised a scheme to defraud and obstruct justice by instigating – with false allegations – investigations of Commissioner Hung's ties to CCI.  On or about August 23, 2021, in violation of 18 U.S.C. § 1341 or § 1343, Defendant Moore sent by mail or electronic wire communications to the Ohio Auditor of State a letter alleging misconduct on the part of Commissioner Hung, CCI, and others.  As to CCI, the letter insinuated an improper relationship between Hung and Williamson for the County and CCI as a supplier to the County.  Moore also

falsely alleged that Hung sought to steer a 6.7 million dollar "no bid" contract to CCI and stated that Alan Close, the President of CCI, had openly admitted this effort in a meeting.  Moore made the allegations against CCI knowing that they were false and with the intent to injure and mislead.  He then later cited the fact of the investigation he initiated by malicious falsehoods as grounds to terminate CCI's Contract.  The Auditor of State has issued a Case Closing Memo finding "no evidence to confirm the allegations," and the Lorain County Sheriff's Office has issued a report demonstrating the falsity of Moore's allegations in the August 23, 2021 letter.

e.  Via wire communications in or about November and December of 2022, Moore made false representations to candidate and then elected official Defendant Jeffrey Riddell, that Hung and CCI had an improper relationship causing Hung to steer business to CCI, all in violation of 18 U.S.C. § 1343.  These and other false representations set forth in this and the prior paragraph (g) were relied upon by Defendant Riddell and others, causing CCI to be investigated, defamatory stories to be published, business opportunities to be lost or delayed, and Defendant Riddell to vote to rescind the Contract.

f.  In December of 2022, the Lorain County Prosecutor's office approved the Radio Contract between Lorain County and CCI and sent the Contract by wire communications, representing its approval and inducing the reliance of Commissioners Hung, Lundy, and CCI that the Contract was final and enforceable, when, upon information and belief,  the Lorain County Prosecutor's

Office knew that Defendants Moore, Riddell, Armbruster, and others schemed to rescind the Contract in January.

g.  By correspondence sent by mail, including a letter sent by U.S. mail on March 27, 2023, to Lt. Vansant of the Lorain County Sheriff's Office and copied to the Ohio Attorney General, Moore falsely alleged misconduct on the part of Commissioner Hung and others regarding the radio project and portrayed himself as a whistleblower, all in violation of 18 U.S.C. §§ 1341.  He further portrayed Hung as "a known liar" who "pled the Fifth Amendment multiple times during a federal deposition just last year."

h.  In or about 2023, Moore and others did obstruct an official investigation conducted by the Lorain County Sheriff's Office into his own false allegations of misconduct regarding CCI.  On March 27, 2023, Moore did falsely represent that the Lorain County Sheriff had "a clear conflict of interest in regard to this matter," *i.e.* the circumstances surrounding the approval and rescinding of the Contract.  In addition, upon information and belief based upon the evidence stated above, one or more Co-Conspirators did corruptly persuade the Lorain County Prosecutor's Office not to assist the investigation or appoint a special prosecutor, did corruptly persuade one or more Lorain County employees and others not to comply with subpoenas and public records requests issued by the Sheriffs, and did corruptly persuade witnesses not to be interviewed as a part of the official investigation, all in violation of 18 U.S.C. § 1512.

i.  Defendant Armbruster has continued to further the combined objective of Moore and his confederates to exclude CCI and to benefit Motorola/MARCS.  On or

about October 12, 2023, a CCI employee sought cooperation in testing locution for the Elyria Fire Department.  This test was necessary to commence operating a radio system which relied in part upon L3 Harris equipment shipped in interstate commerce.  Thereafter, Armbruster telephoned the CCI employee and stated in anger, "We're not doing anything with locution right now." When the CCI employee sought to convince Armbruster to change this position, Armbruster said in an agitated voice "do you want to meet me today?"  Given Armbruster's tone and the context of the conversation, the CCI employee took this, as intended, as a threat by Armbruster of physical violence, all in violation of 18 U.S.C. § 1951(a). The new Elyria radio system was then delayed because Armbruster blocked the testing.

j.   In or about the summer of 2023, in violation of 18 U.S.C. § 1510, Dana Gollner did attempt to obstruct the State Auditor's investigation by lying in response to questioning regarding his contacts with CCI as alleged above.  Amongst other falsehoods, Gollner tried to cover his unlawful activity by denying his collusion with Lorain County officials.

138.    This unlawful conduct comprises a continuing pattern of racketeering activity involving more two or more predicate acts by each defendant of violations of offenses specified in 18 U.S.C. § 1961(1) , occurring with continuity after the effective date of the Racketeer Influenced and Corrupt Organizations Act and all within a ten year period.

139.    As a direct and proximate result of the racketeering activity in violation of 18 U.S.C. § 1962, CCI has been injured in its business and property, including but not limited to, by the denial of business opportunities, the rescinding of the Contract, and the damage to its good

will and business reputation.  The unlawful predicate acts of racketeering activity alleged in

paragraph 123 above have proximately caused harm to CCI in that it has been denied valuable

business opportunities and retaliated against as a result of its unwillingness to pay a bribe; it has

been harmed in its business reputation and lost business opportunities as a result of fraudulent

representations made about CCI; it has lost business opportunities as a result of one or more acts

of mail and wire fraud, extortion, and intimidation; and because one or more public officials

supported rescinding the Contract out of deception or fear.

140.    CCI should be awarded treble damages, attorneys' fees, and reasonable

restrictions on the continuation of the racketeering activity.

## COUNT TWO

**(Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1962(d),1964)
AGAINST DEFENDANTS DAVID J. MOORE and JEFFREY ARMBRUSTER**

141.    CCI incorporates as if fully rewritten herein all prior allegations in this Amended

Complaint.

142.    As set forth above, Defendants Moore and Armbruster agreed, combined, and

conspired with each other and others, known and unknown, including Tom Williams and Dana

Gollner in violation of 18 U.S.C. § 1962 (d).  Specifically, the individuals named have conspired

and agreed to acquire control of the expenditures of Lorain County, including millions of dollars

in federal funds through a pattern of racketeering activity and unlawfully agreed to conduct and

participate in the affairs of Lorain County, including its emergency communications and

response systems, through the pattern of racketeering activity specified above.

143.    As a direct and proximate result of this conspiracy to violate RICO and the overt

acts taken in furtherance of the conspiracy, CCI has been damaged in its business and property,

including loss of business opportunities, loss of an awarded contract, increased costs and delay in executing upon contracts, and harm to its goodwill and reputation as set forth above.

144.    CCI should be awarded treble damages, attorneys' fees, and reasonable restrictions on the continuation of the racketeering activity

## COUNT THREE

**(Fourteenth Amendment, Denial of Substantive Due Process, 42 U.S.C. § 1983)**
**AGAINST DEFENDANTS DAVID J. MOORE and JEFFREY ARMBRUSTER,**

145.    CCI incorporates as if fully rewritten herein all prior allegations in this Amended Complaint.

146.    The Fourteenth Amendment Due Process Clause protects all persons from the deprivation of a protected property interest by arbitrary and capricious government action.

147.    Under Ohio and Federal law, an awarded public contract is a constitutionally-protected property interest.

148.    The Contract was a valid, enforceable, statutorily-compliant public contract awarded by the Board to CCI on December 21, 2022.

149.    As alleged above, CCI was deprived of its property interest in the Contract as a result of the Co-Conspirators' racketeering activity and related unlawful conduct.

150.    The Co-Conspirators' actions went well-beyond the typical politics and animosities that often animate local decision-making, and instead, shock the conscience.  The Co-Conspirators engaged in the described pattern of criminal activity to deprive CCI of its constitutionally-protected property interest and to intentionally injure CCI and those that supported it through outrageous conduct and in ways unjustified by any legitimate governmental interest.  Amongst other acts, defendant Moore schemed with others to blackmail another County Commissioner to vote against the Contract, and in later rescinding the valid contract, Moore

justified his actions by citing a criminal investigation he himself started with allegations now found to be false by the State of Ohio Auditor and the Lorain County Sheriff.

151.    The Defendants and Co-Conspirators acted maliciously and in knowing violation of the law and are therefore not entitled to qualified immunity.

152.    The Co-Conspirators' actions are in violation of CCI's right to Substantive Due Process protected by the Fourteenth Amendment of the United States Constitution, the Ohio Constitution, and 42 U.S.C. § 1983.

## COUNT FOUR

**(Fourteenth Amendment, Denial of Procedural Due Process, 42 U.S.C. § 1983)
AGAINST DEFENDANTS LORAIN COUNTY BOARD OF COMMISSIONERS, DAVID
J. MOORE, AND JEFFREY LIDDELL**

153.    CCI incorporates as if fully rewritten herein all prior allegations in this Amended Complaint.

154.    The Fourteenth Amendment Due Process Clause protects all persons from the deprivation of property without due process of law.

155.    Due process requires that the procedures by which laws are applied are fundamentally fair so that persons are not subjected to the arbitrary exercise of government power.

156.    Under Ohio and Federal law, an awarded public contract is a constitutionally-protected property interest.

157.    The Contract was a valid, enforceable, statutorily-compliant public contract awarded by the Board to CCI on December 21, 2022.

158.    CCI's right to a pre-deprivation hearing concerning its property interests in the Contract was clearly established prior to the Board Majority's action.

159.     When property interests are concerned, Due Process requires, at a minimum, sufficient notice and an opportunity to be heard in an impartial hearing.

160.     Notice must be reasonably calculated, under all the circumstances, to apprise interested parties in advance of the pendency of the action and the grounds at issue for the action.

161.     The Board Majority did not provide CCI with direct notice of the hearing, that the Contract would be the subject of the hearing, or the claimed basis for terminating the Contract.

162.     The notice of hearing and the opportunity to be heard must be granted at a meaningful time sufficient to prepare for what is at issue.

163.     The only notice provided was the identification of a proposed resolution to rescind the Contract when the January 9, 2023 Organizational Meeting agenda was released three (3) days before the Monday meeting and only one business day prior.  Such notice was insufficient for CCI to prepare to defend itself against the depravation of its property rights, and was therefore not meaningful.

164.     The only opportunity to be heard afforded to CCI was during open public comments during the January 9, 2023 Organizational Meeting, and the Board Majority limited CCI's attorney's comments to three (3) minutes.  That hearing was not meaningful and did not allow for the presentation of testimony or the confrontation of adverse witnesses.

165.     The Board Majority's decision was predetermined thus denying any meaningful opportunity to be heard and evincing bias, recklessness, and malice.

166.     The Board or Board Majority also did not provide any post-deprivation hearing.

167.     CCI attempted to administratively appeal the Board's decision rescinding the Contract, pursuant to Ohio's statutory administrative appeal process, to the Lorain County Court of Common Pleas.  CCI's administrative appeal was dismissed by that court because the court

concluded that the Board Majority had failed to afford CCI a quasi-judicial hearing prior to depriving CCI of its contract interests, and without a quasi-judicial hearing in the first instance, no administrative appeal could be heard.

168.    The Board Majority denied CCI its procedural Due Process and abused the power of government by voting in favor of rescinding the Contract on January 9, 2023.  Thereby, the Board and Board Majority deprived CCI of its property interests in the Contract without cause, compensation, notice, or a sufficient opportunity to be heard.  The Board and Board Majority further did so without hearing actual evidence, and did not sit as an impartial tribunal.

169.    By rescinding the Contract in the manner described, the Board and Board Majority extinguished CCI's well-established property interests without affording CCI pre-deprivation procedural rights.  As an administrative action by the Board, the rescinding of the Contract by resolution without sufficient notice and a meaningful opportunity to be heard is an official act subject to the remedies of section 1983.

170.    State remedies for the denial of due process are inadequate and arbitrarily enforced.  CCI's administrative appeal was dismissed in state court in a one page decision that failed to acknowledge that the rescinding of a contract, a firmly established property right, requires due process of law.

171.    Because the Board Majority violated CCI's clearly established right to procedural due process in taking the Contract, the members of the Board Majority are not entitled to qualified immunity.

172.    The Board and the Board Majority's actions constitute a violation of CCI's right to procedural due process under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, damaging CCI and entitling it to relief under 42 U.S.C. § 1983.

## COUNT FIVE

**(Fourteenth Amendment, Denial of Equal Protection, 42 U.S.C. § 1983)**
**AGAINST DEFENDANTS LORAIN COUNTY BOARD OF COMMISSIONERS, DAVID**
**J. MOORE, AND JEFFREY RIDDELL**

173.    CCI incorporates as if fully rewritten herein all prior allegations in this Amended

Complaint.

174.    The right to equal protection prohibits a state actor—here the Board Majority—

from treating CCI differently without proper justification.  Disparate treatment maybe unlawful

if it either burdens a fundamental right, targets a suspect class, or has no rational basis.

175.    Here the Board Majority targeted CCI and its contractual relationship with the

County, intentionally treating it differently from its competitors with whom the County also has

contractual relationships.  The Board Majority's actions were designed to strip CCI of its

property interests for the benefit of CCI's competitors, and the Board Majority had no rational

basis for the difference in treatment.

176.    Instead, as the comments from the members of the Board Majority make clear, the

Board Majority was motivated by animus and ill-will toward CCI.

177.    The Board Majority's decision was not based on any broadly applicable policy or

the like, but instead were resolutions specifically directed at depriving CCI of its property

interests and benefitting Motorola.  In other words, the Board Majority intentionally singled out

CCI for discriminatory adverse treatment.  The Board Majority's rescinding of the Contract is an

official administrative act subject to redress pursuant to 42 U.S.C. § 1983.

178.    The Board Majority's disparate treatment of CCI with animus and ill-will negate

any potential claim of qualified immunity by the Board Majority.

179.    The Board and the Board Majority's disparate treatment of CCI caused damages

to CCI and deprived it of equal protection under the law in violation of the Equal Protection

Clause in the Fourteenth Amendment of the United States Constitution, the Ohio Constitution, and 42 U.S.C. § 1983.

## COUNT SIX

**(Breach of Contract)**
**AGAINST LORAIN COUNTY BOARD OF COMMISSIONERS**

180.    CCI incorporates as if fully rewritten herein all prior allegations in this Amended Complaint.

181.    CCI and the Board entered into the Contract reflected on **EXHIBIT A**, which is a valid, binding, and enforceable contract.

182.    In reliance upon the terms of the executed Contract, CCI immediately began implementing the Contract as required.

183.    CCI performed all duties and obligations required by the Contract through the date of its termination.

184.    The Board materially breached the Contract by taking one or more of the following actions: (1) rescinding the Contract and funding without cause; (2) failing to provide notices required by the Contract; (3) failing to give CCI the opportunity to cure any alleged breach; (4) failing to pay CCI for all equipment purchased, services rendered, and expenses incurred in connection with the Contract; and (5) stating that it was unilaterally rescinding the Contract in terms that were sufficiently clear and unequivocal such as to constitute an anticipatory repudiation of the Contract.

185.    By reason of said breaches, CCI has sustained damages in the form of lost profits and unrecovered costs incurred and other damages in excess of $1,000,000.00, the specific amount to be proven at trial.

## COUNT SEVEN

**(Fourteenth Amendment, Retaliation for Exercise of Constitutionally Protected Right , 42 U.S.C. § 1983 AGAINST DEFENDANT JEFFREY ARMBRUSTER)**

186.    CCI incorporates as if fully rewritten herein all prior allegations set forth above.

187.    CCI engaged in constitutionally-protected conduct under the First Amendment in the filing of this lawsuit.

188.    From at least October of 2023 to December of 2023, Defendant Jeffrey Armbruster has taken adverse action against CCI in instructing first responders and other public employees located in Lorain County not to speak with or otherwise do business with CCI because CCI filed this lawsuit.  Armbruster has further interfered with and blocked performance of CCI's contract with the City of Elyria.

189.    This added retaliation is motivated at least in part by CCI's filing of this federal action seeking redress against defendant Armbruster and others for the violation of rights under federal law and the United States Constitution.

190.    Defendant Armbruster's retaliation is intended to harm and would deter a person of ordinary firmness from exercising the protected right of seeking redress before this Court.

191.    As a result of this retaliation, CCI has suffered damages and it has further been obstructed and delayed in its efforts to supply and service first responders in Lorain County, Ohio.

## COUNT EIGHT

**(Malicious Prosecution – AGAINST DEFENDANT DAVID J. MOORE)**

192.    CCI incorporates as if fully rewritten herein all prior allegations set forth above.

193.    In his August 23, 2021 letter to the Auditor of the State of Ohio seeking a criminal investigation, Moore falsely alleged that CCI was involved in seeking a no-bid contract and implied an improper relationship between CCI and Williamson, including:

I have additional items to share including:

- $102,000 in no bid contracts for 911 to Cleveland Communications 4/28/21.
- Mission Critical (a contractor hired to investigate which system is best for Lorain County) informed me in a meeting with the 911 Director, the president of Cleveland Communication and others on 6/14/21 that we did not need to go out for bid on the $6.7 Million for Cleveland Communications to provide county wide 911 coverage. I had a lot of people contact me about this whole Williamson and Cleveland Communications relationship and can share those comments via phone or in person. When I sternly said I would not allow a no bid contract for 6.7 million I left the meeting and my administrative assistant stayed in the meeting and informed me later that Alan Close the president of Cleveland Communications stated that "Michelle Hung needed to form an alliance with Commissioner Lundy to get this to go to a no bid contract."
- Commissioner Hung approved the hiring of her husband's boss's (Patrick Noble) daughter Hallie Noble without informing anyone of the relationship. Commissioner Hung's husband Jeffery Hung is a national sales manager for Sherwin-Williams. On January 27 2021 she approved a $1200.00 purchase for paint for Sherwin-Williams.
- Commissioner Hung tried to get Solid Waste funds for a project in Avon that was be managed by Patrick Noble a Sherwin-Williams executive and her husband boss. The director of solid waste advised they must go thru the proper channels.
- Commissioner Hung tried to hire brother and pushed for him to get a second interview after the interview board decided that he didn't meet the minimum qualifications.
- Commissioner Hung tried to push the administrator to create a position at Job and Family Services for her sister in-law.
- There are emails that somehow end of last week she has appointed herself the liason and over seer of the 911 department and will be overseeing all expenses .

I would like to provide more supporting documentation and conversations in person or via a phone call. While I am not an attorney, I am confident that the conduct and other information violate many Ethical and Ohio laws.

194.    At the time Defendant Moore made these false allegations concerning CCI's involvement in purported criminal wrongdoing, Defendant Moore knew that the allegations were false or he was recklessly indifferent with regard to their falsity.

195.    In making these false allegations of wrongdoing, Defendant Moore intended that CCI, among others, would be investigated by the Auditor of the State of Ohio and Ohio law enforcement.  Defendant Moore further caused a Cleveland law firm representing Lorain County to send a letter to the Ohio Auditor of State "requesting an investigation into the circumstances related to a potential contract between Lorain County and CCI."

196.    Both the Auditor of the State of Ohio and the Lorain County Sheriff's Office launched investigations of CCI and others referenced in Defendant Moore's letter in reliance

upon the false allegations of criminal and other wrongdoing.  The Auditor of the State of Ohio issued a report in October of 2023, concluding, "(t)his case has been reviewed by three legal attorneys for SIU with no evidence to confirm the allegations" made by Moore.  The Lorain County Sheriff's Office also issued a report in October of 2023, concluding that "no evidence was found that the bidding process was 'rigged or steered,'" and that "(n)one of the complaints forwarded…by Commissioner Moore could be validated by this investigation."

197.    The Auditor of the State of Ohio's and the Lorain County Sheriff's Office's investigation—wrongfully instituted based upon Defendant Moore's knowingly false allegations—have now been fully and completely terminated in CCI's favor.

198.    Defendant Moore used the pendency of these wrongful investigations instituted upon his false allegations as justification to exclude CCI from upgrading emergency communication systems in Lorain County.

199.    As a result of Defendant Moore's malicious prosecution through false allegations, CCI has been damaged in its reputation and with resulting loss of business opportunities.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Cleveland Communications, Inc. demands judgment as follows:

A.    Entering Judgment in favor of the Plaintiff in a final order against each of the Defendants;

B.    Awarding actual damages, treble damages, injunctive and equitable relief, forfeiture as deemed proper by the Court, and attorneys' fees and all costs and expenses of suit from Co-Conspirators, jointly and severally, pursuant to Plaintiff's racketeering claim;

C.      Awarding actual damages as deemed proper by the Court, and attorneys' fees and all costs and expenses of suit from Co-Conspirators, jointly and severally, pursuant to Plaintiff's substantive due process claim;

D.      Awarding actual damages, injunctive and equitable relief, forfeiture as deemed proper by the Court, and attorneys' fees and all costs and expenses of suit from the Board and Board Majority, jointly and severally, pursuant to Plaintiff's equal protection and procedural due process claims;

E.      Awarding actual damages, lost profits, and specific performance from the Board pursuant to Plaintiff's breach of contract claim;

F.      Awarding actual and punitive damages against Defendant Moore for malicious prosecution;

G.      Entering judgment against the Board to nullify the votes to rescind the Contract and set aside funds for payment under the Contract;

H.      Ordering injunctive relief to prevent the continuing retaliation against CCI and the unlawful interference with its continuing efforts to service and supply "the Five Cities Radio System" and other first responders in Lorain County, Ohio;

I.      Enjoining the awarding of the Contract to Motorola;

J.      Granting the Plaintiff the following:

1.      The cost of investigation, reasonable attorneys' fees, and all costs and expenses;

2.      Pre-judgment and post-judgment interest; and

3.      All other and further relief as provided by law and as the Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Federal Civil Rule 38, Plaintiff requests a jury trial of all triable issues alleged herein and on all counts and causes of action.

Respectfully submitted,

*/s/ Allen T. Carter*
Allen T. Carter (0085393)
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, Ohio  43215
Phone:  614.227.2000
Fax:  614.227.2100
Email:            acarter@porterwright.com

Edmund W. Searby  (0067455)
McDaniel M. Kelly (0097628)
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, Ohio  44113-7201
Phone (Edmund):  216-443-2545
Phone (McDaniel):  216-443-2538
Fax:  216-443-9011
Email:            esearby@porterwright.com
                  mkelly@porterwright.com

Dean DePiero (0063629)
DEPIERO LAW
5546 Pearl Road
Parma, Ohio 44129
Phone:  440-884-2400
Email:            DEPIEROLAW@gmail.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 10th day of May 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system and via courtesy email as follows:

Matthew A. Dooley (0081482)
Ryan M. Gembala (0079431)
Patrick M. Ward (0095420)
Stephen M. Bosak, Jr. (0092443)
Michael R. Briach (0097986)
5455 Detroit Road
Sheffield Village, Ohio 44054
Tel:  (440) 930-4001
Fax:  (440) 934-7208
Email: mdooley@dooleygembala.com
rgembala@dooleygembala.com
pward@dooleygembala.com
sbosak@dooleygembala.com
mbriach@dooleygembala.com

*Attorney for Defendants*

*/s/ Allen T. Carter*
Allen T. Carter  (0085393)
*Attorney for Plaintiff*

23455884v9