IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLEVELAND COMMUNICATIONS, INC. | ) | Case No. 1:23-cv-1561 |
| | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE JONATHAN |
| v. | ) | D. GREENBERG |
| | ) | |
| LORAIN COUNTY BOARD OF COMMISSIONERS, *et al.*, | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**PLAINTIFF CLEVELAND COMMUNICATIONS, INC.'S
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

Edmund W. Searby (0067455)
McDaniel M. Kelly (0097628)
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, Ohio 44113-7201
Email: esearby@porterwright.com
        mkelly@porterwright.com

Allen T. Carter (0085393)
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, Ohio 43215
Phone: 614.227.2000
Fax: 614.227.2100
Email: acarter@porterwright.com

Dean DePiero (0063629)
DEPIERO LAW
5546 Pearl Road
Parma, Ohio 44129
Phone: 440-884-2400
Email: DEPIEROLAW@gmail.com

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

I.  Points and Authorities........................................................................................................... 1

II.  Statement of Facts................................................................................................................ 1

III.  Law & Argument ................................................................................................................. 1

    A.  Applicable Legal Standard on Motion to Dismiss................................................... 1

    B.  CCI States Valid RICO Claims................................................................................. 2

    C.  CCI's Breach of Contract Claims Does Not Preclude the Due Process Claims.................. 9

    D.  Count Five Adequately Alleges an Equal Protection Claim................................... 12

    E.  Count Six Adequately Alleges a Breach of Contract Claim Notwithstanding
        the Claimed Lack of a Fiscal Certificate................................................................ 12

    F.  Count Seven Adequately Alleges a First Amendment Retaliation Claim
        Under § 1983........................................................................................................... 14

    G.  Count Eight Adequately Alleges a Malicious Prosecution Claim. ........................ 16

IV.  Conclusion. ....................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K&D Corp. v. Concierge Auctions, LLC*,
   2 F. Supp. 3d 525 (S.D.N.Y. 2014) ...................................................................................5

*A&B Abel Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*,
   73 Ohio St.3d 1 (1995)) ...............................................................................................18

*Anders v. Cuevas*,
   984 F.3d 1166 (6th Cir. 2021) ........................................................................................6

*Archer v. Chachat*,
   165 Ohio St. 286 (Ohio 1956)....................................................................................16, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................2

*Barnes v. City of Beachwood*,
   2006-Ohio-3948 (8th Dist.) .......................................................................................16, 17

*Beck v. Prupis*,
   529 U.S. 494 (2000)........................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................2

*Berryman v. Reiger*,
   150 F.3d 561 (6th Cir. 1998) .........................................................................................15

*Bongyne v. CMFG Life Ins. Co.*, No. 1:18-cv-614,
   2019 U.S. Dist. LEXIS 108068 (S.D. Ohio June 27, 2019) ................................................13

*Bowers v. City of Flint*,
   325 F.3d 758 (6th Cir. 2003) .................................................................................9, 10, 11

*Cana Distribs, LLC v. Portovino*, LLC, No. 20-10659,
   2023 U.S. Dist. LEXIS 79988 (E.D. Mich. May 8, 2023)......................................................12

*Canary v. Osborn*,
   21 F.3d 324 (6th Cir. 2000) ............................................................................................6

*Cataldo v. U.S. Steel. Corp.*,
   676 F.3d 542 (6th Cir. 2012) .........................................................................................12

*Cement-Lock v. Gas Tech. Inst.*, No. 05 C0018,
   2005 U.S. Dist. 22058 (N.D. Ill. Sept. 30, 2005)...............................................................4

*City of Toledo v. Firstar Bank, N.A.*,
  2004-Ohio-5238, 2004 Ohio App. LEXIS 4822 (6th Dist. Sept. 24, 2004) ............................13

*Cockrun v. Berrien Cnty.*,
  101 F.4th 416 (6th Cir. 2024) ...................................................................................................14

*County v. Umbehr*,
  518 U.S. 668 (1996)...................................................................................................................14

*Dipasquale v. Hawkins*,
  748 F. App'x 688 (6th Cir. 2018) ..............................................................................................15

*EJS props., LLC v. City of Toledo*,
  698 F.3d 845 (6th Cir.2012) .......................................................................................................9

*Enertech Elec. v. Mahoning County Comm'rs*,
  85 F.3d 257 (6th Cir.1996) .........................................................................................................9

*Froelich v. Ohio Dep't of Mental Health*,
  114 Ohio St.3d 286 (2007)........................................................................................................17

*Gen. Motors, LLC v. FCA US, LLC*,
  44 F.4th 548 (6th Cir. 2022) ...................................................................................................2, 3

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
  492 U.S. 229 (1989).....................................................................................................................8

*Hensly Mfg. v. Propride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) .....................................................................................................12

*Jackson v. Segwick Claims Mgmt. Svcs, Inc.*,
  731 F.3d 556 (6th Cir. 2013) .......................................................................................................7

*Kaminski v. Coulter*,
  865 F.3d 339 (6th Cir. 2017) ................................................................................................9, 11

*Kennedy v. City of Villa Hills, Ky.*,
  635 F.3d 210 (6th Cir. 2011) .....................................................................................................15

*Khurahana v. Innovative Health Care Sys.*,
  130 F.3d 143 (5th Cir. 1997) .......................................................................................................4

*Koch v. Ohio*,
  No. 3:18-cv-2287, 2020 U.S. Dist. LEXIS 40087 (N.D. Ohio Mar. 9, 2020).........................17

*Lacorte v. Hudacs*,
  884 F. Supp. 64 (N.D.N.Y. 1995)................................................................................................6

*Lasater v. Vidahl*,
  2012-Ohio-4918 (9th Dist.) .......................................................................................................18

*M.J. DiCorpo, Inc. v. Sweeney*,
  69 Ohio St.3d 497, 505 (1994)........................................................................................17, 18

*Marvaso v. Sanchez*,
  971 F.3d 599 (6th Cir. 2020) ...............................................................................................3

*Maybourg v. St. Bernard*,
  No. 1:04-CV-00249, 2006 U.S. Dist. LEXIS 85276, 2006 WL 3803393 (S.D. Ohio
  Nov. 22, 2006) .....................................................................................................................9

*Mishak v. Serazin*,
  No. 1:17-cv-1543, 2018 U.S. Dist. LEXIS 44550 (N.D. Ohio Mar. 19, 2018).......................17

*Moon v. Harrison Piping Supply*,
  465 F.3d 719 (6th Cir. 2006) ...............................................................................................2

*MTGLQ Investors v. The City of Youngstown*,
  No. 4:04CV742, 2006 U.S. Dist. LEXIS 11335 (Mar. 15, 2006)...........................................13

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)...........................................................................................................10

*Norris v. Stanley*,
  73 F.4th 431 (6th Cir. 2023) ................................................................................................1

*R.S.W.W, Inc. v. City of Keego Harbor*,
  397 F.3d 427 (6th Cir. 2005) .............................................................................................14

*Scarborough v. Morgan Cnty Bd. of Educ.*,
  470 F.3d 250 (6th Cir. 2006) .............................................................................................18

*Scott v. Patterson*,
  2003-Ohio-3353 (8th Dist.) ...............................................................................................19

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985)............................................................................................................2

*Spurlock v. Satterfield*,
  167 F.3d 995 (6th Cir. 1999) .............................................................................................18

*Stoll v. Gardner*,
  2009-Ohio-1865 (9th Dist.) ...............................................................................................18

*Taylor Acquisitions, LLC v. City of Taylor*,
  313 F. App'x 826 (6th Cir. 2009) ........................................................................................9

*Thaddeus-X v. Blatter*,
  175 F.3d 378 (6th Cir. 1999) .............................................................................................14

*The Riverside Corp. Trustee v. City of Cincinnati*,
    1st Dist. Hamilton No. C-780794, 1980 Ohio App. LEXIS 11822 (Feb. 27, 1980) ...............13

*Trollinger v. Tyson Foods, Inc.*,
    370 F.3d 602 (6th Cir. 2004) .....................................................................................................3

*United States v. Brewster*,
    408 U.S. 501 (1972)....................................................................................................................6

*United States v. Saadey*,
    393 F.3d 699 (6th Cir. 2005) .....................................................................................................8

*Valot v. Southeast Local Sch. Bd. of Educ.*,
    107 F.3d 1220, (6th Cir. 1997) ...............................................................................................14

*Vild v. Visconsi*,
    956 F.2d 560 (6th Cir. 1992) ...............................................................................................5, 8

*Willitzer v. McCloud*,
    6 Ohio St. 3d 447, 453 N.E.2d 693 (1983) .............................................................................18

**Statutes**

U.S. Const., amend. XIV ...................................................................................................................9

18 U.S.C. § 1513...............................................................................................................................7

18 U.S.C. § 1962...............................................................................................................................3

18 U.S.C. § 1962(b)-(c) ....................................................................................................................7

18 U.S.C. § 1962(d) ..........................................................................................................................9

18 U.S.C. § 1964(c) ..........................................................................................................................2

42 U.S.C. §1983.......................................................................................................................9, 10, 14

R.C. § 5705.42 .........................................................................................................................13, 14

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)......................................................................................................................1

Fed. R. Civ. P. 12(b)(6)....................................................................................................................3

Fed. R. Civ. P. 56.............................................................................................................................3

## I.   Points and Authorities

Plaintiff Cleveland Communications, Inc. ("CCI") pleads detailed federal claims arising from a course of unlawful and unconstitutional conduct causing proximate injury to CCI's business and property. The Defendants responsible understandably seek an early exit from federal court, but fail to justify dismissal. To the contrary, their Motion to Dismiss ignores well-pleaded allegations, and evades the basic requirement at this stage that all allegations be accepted as true and inferences drawn in favor of the plaintiff. Fairly considered, the Second Amended Complaint exceeds the requirement to state a claim to relief that is plausible on its face.

## II.   Statement of Facts

The Second Amended Complaint ("SAC") alleges six claims arising under federal law and two pendent state claims. All eight claims arise from a common nucleus of fact surrounding the corrupt effort to control a multi-million dollar radio contract, to exclude CCI from competing in Lorain County, and to retaliate against CCI for filing this lawsuit. *See* Doc. 24 ("SAC") ¶¶1-5. The specific facts pertinent to this Motion to Dismiss will be addressed below in reference to the arguments raised for dismissal.

## III.   Law & Argument

### A.   Applicable Legal Standard on Motion to Dismiss.

A complaint must generally only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss for failure to state a claim, the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023)(citations omitted). The plaintiff need not

provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For the reasons that follow below, the Second Amended Complaint states claims which are supported by well-pleaded factual allegations and establish claims for relief which are more than plausible on their face.

### B.    CCI States Valid RICO Claims

To state a civil RICO claim, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F. 3d 719, 723 (6th Cir. 2006)(quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). In addition, the plaintiff must show that the conduct "was both a factual and proximate cause of his injury." *Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 559 (6th Cir. 2022). "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purpose.'" *Sedima*, 473 U.S. at 497-98 (internal citations omitted)).

Defendants do not challenge the pleading of most of the elements of a valid RICO claim, but argue that CCI fails to plead the element of "injury" because CCI's only injury is the termination of its contract. They also contend that CCI fails to sufficiently plead the participation of one of the defendants, Jeffrey Armbruster. These arguments fail.

### 1.    CCI Pleads a Plausible Basis for Injury.

RICO affords relief in a civil action to "[a]ny person injured in his business or property by reason of a violation of section 1962…" 18 U.S.C. § 1964(c). To satisfy the injury requirement,

2

the plaintiff must show "that the defendant's violation was both a factual and proximate cause of his injury." *Gen. Motors, LLC*, 44 F.4th at 559. The Sixth Circuit has repeatedly instructed that issues of proximate causation are appropriately deferred to the summary judgment stage and should not be subjected to exacting scrutiny on the pleadings. *See Marvaso v. Sanchez*, 971 F. 3d 599, 607 (6th Cir. 2020); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) ("… causal weaknesses will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6)." (citations omitted)).

Here, CCI alleges: "[a]s a direct and proximate result of the racketeering activity in violation of 18 U.S.C. § 1962, CCI has been injured in its business and property, including but not limited to, by the denial of business opportunities, the rescinding of the Contract for the county-wide radio system (the "Contract"), and the damage to its good will and business reputation." *See* SAC ¶139. CCI further alleges that as a proximate result of the racketeering activity that CCI has been "retaliated against as a result of its unwillingness to pay a bribe; it has been harmed in its business reputation and lost business opportunities as a result of fraudulent representations made about CCI; it has lost business opportunities as a result of one or more acts of mail and wire fraud, extortion, and intimidation…" *Id.* These allegations are further supported by a range of allegations specifically pleading injury. *See, e.g.*, SAC ¶¶4, 12, 15, 36, 37, 49, 75, 76, 79, 120, 123, 125, 126, 127, 136, and 137.

Faced with well-pleaded allegations, Defendants mischaracterize the injury to CCI as only the termination of the Contract. *See* Doc. 25 ("Mot.") at 8 ("The undisputed cause of CCI's injury was the Board's *legislative* decision to rescind the Contract – not the alleged predicate acts." (emphasis in original). While CCI has been indisputably injured by the termination of the Contract – and that is enough – defendants ignore the other injuries also alleged. Separate from the Contract

is the "Five Cities" emergency radio system ("the Five Cities System"), which CCI developed and continues to maintain. SAC ¶¶33-34. As further alleged, the Defendants through a continuing pattern of racketeering activity have sought to impede CCI in its effort to maintain and expand the Five Cities System. *Id.* ¶¶33-36, 123-126, 136, and 137(e),(i). This unlawful conduct has directly and proximately caused damage to CCI by interfering with the maintenance and expansion of the Five Cities System to add new users. *Id.* ¶¶139, 143.

A further injury is the harm to CCI's business reputation and good will. *See, e.g.,* *Khurahana v. Innovative Health Care Sys.*, 130 F. 3d 143, 150 (5th Cir. 1997)(finding plaintiff "pleaded injury to proximately resulting from the defendants' violations of §1962(b) and §1962(c) when he asserted the injury of business reputation harm."); *Cement-Lock v. Gas Tech. Inst.*, 05 C 0018, 2005 U.S. Dist. 22058, *43 (N.D. Ill. Sept. 30, 2005)("...an injury to a plaintiff's business reputation, resulting in concrete economic, contractual, or business losses is compensable under RICO.")

Defendants do not contest that this harm qualifies as RICO injury, but instead claim that CCI's allegations are simply "conclusory." Mot. at 6. Not so. As set forth above, CCI alleges with more than sufficient factual content the false statements resulting in harm to CCI's reputation and loss of business opportunities. *See, e.g.,* SAC ¶¶126, 137(d)-(e). For example, Defendant Moore initiated criminal investigations of CCI which investigations he then cited as a basis for Lorain County not to do business with CCI. SAC ¶¶48, 75, 118, 137(d).[1] Thus, CCI's allegations are more than sufficient to advance this case to discovery.

Moreover, even if all CCI alleged was the termination of the Contract – which as set forth above is not the case – that would be enough to prove injury. CCI need only show injury from one

---

[1] The State Auditor and Sheriff's Office later found Moore's allegations against CCI to be unfounded. *Id.*

of the predicate acts. *See Beck v. Prupis*, 529 U.S. 494, 505-06 (2000)(RICO conspiracy plaintiff must "allege injury from *an act* that is…independently wrongful under RICO." (emphasis added)); *Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992)("We do not hold that a civil RICO plaintiff must necessarily be directly harmed by all the alleged predicate acts, because harm from *one enumerated violation* may, in certain situations, be sufficiently connected." (emphasis added)); *4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 543 (S.D.N.Y. 2014)("…the plaintiff need only allege that it has suffered an injury from *at least one* or more of the predicate acts comprising the RICO violation" (emphasis added)).

Just one of the predicate acts is the solicitation of a bribe in order to win the Contract (a form of extortion), and the resulting opposition after CCI refused to pay. SAC ¶¶29-32, 137(a). CCI further alleges how defendant Moore and his confederates falsely alleged wrong-doing on the part of CCI to deny the Contract. Defendants argue that CCI does not establish how these acts, "if they even happened, played a role in the bidding process for the radio contract. Indeed, CCI concedes that the Board awarded the radio contract to CCI…" Mot. at 3. This argument misconstrues CCI's allegations. Fairly considered, CCI alleges that the falsehoods were relied upon by Defendant Riddell (not a RICO defendant), in voting with Moore *to rescind* CCI's multi-million dollar county-wide contract – a clear injury to CCI. SAC ¶137(e).[2]

---

[2] In addition, the allegations regarding Gollner's solicitation of the bribe support his connection to Defendant Moore, and a reasonable inference that CCI was opposed at least in part for refusing to pay.  SAC ¶¶ 29-32, and 139.

2.  Defendants Are Not Entitled to Legislative Immunity.

Notwithstanding the alleged racketeering activity surrounding the awarding and then the rescission of the contract, Defendants claim absolute immunity for a legislative act. This argument fails for at least two reasons.

First, "[n]ot all governmental acts by local governmental bodies are necessarily legislative in nature" and "it is only with respect to the *legislative* powers delegated to them that an official…is entitled to absolute immunity." *Anders v. Cuevas*, 984 F. 3d 1166, 1181 (6th Cir. 2021) (emphasis added). Even acts that are "legislative in form" may not be "legislative in substance" – i.e., bearing "the hallmarks of traditional legislation" – as is required for absolute immunity. *Id.* at 1181-82. Such a determination involves consideration of a number of factors, and "the burden rests" on Defendants to establish "absolute legislative immunity." *Id.* at 1181 (quoting *Canary v. Osborn*, 21 F. 3d 324, 328 (6th Cir. 2000)). Defendants do not address the relevant factors under the applicable law. Furthermore, because this defense is fact intensive, it is better postponed until there is factual development in discovery. *Anders*, 984 F. 3d at 1182 ("[D]iscovery is necessary before we can determine whether the veto was legislative in substance.").

However, one undisputed fact suggests Defendants will never establish legislative immunity: the vote they claim to be "legislative" simply terminated one specific company's contract, but not the purpose for the contract. *See Anders*, 984 F. 3d at 1182 (not legislative where allegations "suggest…veto was nothing more than an attempt to stop the city from contracting with one specific entity – Area Towing. Such a pointed act does not indicate a larger policy goal or budgetary concern…."); *Canary*, 211 F.3d at 331 ("[T]he resolution proposed by Osborn and

adopted by the Board to not renew Canary's contract did not bear all the hallmarks of traditional legislation" notwithstanding entry indicating that it was motivated by financial considerations.).[3]

Finally, legislative immunity cannot shield responsibility for all wrongdoing. *See United States v. Brewster*, 408 U.S. 501, 526 (1972)("Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act. It is not, by any conceivable interpretation, an act performed as a part of or even incidental to the role of legislator.") As discussed above, CCI alleges a series of RICO predicates distinct from the act of voting to rescind CCI's countywide radio contract, which proximately caused injury to CCI.

3.      The Second Amended Complaint Sufficiently Alleges that Armbruster Participated in a Pattern of Racketeering Activity.

Defendants contend that "CCI pleads very little in the way of cognizable facts related to Armbruster's conduct," and that "(t)here is no allegation that Armbruster's (or Moore's) purported predicate acts were the 'factual and proximate cause' of CCI's alleged injuries – i.e., the loss of the Contract." Mot. at 6-7. These arguments fail.

First, CCI pleads Armbruster's "participation in the operation and management of Lorain County (the enterprise) through a pattern of racketeering activity," SAC ¶136, and his personal involvement in committing predicate crimes. *See id.* ¶¶126, 137. These include: Armbruster's implied threats to disclose Commissioner Hung's extramarital affair unless she denied support to CCI, SAC ¶¶40, 45, and 137; intimidation of a CCI employee seeking to maintain and expand the

---

[3] See also *Lacorte v. Hudacs*, 884 F. Supp. 64, 71 (N.D.N.Y. 1995) (denying absolute legislative immunity because the "adoption of the resolution denying the contract to these alleged low-bidders is more properly characterized as an administrative act.").

Five Cities System, *id.* ¶124; and retaliation against CCI for filing this lawsuit, *id.* ¶126.[4] These allegations plausibly plead Armbruster's participation in violation of 18 U.S.C. § 1962(b)-(c).[5]

Relying on facts outside of the pleadings, Armbruster says he was "not employed by the County at the time" and argues that his alleged confrontation with a CCI employee could not cause injury, but these arguments are immaterial on this motion. CCI's allegations cannot be opposed with defendants own view of the facts, and there is no requirement that Armbruster be formally employed by the enterprise. Furthermore, there is no limitation that each predicate act demonstrating participation in the enterprise also cause injury to the plaintiff. *See Vild*, 956 F. 2d at 569 (Sixth Circuit clarifies that a pattern of racketeering activity may be demonstrated by conduct that did not harm the plaintiff so long as "functionally related" to conduct that did harm plaintiff.).[6]

Moreover, Count Two alleges Armbruster participated in the RICO conspiracy in violation of 18 U.S.C. § 1962(d). "Unlike a substantive RICO charge, a RICO conspiracy does not require proof that the defendant committed any predicate acts." *United States v. Saadey*, 393 F.3d 699, 676 (6th Cir. 2005)(*citing Salinas v. United States*, 522 U.S. 52, 65 (1997)). Moreover, "a RICO conspiracy charge does not even require proof that the defendant "agreed to commit two predicate acts himself, or even that any overt acts have been committed." *Id.* What is required is that the

---

[4] In addition to the RICO predicates identified in ¶137 of the Second Amended Complaint, Armbruster's retaliation qualifies as a violation of 18 U.S.C. § 1513 – also a RICO predicate.

[5] To CCI's understanding, the law in the Sixth Circuit remains unclear whether each defendant must personally commit two predicate acts in violation of RICO. *See Jackson v. Segwick Claims Mgmt. Svcs, Inc.*, reh'g en banc granted and opinion vacated, 731 F. 3d 556 (6th Cir. 2013)("Defendant argues that the plaintiffs must plead that each defendant committed two predicate acts, as opposed to the enterprise as a whole having committed at least two predicate acts. He cites no case law in support of this argument, and we have found none.") Because Defendants do not expressly raise this legal issue, it is not addressed in this opposition. However, while not conceding that two acts are required to be pled as to each defendant (as opposed to at least two acts on the part of the violators as a whole), CCI notes that it has pled at least two predicate acts committed by Defendant Armbruster.

[6] *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) required to demonstrate "a pattern of racketeering activity" a minimum of two predicate acts, relatedness, and continuity, but set no limitation that predicate acts must all cause injury to the same plaintiff.

defendant "intended to further 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] criminal offense [and] it suffices that he adopt the goal of furthering the criminal endeavor." *Id.* (quoting, *Salinas*, 552 U.S. at 65).

In Count Two, CCI alleges that Defendants Moore, Armbruster, and others "agreed, combined, and conspired…to acquire control of the expenditures of Lorain County, including millions of dollars in federal funds through a pattern of racketeering activity…and unlawfully agreed to conduct and participate in the affairs of Lorain County, including its emergency communications and response system, through the pattern of racketeering activity…" SAC ¶142. As to defendant Armbruster, this allegation of agreement to participate is supported by detailed allegations of acts done in furtherance of the Conspiracy. *See* SAC ¶¶124-26, 136, 137(b), (i). This is more than sufficient.

### C.    CCI's Breach of Contract Claim Does Not Preclude the Due Process Claims.

Defendants further challenge both due process claims. Section 1983 affords a cause of action to a person subject to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. §1983. The Fourteenth Amendment provides, in relevant part, that "[n]o state shall…deprive any person of life, liberty, or property, without due process of law…" U.S. Const., amend. XIV. The right to contract is a property right under Ohio law." *EJS props., LLC v. City of Toledo*, 698 F.3d 845, 857 (6th Cir. 2012). A bidder holds "a constitutionally protected property interest in a publicly bid contract" once "awarded." *Enertech Elec. v. Mahoning County Comm'rs*, 85 F.3d 257, 260 (6th Cir. 1996).

Defendants no longer challenge those propositions of law, but argue that the due process claims are barred by "the availability of a state breach-of-contract remedy." Mot. at 10. This argument construes the law too broadly. Sixth Circuit "case law makes clear that a claim for a due-

process violation does not lie where the thrust of the plaintiffs' argument is *simply* breach of contract." *Kaminski v. Coulter*, 865 F. 3d 339, 348 (6th Cir. 2017) (emphasis added); *Taylor Acquisitions, LLC v. City of Taylor*, 313 F. App'x 826, 832 (6th Cir. 2009)("[T]he *only* difference between this case and any other garden-variety breach of contract case is that the City happened to be one of the contracting parties."(emphasis added)).

Here, CCI alleges more than a simple breach of contract; rather, denials of both procedural and substantive due process in rescinding the Contract. *See Maybourg v. St. Bernard*, No. 1:04-CV-00249, 2006 U.S. Dist. LEXIS 85276, at *33, 2006 WL 3803393 (S.D. Ohio Nov. 22, 2006)(rejecting motion to dismiss that "trivialize[d]" a due process claim by asserting that it alleged merely a breach of contract). Defendants do not address the specific allegations or the distinctions between a procedural and substantive due process claim. *See Bowers v. City of Flint*, 325 F. 3d 758, 763-64 (6th Cir. 2003).

"Most, if not all, state-created contract rights" are "assuredly protected by procedural due process..." *Bowers*, 325 F.3d at 763 (*quoting Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990)). The fundamental essence of procedural due process is notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950). Here, CCI alleges in detail how the Board of County Commissioners denied basic due process rights in rescinding the contract. *See* SAC ¶¶86-91, 95, 98-103, 158-166. Accordingly, CCI alleges not *simply* the breach of a contract, but the deprivation of the procedural due process constitutionally required to rescind a state issued contract.

CCI further alleges the inadequacy of post-deprivation state remedies "to address the alleged wrong." *See Bowers,* 325 F.3d at 762 ( procedural due process claim requires pleading and proving the inadequacy of state processes."). On this element, CCI alleges that "state remedies for

the denial of due process are inadequate and arbitrarily enforced. CCI's administrative appeal was dismissed in state court in a one page decision that failed to acknowledge that the rescinding of a contract, a firmly established property right, requires due process of law." SAC ¶167. Defendants counter that there is such an adequate state court remedy in an ordinary breach of contract action, but then on the very next page contend that CCI *does not* have a state court remedy because Lorain County never issued a fiscal certificate. *Compare* Mot. at 10, *with* Mot. at 11. While CCI rightly disputes that the supposed lack of the fiscal certificate bars a contract claim, Defendants' argument that there is no state breach of contract remedy forecloses its argument to dismiss the §1983 due process claim. Defendants cannot have it both ways. Furthermore, the existence of the fiscal certificate and the conduct of the Prosecutor in certifying the Contract is itself at issue and a subject for discovery (Defendants cannot just say it never existed).[7]

In contrast to a procedural due process claim, a substantive due process challenge to the termination of a state contract is rarely colorable. *See Bowers*, 325 F.3d at 763. Such a claim requires a showing that "arbitrary and capricious" state action deprived a constitutionally protected property interest, or that a state actor engaged in behavior that "shocks the conscience." *See Bowers*, 325 F.3d at 763. Here, CCI alleges "arbitrary" and "shocking" conduct distinct from simply breaching a contract, including vile efforts to harm the reputations of CCI and Commissioner Hung so as to control the awarding of the Contract, and apparent efforts to deceive CCI and two Commissioners as to the enforceability of the Contract. See SAC ¶137 (d), (f). Clearly, "the thrust of" CCI's allegations are distinct from "*simply* breach of contract," *Kaminski*,

---

[7] On this point too, Defendants improperly ask the Court to assume facts outside of the four corners of the complaint: that there was never a fiscal certificate. CCI alleges that the Prosecutor "apparently" did not obtain it, SAC ¶107, but that does not mean that the fiscal officer never issued it. The Prosecutor expressly certified to the authorization for the Contract inducing CCI's reliance as to its enforceability. See SAC ¶¶120, 137(f). Furthermore, CCI contends that the fiscal certificate was not required because the Contract was to be funded with federal ARPA funds. See *id.* ¶62.

865 F. 3d at 348, but involve egregious abuses of power that should at least state a substantive due process claim.

### D. Count Five Adequately Alleges an Equal Protection Claim.

Defendants further argue that CCI's Equal Protection claim is also facially deficient because "CCI fails to allege the existence of similarly situated individuals." Mot. at 12. Not so. CCI pleads that Defendants treated CCI differently than its competitors without a rational purpose. *See, e.g.*, SAC ¶2 ("the co-conspirators schemed to steer the contract to Motorola Solutions ("Motorola") for reasons other than the public good, and to exclude CCI from doing business in Lorain County"); ¶175 ("… *intentionally treating it differently from its competitors* …"); and ¶177 ("… resolutions specifically directed at depriving CCI of its property interest *and benefitting Motorola*.") (emphasis added)). In short, CCI plausibly alleges that Defendants have sought to injure CCI and benefit Motorola and others for no legitimate public interest. Indeed, it bears emphasis that after challenging the bid process awarding the countywide contract to CCI as noncompetitive, defendants Moore and Riddell steered the same contract to Motorola for six million dollars more – a seventy-nine percent increase over CCI's contract. SAC ¶128.

### E. Count Six Adequately Alleges a Breach of Contract Claim Notwithstanding the Claimed Lack of a Fiscal Certificate.

While arguing that CCI should be in state court, Defendants argue that the state breach of contract claim is barred by the lack of a fiscal certificate. As an initial matter, this argument improperly depends on facts outside of the Second Amended Complaint – the issuance of the fiscal certificate. *See Hensly Mfg. v. Propride, Inc.*, 579 F. 3d 603, 613 (6th Cir. 2009)(In determining whether a complaint states a claim, "the district court may not consider matters beyond the complaint."). While CCI alleges that defendant Moore schemed with the Prosecutor's Office to withhold the fiscal certificate, SAC ¶78, whether the fiscal certificate actually issued is a matter

12

for discovery. CCI pleads a "valid, binding and enforceable contract," SAC ¶181, including the County Prosecutor's express certification of approval for the Contract. *Id.* ¶78 and Exhibit A.

"A plaintiff generally need not plead the lack of affirmative defenses to state a valid claim." *Cataldo v. U.S. Steel. Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Defendants' misguided effort to dismiss the complaint based upon what amounts to a statutory affirmative defense relying upon facts outside of the operative pleading can only fail. *See, e.g.*, *Cana Distribs., LLC v. Portovino*, LLC, No. 20-10659, 2023 U.S. Dist. LEXIS 79988 *12-13 (E.D. Mich. May 8, 2023)(denying motion to dismiss based upon affirmative defense relying upon facts not on the face of the complaint).

Even if Defendants' argument were somehow procedurally valid – which it is not – the argument should still fail at this stage for at least two reasons. First, Lorain County should be equitably estopped from arguing the invalidity of the Contract because of the lack of a certificate when the County Prosecutor certified that it was "approved as to form." SAC, Ex. A at 4.[8] Here, CCI pleads a valid equitable shield to Lorain County's inequitable surprise of claiming the non-existence of a fiscal certificate after expressly certifying to approval.

Second, even if the fiscal certificate was never issued – a factual issue outside of the CCI's allegations – this fact would still not bar a breach of contract claim. Ohio courts find an exception under R.C. § 5705.42 to the fiscal officer certification requirement where the funding for the contract is to be paid by the federal government. *See e.g.*, *City of Toledo v. Firstar Bank, N.A.*, 2004-Ohio-5238, 2004 Ohio App. LEXIS 4822, at App'x A, *12 (Ohio App. 6th Dist. Sept. 24, 2004) (finding that allocated funds pursuant to § 5705.42 "obviates the requirement of

---

[8] "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. It is available only in defense of a legal or equitable right or claim made in good faith…" *Bongyne v. CMFG Life Ins. Co.*, 2019 U.S. Dist. LEXIS 108068 * 1 (S.D. Ohio June 27, 2019)(quoting *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491 (2006))

§ 5705.41(D)"); *The Riverside Corp. Trustee v. City of Cincinnati*, 1st Dist. Hamilton No. C-780794, 1980 Ohio App. LEXIS 11822, *10, 12 (Feb. 27, 1980) (finding a contract funded by the federal government to be "reliev[ed]… from furnishing such certificate" under § 5705.41(D) since it falls under the § 5705.42 exception); *MTGLQ Investors v. The City of Youngstown*, N.D. Ohio No. 4:04CV742, 2006 U.S. Dist. LEXIS 11335, *7-11 (Mar. 15, 2006)(agreement satisfied § 5705.42 exception even though only 80% of it covered by federal funds). In this case, the source of the funding as specified in the Contract was federal ARPA funds. SAC ¶73 & Ex. A. Accordingly, for this reason, too, Defendants' argument fails as a matter of law.

**F.    Count Seven Adequately Alleges a First Amendment Retaliation Claim Under § 1983.**

CCI alleges that after the filing of this federal action, Defendant Armbruster ordered public employees not to do business with CCI because it filed this lawsuit. SAC ¶¶109-113, 188. Federal law recognizes a section 1983 claim for retaliation against a person for exercising First Amendment rights, including the right of access to the Courts. *See Thaddeus-X v. Blatter*, 175 F. 3d 378, 396 (6th Cir. 1999) (*en banc*) (recognizing federal claim for "adverse action … that would deter a person of ordinary firmness from the exercise of the right at stake."); *Valot v. Southeast Local Sch. Bd. of Educ.*, 107 F.3d 1220, (6th Cir. 1997)("[A] claim of retaliation for exercise of the constitutional right of access is cognizable under section 1983.").

Defendants argue weakly against the federal retaliation claim. First, they offer a straw-man argument that CCI cannot sue for violations of state law, mischaracterizing Count 7 as a state tortious interference claim. Mot. at 16-17.  But CCI does not simply allege state claims, but retaliation for exercising its constitutional right of access. SAC ¶126. "The filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts." *R.S.W.W, Inc. v. City of*

*Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) (citations omitted)). CCI alleges retaliation for the exercise of these First Amendment rights, and such allegations state a claim under Section 1983.

Defendants next offer a cursory suggestion that Armbruster has qualified immunity for his acts of retaliation. But qualified immunity is an affirmative defense and "[d]efendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority." *Cockrun v. Berrien Cnty.*, 101 F.4th 416, 419 (6th Cir. 2024). Defendants offer no such facts. Instead, they try to shift the burden to CCI to cite "precedent that would have put a reasonable official on notice that his specific conduct was lawful." Mot. at 17. While this gambit is not procedurally valid, the precedent is clearly established and offered above. *See also Berryman v. Reiger*, 150 F.3d 561, 567 (6th Cir. 1998)("[I]t has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances.") It was also firmly established that retaliating against a defendant for the exercise of a constitutional right is unlawful. *See County v. Umbehr*, 518 U.S. 668, (1996)(recognizing cause of action for nonrenewal of plaintiff's government contract in retaliation for his exercise of First Amendment rights.) Accordingly, Armbruster lacks qualified immunity because he should have known his conduct was unlawful. *See* SAC ¶126.

Armbruster next throws into the kitchen sink an argument that "CCI cannot establish causation linking Armbruster's alleged retaliatory acts to CCI's lawsuit." Mot. at 17. But CCI alleges that Armbruster in his own words told county employees not to speak to or do business with CCI because it filed this lawsuit. SAC ¶126. This allegation is enough. Nevertheless, Armbruster challenges this motivation as the real cause in light of "the general" motivation to steer contracts to Motorola. Mot. at 18. But a retaliation claim does not require a single motivating

factor. To the contrary, the Sixth Circuit is clear that a retaliation claim only requires proof "that the adverse action was *motivated at least in part* by the plaintiff's protected conduct." *Scarborough v. Morgan Cnty Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)(emphasis added). Indeed, CCI alleges that "[t]his *added retaliation* is motivated *at least in part* by CCI's filing of this federal action seeking redress against Defendant Armbruster and others for the violation of rights under federal law and the United States Constitution." SAC ¶189 (emphasis added). This is enough.[9]

### G.      Count Eight Adequately Alleges a Malicious Prosecution Claim.

Moore submitted a false and defamatory letter to the Ohio Auditor of State to cause it to investigate the knowingly false allegations Moore made. Moore argues that "simply asking for a criminal investigation does not constitute actionable malicious prosecution." Mot. at 18-19. However, Moore is alleged to have not simply asked for a criminal investigation but to have provided false reports. *See* SAC ¶193-196. The Ohio Supreme Court has long recognized that an individual can be liable for malicious prosecution for the submission of false reports:

> If . . . the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible and a prosecution based thereon is procured by the person giving the false information. **In order to charge a private person with the responsibility for the initiation of proceedings by a public official, it must therefore appear** [1] that his desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution *or* **[2] that the information furnished by him upon which the official acted was known to be false**.

*Archer v. Chachat*, 165 Ohio St. 286, 288 (1956) (emphasis added).[10]

---

[9] The Sixth Circuit has recognized that "claims involving proof of a defendant's intent seldom lend themselves to summary disposition." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 218 (6th Cir. 2011) (citation omitted)

[10] Although quoting from *Archer* in asserting that informers who simply provide statements of their belief are not instituting criminal proceedings, Defendants conveniently crop out this key statement from the Ohio Supreme Court. (Doc. 21 at 8).

Defendants reliance upon *Barnes v. City of Beachwood*, 2006-Ohio-3948, ¶20 (8th Dist.), to support the contrary notion that the informant can never be held liable for malicious prosecution is misplaced. In *Barnes*, a state appellate court held that the defendant could not be held liable for omitting the plaintiff's version of events from an investigation report. But CCI's malicious prosecution claim does not rest on an omission, but instead is based on Defendant Moore's intentionally deceptive and false statements maliciously submitted to subject CCI and others to an investigation. SAC ¶¶192-99.

Nor is Defendants' suggestion correct that there can be no malicious prosecution claim because no formal charges were initiated. The very case that Defendants cite for the elements of an Ohio malicious prosecution claim undermines this argument. In *Froelich v. Ohio Dep't of Mental Health*, 114 Ohio St. 3d 286, 289 (2007), the Ohio Supreme Court assumed that presenting evidence to a grand jury was sufficient and cited cases supporting that a grand jury's no-bill of an indictment amounts to a termination in favor of the accused supporting an action for malicious prosecution.[11]

Finally, Ohio does not firmly establish absolute immunity for people who maliciously submit false reports to cause baseless investigations. Moore's contrary argument is at least overstated.[12] In *M.J. DiCorpo, Inc. v. Sweeney* – the primary authority relied upon by the *Barnes* court and Defendants – the Ohio Supreme Court explained that absolute privileges must be

---

[11] *See also Koch v. Ohio*, No. 3:18-cv-2287, 2020 U.S. Dist. LEXIS 40087, at *10-11 (N.D. Ohio Mar. 9, 2020) (indicating that an Ohio law based malicious prosecution claim could be premised on an investigation, despite finding that such a claim had expired because more than a year had passed since the investigation concluded); *Mishak v. Serazin*, No. 1:17-cv-1543, 2018 U.S. Dist. LEXIS 44550, at *14, 23 (N.D. Ohio Mar. 19, 2018) (granting leave to amend to add, among other things, an Ohio law malicious prosecution claim based on a concluded investigation); *cf., Dipasquale v. Hawkins*, 748 F. App'x 688, 692-93 (6th Cir. 2018) (acknowledging – in the Fourth Amendment context – that "malicious prosecution" is broadly defined to include wrongful investigation).

[12] Defendant Moore does not raise this asserted absolute immunity privilege as related to his legislative office, nor could he. Defendant Moore's letter sparking the investigation was not sent as a legislative act of the Board of Commissioners, and Defendant Moore did not have authority in his capacity as a commissioner to direct the activities of the separately elected sheriff. Instead, Defendant Moore's letter was sent in his private, individual capacity.

17

"strictly" limited to legislative proceedings, "judicial proceedings **in established courts of justice**," official acts of chief executive officers, and acts done in military authority. 69 Ohio St. 3d 497, 505 (1994) (emphasis added). Noting that caution, the Ohio Supreme Court extended the absolute privilege to "affidavit[s] or statement[s] submitted to a prosecutor," as such statements are inherently tied to the judicial process. *Id.*; *Barnes*, 2006-Ohio-3948, ¶18 (acknowledging that the absolute privilege is "for statements made in a **judicial proceeding**" (emphasis added).) Moore's letter prompting the Ohio Auditor of State investigation was not made in a judicial proceeding because the investigation into CCI was not launched until after Moore sent his letter. *See Scott v. Patterson*, 2003-Ohio-3353, ¶12 (8th Dist.) (finding a report to a police officer framing an individual who was not currently under investigation was not submitted as part of a judicial proceeding, and therefore, did not enjoy absolute immunity).[13] A prosecutor is not entitled to absolute immunity when performing investigative functions, and so an informant maliciously and falsely submitting a report to initiate investigations should be treated similarly. *See Willitzer v. McCloud*, 6 Ohio St.3d 447, 449, 453 N.E.2d 693, 695 (1983).

Indeed, Ohio Courts have found that only qualified immunity is available to individuals who provide information to law enforcement for the investigation of a purported crime. *Stoll v. Gardner*, 2009-Ohio-1865, ¶37 (9th Dist.) (citing *Leitner v. Vinson*, 1997 Ohio App. LEXIS 9759, at *7 (9th Dist. June 13, 1979).[14] And that qualified immunity can be overcome where – as here – the individual acted with actual malice by providing information with knowledge or reckless disregard of its falsity. *Stoll*, 2009-Ohio-1865, ¶37 (citing *Jacobs v. Frank*, 60 Ohio St.3d 111,

---

[13] *But see Lasater v. Vidahl*, 2012-Ohio-4918, ¶¶8-10 (9th Dist.) (acknowledging a district split on this issue, and extending immunity to bar a false light claim against someone who made a report to police officers).

[14] *See also A&B Abel Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 9 (1995); *cf. also Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999) (explaining that absolute immunity is reserved for "actors 'intimately associated with the judicial phase of the criminal process,'" and that it does not extend to "investigative" activities).

syllabus ¶2 (1991)). Moreover, extending such immunity would be inconsistent with Ohio court decisions indicating that individuals can be held liable for their false reports to law enforcement that result in wrongful pre-judicial criminal proceedings. *See, e.g.*, *Archer*, 165 Ohio St. at 288.

CCI's complaint easily clears the plausibility standard. Moore sent his letter to the Ohio Auditor of State knowing the falsity of the allegations included in it. SAC ¶¶75, 106, 137(d), 192-199. He did so with malice, desiring to use the existence of the Ohio Auditor of State's investigation into Moore's false accusations against CCI as a pretext for rescinding CCI's contract. *Id.*

## IV. Conclusion.

WHEREFORE, for the forgoing reasons, the Motion to Dismiss should be denied.

Respectfully submitted,

/s/ *McDaniel M. Kelly*
Edmund W. Searby (0067455)
McDaniel M. Kelly (0097628)
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, Ohio 44113-7201
Email: esearby@porterwright.com
　　　mkelly@porterwright.com

Allen T. Carter (0085393)
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, Ohio 43215
Ph. 614.227.2000/ F. 614.227.2100
Email: acarter@porterwright.com

Dean DePiero (0063629)
DEPIERO LAW
5546 Pearl Road
Parma, Ohio 44129
Phone: 440-884-2400
Email: DEPIEROLAW@gmail.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE WITH N.D. OHIO L.R. 7.1(f)**

The undersigned hereby certifies that the foregoing complies with the 20-page limit for

dispositive motion memoranda in standard track cases pursuant to N.D. Ohio L.R. 7.1(f).

*/s/ McDaniel M. Kelly*
One of the Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of October 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system and via courtesy email as follows:

Matthew A. Dooley (0081482)
Ryan M. Gembala (0079431)
Patrick M. Ward (0095420)
Stephen M. Bosak, Jr. (0092443)
Michael R. Briach (0097986)
5455 Detroit Road
Sheffield Village, Ohio 44054
Tel: (440) 930-4001
Fax: (440) 934-7208
Email: mdooley@dooleygembala.com
rgembala@dooleygembala.com
pward@dooleygembala.com
sbosak@dooleygembala.com
mbriach@dooleygembala.com

*Attorney for Defendants*

/s/ McDaniel M. Kelly
One of the Attorneys for Plaintiff

21

24858797.2