# IN THE UNITED STATED DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **CLEVELAND COMMUNICATIONS, INC.**, | CASE NO. 1:23-cv-01561 |
| Plaintiff, | JUDGE CHARLES E. FLEMING |
| v. | MAGISTRATE JUDGE JONATHAN D. GREENBURG |
| **LORAIN COUNTY BOARD OF COMMISSIONERS**, *et al.*, | |
| Defendants. | |

### DEFENDANTS' MOTION TO STRIKE THE AFFIDAVIT OF ALAN CLOSE AND OTHER EXHIBITS TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

Defendants Lorain County Board of Commissioners, David J. Moore, Jeffrey Riddell, and Jeffrey Armbruster (collectively, "the County Defendants") request that this Court strike the Affidavit of Alan Close submitted in support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 41-1) as it lacks personal knowledge, is riddled with hearsay, and is otherwise inadmissible. Likewise, Exhibit C (Cleveland.com article) and Exhibit D (collection of blogposts from "Lorain County Politics Unplugged) should be stricken as inadmissible hearsay.

### INTRODUCTION

As the Court is aware, this case stems from CCI's forum-shopping after it voluntarily dismissed state law breach of contract claims set for trial in Lorain County Common Pleas Court. (*See* Defendants' Mot. to Dismiss, Doc. 25). CCI peddles the County's decision to rescind CCI's invalid contract as a RICO conspiracy. (*Id*.). For

reasons more fully set forth in the County Defendants' pending motion to dismiss, CCI's claims are without merit. Rather than accept its fate, CCI now seeks to recast another contract claim as retaliation. This time it is the County's termination of its Tower Lease with CCI that causes CCI to cry foul. However, the Tower Lease permits termination for "any reason," and expressly acknowledges, by its own terms, that it would become "obsolete" and need to be replaced.

CCI's request for injunctive relief is meritless on its face (the County exercised a contractual right that was expressly contemplated by the parties), and so too is the self-serving Affidavit of Alan Close in support (Doc. 41-1). Long on innuendo and short on factual basis, the Affidavit attempts to lend indicia of reliability to statements that are inherently unreliable and inadmissible. Consequently, it should be stricken from the record of this case.

## LAW AND ARGUMENT

### A. Legal standard governing motions to strike affidavits.

A Court has "inherent power to control" its docket, which includes "determining whether to strike documents or portions of documents." *Zep Inc. v. Midwest Motor Supply Co.,* 726 F.Supp.2d 818, 822 (S.D. Ohio 2010). When a motion relies on facts outside the record, affidavits may be used as evidence. Fed. R. Civ. P. 43(c). However, a court may "strike portions of affidavits which are not made upon the affiant's personal knowledge, contain inadmissible hearsay, or make generalized and conclusory statements." *Brunson v. State Farm Fire & Cas. Cas., Co.*, 2008 U.S. Dist. LEXIS 128105, at *4-5 (W.D. Tenn. June 18, 2008) (additional quotations omitted). "Personal knowledge is knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said…it is knowledge of factual truth which does

2

not depend on outside information or hearsay." *Student Res. Ctr., LLC v. E. Gateway Cmty. Coll.*, 2024 WL 3879342, 2024 U.S. Dist. LEXIS 148702, at \*13 (S.D. Ohio Aug. 20, 2024). Hearsay, is "a statement, other than one made by the declarant…offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

"Courts should generally consider a motion to strike an affidavit as a matter of the 'admissibility of the evidence offered in the affidavit, and the competency of the affiant to testify to the matters stated therein.'" *Reed v. City of Memphis*, 735 F. App'x 192, 197 (6th Cir. 2018); citing *Wiberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966). "If a district court cannot distinguish between admissible and inadmissible portions of an affidavit, it must strike the affidavit in its entirety." *Antunes v. Gerdau MacSteel, Inc.*, No. 22-1805, 2023 U.S. App. LEXIS 12152, at \*6 (6th Cir. May 16, 2023).

**B. Most, if not all, of the Close Affidavit should be stricken.**

Close's claim that his Affidavit is made on personal knowledge is plainly false. (Doc. 41-1 at ¶ 1). For example, Close alleges at Paragraph 6: "I have learned that [David Moore and Jeffrey Armbruster] directed significant efforts toward keeping CCI's repeaters off the Burns Road Tower" because they were "focused on blocking CCI from implementing the Five Cities Radio System." But how did Close learn this? From whom? What "significant efforts" were taken? Such generalized, conclusory statements – which rely entirely on hearsay – are inadmissible. *Brunson, supra.*

Similarly unreliable are Close's statements that: (1) he received "text messages and emails from various sources throughout Lorain County," none of which have been identified or entered into evidence; (2) he has "been told [by an unknown, unnamed source at an unknown time] that Commissioner Riddell said to more than one [unidentified] public official" that he doesn't owe CCI any favors; and (3) he has "learned

3

[from an unidentified source] that the Board added an addendum to their contract with Motorola," which is not included as an exhibit. (Doc. 41-1 at ¶¶ 14-17). These are blatant hearsay from unidentified "sources" and should be stricken.

At Paragraph 19, Close claims that "21 agencies" are licensed at the Burns Road Tower site but fails to disclose that CCI is the ***only*** private entity at the site, with the others being agencies or offices of Lorain County. (*See* Declaration of Jeff Riddell, "Riddell Decl." at ¶¶ 22 and 32, submitted in opposition to Plaintiff's Motion). Also in paragraph 19, Close alleges that "many of those agencies have no intent to leave their legacy VHF radio systems." Without a description of any of the research Close allegedly did – or even the names of the entities allegedly researched – such a conclusory statement is inadmissible.[1] Of course, if any of the 21 licensed agencies are also currently on CCI's antiquated network, this option would provide them with an alternative for service should CCI's failure to make alternative tower plans result in its network failing.

The accusations regarding the Lorain County Community College are the most blatant example of Close's complete lack of evidentiary foundation. At the outset, it should be noted that despite knowing for ***20 months*** that CCI's Tower Lease was coming to an end, Close, by his own admission, spent just a single week looking for an alternative location. (Doc. 41-1 at ¶ 24; Riddell Decl. at ¶ 24). More substantively, Close claims that he contacted representatives of the College about access to their tower, but does not identify any representative he spoke with or when. (Doc. 41-1 at ¶ 24). Then, he posits that an unidentified Vice President at the College told him there were "political considerations to take into account." (*Id.*). Jonathan Volpe is the Lorain County Community College Vice

---

[1] If his alleged research were gleaned from conversations with others, that testimony would constitute inadmissible hearsay.

4

President responsible for managing the radio tower. (*See* Declaration of Jonathan Volpe, "Volpe Decl." at ¶ 3, submitted in opposition to Plaintiff's Motion). Mr. Volpe testified that he ***never*** made any such statement to Close, that he has never been contacted by Close or any other representative of CCI, and that no other Vice President at the College has directed any such inquiry towards him. (Volpe Decl. at ¶¶ 5-6, 9-10). Close's allegation suggesting otherwise is simply false.

More incendiary is Close's baseless innuendo toward non-party Lee Armbruster. In the same breath that Close alleges LCCC of withholding access to its tower for political reasons, Close identifies that Mrs. Armbruster is a member of the College Board of Directors and the wife of County Administrator Jeff Armbruster. (Doc. 41-1 at ¶¶ 24-25); (*see also* Doc. 41, at Page ID# 684-685) ("In fact, just over six weeks before the Defendants announced the Tower Lease termination, Defendant Armbruster's wife Less Armbruster was sworn onto the college's Board of Trustees."). Close does not even attempt to tie these facts to any issue relevant to this case. It is pure innuendo, designed to besmirch the good name of an upstanding Lorain County citizen. CCI's gamesmanship should be wholly rejected.

Finally, Close alleges that he has reached out to the owner of another tower but needs more time because it is unclear whether a deal can be reached. (Doc. 41-1 at ¶ 26). Here again, the Court and Defendants are left to simply take Close's word for it, because the unnamed owner cannot be questioned about the nature, timing, or existence of this supposed conversation. Close is perfectly capable of identifying this tower and its owner if those communications took place, but his refusal to do so is telling.

Likewise, the Court should also strike the ridiculous collection of blog posts that CCI attempts to attach as Exhibit D to its motion (Doc. 41-4). The collection of posts,

5

which purport to be from a "Lorain County Politics Unplugged", have no evidentiary foundation. Indeed, the posts do not even get CCI's name right. (*Id.*, at Page ID# 719) (referring to CCI as "Communications Consulting, Inc."). The posts themselves are nothing more than editorialized opinion and pro-CCI propaganda, supported by nothing more than unnamed "sources" and pure conjecture. (*Id.*, at Page ID# 722) ("What happened to CCI wasn't just a business casualty. It was a targeted takedown, orchestrated through board appointments, contract amendments, and institutional intimidation.") CCI's attempts to parade these posts as truth should be rejected. *E.g.*, *Croce v. Sanders*, 843 F. App'x 710, 718 (6th Cir. 2021) (affirming district court's exclusion of news articles as impermissible hearsay); *see also Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 Fed. Appx. 18, 22 (6th Cir. 2020) (finding that newspaper articles constitute inadmissible hearsay). The same is true of Exhibit C, an inadmissible newspaper article that CCI attempts to introduce as fact.

## CONCLUSION

To succeed on its claim for injunctive relief, CCI must show a substantial likelihood of success on the merits. *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012). To satisfy this extraordinary burden, CCI must have overwhelming competent, credible evidence. The best CCI can muster is the self-serving affidavit of Alan Close. It entirely lacks personal knowledge, is replete with conclusory, unattributed statements, and is based upon hearsay. Accordingly, Close's Affidavit should be stricken. The Court should also strike Exhibits C and D of CCI's motion as inadmissible hearsay.

> Respectfully submitted,
> GEMBALA, McLAUGHLIN
> & PECORA CO., LPA
>
> */s/ Ryan M. Gembala*

        Ryan M. Gembala (0079431)
        Scott J. Orille (0069192)
        Stephen M. Bosak, Jr. (0092443)
        Patrick M. Ward (0095420)
        5455 Detroit Road
        Sheffield Village, Ohio 44054
        Tel: (440) 930-4001
        Fax: (440) 934-7208
        Email: rgembala@gmpfirm.com
           sorille@gmpfirm.com
           sbosak@gmpfirm.com
           pward@gmpfirm.com

        *Counsel for Defendants*