## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CLEVELAND COMMUNICATIONS, INC., | ) | CASE NO. 1:23-cv-1561 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| LORAIN COUNTY BOARD OF | ) | **ORDER DENYING** |
| COMMISSIONERS, *et al.*, | ) | **MODIFCATION OF THE** |
| | ) | **CONSENT DECREE** |
| Defendants. | ) | |

Before the Court is Plaintiff's Motion to Modify Consent Decree ("Motion to Modify") (ECF No. 66). Defendants filed an opposition, (ECF No. 67), and Plaintiff a reply in support, (ECF No. 69). For the reasons discussed below, the Motion to Modify is **DENIED**.

## I.        BACKGROUND

On August 20, 2024, Plaintiff Cleveland Communications, Inc. ("CCI") filed a second amended complaint against Defendants Lorain County Board of Commissioners ("Board"), Jeffrey Armbruster, David J. Moore, and Jeffrey Riddell (collectively, "Defendants"). (ECF No. 24). The pleadings generally allege that, after CCI and the Board had entered into a valid contract for CCI to upgrade a countywide emergency radio communications system for Lorain County (the "Contract"), Defendants conspired together to rescind the Contract and retaliate against CCI by excluding it from expanding and servicing radio systems in Lorain County. (*Id.* at PageID #497–516). CCI asserts eight claims for relief based on breach of contract, malicious prosecution, and retaliation, as well as violations of the Racketeer Influenced and Corrupt Organizations Act and the Fourteenth Amendment (due process and equal protection clauses) (*Id.* at PageID #516–32).

1

On September 10, 2025, CCI moved for leave to file a supplement to the second amended complaint pursuant to Fed. R. Civ. P. 15(d) to add two new claims (breach of contract and First Amendment retaliation) against Defendants based on the August 2025 termination of a lease agreement between CCI and the Board ("Motion to Supplement").  (ECF No. 47).  A proposed supplement to the second amended complaint alleged that: (i) in October 2021, CCI and the Board entered a lease agreement whereby CCI was provided space on the Board's tower located at 255 Burns Rd., Elyria, Ohio ("Burns Tower") for CCI to place its communications equipment ("Tower Lease"); (ii) the Tower Lease renews automatically every two years, and had done so in October 2023; (iii) the Board sent a notice of termination to CCI on August 13, 2025; (iv) Defendants had engaged in a pattern of retaliation against CCI after the filing of this action; (v) Defendants Moore and Riddell made public comments that linked the termination of the Tower Lease to this action; and (vi) Defendants breached the Tower Lease by terminating it for unconstitutional reasons (First Amendment retaliation) and failing to provide the required notice under the Tower Lease.  (*See id.*).

CCI also filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to enjoin termination of the Tower Lease ("First TRO Motion").  (ECF No. 41).  The day before a hearing on the First TRO Motion, the parties informed the Court they had reached a settlement.  (Notice [non-document] dated Sept. 16, 2025).  On September 17, 2025, the Court issued a Consent Decree agreed to by all parties.  (ECF No. 56).  Under the Consent Decree: (i) CCI voluntarily withdrew the First TRO Motion; (ii) the parties modified the Tower Lease so that it would extend until March 14, 2026, after which it would not extend and CCI would remove all its equipment; and (iii) all other remaining claims and defenses remained pending.  (*Id.* at PageID #893).

On October 29, 2025, the Court issued an order granting leave to file the proposed First Amendment retaliation claim related to the Tower Lease and denied leave to file the proposed breach of contract claim.  (ECF No. 60).  CCI filed the supplement to the second amended complaint on November 13, 2026. (ECF No. 62).  In response, Defendants filed a renewed motion to dismiss all claims in the second amended complaint and its supplement.  (ECF No. 63).  CCI filed an opposition, (ECF No. 64), and Defendants a reply in support of the renewed motion to dismiss, (ECF No. 65).

On March 5, 2026, CCI filed the instant Motion to Modify.  (ECF No. 66).  CCI requests that the Court modify the Consent Decree to allow CCI to remain a tenant under the Tower Lease until June 15, 2026.  (*Id.* at PageID #1012, 1020).  Defendants filed a timely opposition to the Motion to Modify, (ECF No. 67), and CCI a timely reply in support, (ECF No. 69).  CCI also filed a Second Motion for a Temporary Restraining Order and if Necessary Preliminary Injunction ("Second TRO Motion"), seeking to enjoin Defendants from interfering with CCI's radio system pending resolution of the Motion to Modify.  (ECF No. 68).  At a March 12, 2026 status conference, Defendants agreed to maintain the status quo with respect to the Consent Decree pending resolution of the Motion to Modify.  (Minutes of proceedings [non-document] dated Mar. 12, 2026).  As a result, the Court ordered the parties to preserve the status quo with respect to the Consent Decree and CCI's occupation of the Burns Tower pending resolution of the pending Motion to Modify and denied the Second TRO Motion as moot.  (ECF No. 70).

## II.    LEGAL STANDARD

"Courts . . .  have a duty to enforce, interpret, modify, and terminate their consent decrees as required by circumstance."  *Waste Mgmt. v. City of Dayton*, 132 F.3d 1142, 1146 (6th Cir. 1997).  Under Rule 60(b)(5), a district court may modify a consent decree when its continued

prospective application is no longer equitable.  Fed. R. Civ. P. 60(b)(5); *see* No*rthridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 613 (6th Cir. 2011) (holding that Rule 60(b)(5) applies to motions to modify or vacate consent judgments).  "This rule does not allow modification simply 'when it is no longer *convenient* to live with the terms of a consent decree,' but solely when there is 'a significant change either in factual conditions or in law.'"  *Northridge Church*, 647 F.3d at 613–14 (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383–84, 112 S. Ct. 748, 116 L. Ed. 2d 867 (1992)) (emphasis in original).  "The party seeking to show such a change 'bears the burden of establishing that a significant change in circumstances warrants revision of the decree.'"  *Id.* at 614 (quoting *Rufo*, 502 U.S. at 383).  Notably, "modification of a consent decree is an extraordinary remedy that should not be undertaken lightly."  *Id.* at 614 (quotation marks and citation omitted).

"Modification of a consent decree is appropriate: (1) 'when changed factual conditions make compliance with the decree substantially more onerous,' (2) 'when a decree proves to be unworkable because of unforeseen obstacles,' or (3) 'when enforcement of the decree without modification would be detrimental to the public interest.'"  *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1018 (6th Cir. 1994) (quoting *Rufo*, 502 U.S. at 384).  "But 'modification should not be granted where a party relied upon events that actually were anticipated at the time it entered into a decree.'"  *Id.* (quoting *Rufo*, 502 U.S. at 384).

## III.    ANALYSIS

### A.    Public Interest

CCI first argues that the Consent Decree should be modified because failing to extend the date that it must vacate the Burns Tower would be detrimental to the public interest.  (ECF No. 66, PageID #1016–17).  Reviewing the evidence presented by the parties, the Court finds that CCI has

not met its burden of establishing that its removal would be detrimental to the public.  To support its request, CCI states that removal from Burns Tower would be a threat to public safety because the new MARCS system is not ready to operate in Lorain County, citing a sworn declaration from the President of CCI.  (*Id.* at PageID #1016 (citing ECF No. 66-1, PageID #1029–30, ¶¶ 33–35, 37)).  Defendants do not dispute this statement and there is no evidence to the contrary before the Court.

CCI then states that "emergency radio communications in Lorain County would be forced to return to a radio system that everyone agreed was unreliable and needed to be upgraded."  (*Id.* at PageID #1016–17).  To support this proposition, CCI cites the following paragraph of the second amended complaint:

> In or about February 2019, [Mission Critical Partners, LLC] issued an approximately 275 page report, finding that the current radio system was not a public-grade system and recommending that [Lorain] County modernize its radio system with a phase II trunk simulcast system that had interoperability with the state-sponsored system, known as MARCS.

(ECF No. 24, PageID #497, ¶ 25).  First, these are merely allegations and do not constitute evidence to support modification of the Consent Decree.  Moreover, the alleged report is not in the record and the allegations, even if they are accepted as true, solely demonstrate that the "old system" needs to be modernized and do not necessarily establish that it would be unable to support emergency radio communications.  Finally, there is no evidence that "everyone" agreed the old system was unreliable, only Mission Critical Partners, LLC (and CCI).

Defendants also have their own evidence disputing Plaintiff's position.  Defendants state that they believe "its new system, as well as the legacy system, would provide an appropriate safety net if CCI is incapable of maintaining its system."  (ECF No. 67, PageID #1067).  Defendants cite the sworn declarations of Defendant Jeff Riddel, President of the Board of Commissioners of

Lorain County, and Jeff Young, Lorain County Emergency Services Coordinator, in which they both attest that Lorain County's system would provide a sufficient safety net for emergency calls in Lorain County if CCI had to remove its equipment from the Burns Tower. (*Id.* (citing (ECF No. 43-1, PageID #801, ¶ 21; ECF No. 67-2, PageID #1090, ¶ 20)). CCI's reply adds a declaration by the Chief of Police of Sheffield Village, Ohio, in which he states that if CCI's radio system were "interrupted" the police department would be forced to use the old system which was unreliable. (ECF No. 69-1). This single sworn declaration is not enough to establish a public concern when balanced against the sworn declarations provided by Defendants. CCI, as movant, had the burden and did not present enough evidence, or even explanation, to demonstrate that the removal of its equipment from the Burns Tower would cause a substantial detriment to the public interest.

### B. Significantly Changed Circumstances

Alternatively, CCI argues that "changed circumstances" support modification. (ECF No. 66, PageID #1017–19). To sum up CCI's position, it argues that: (i) before entering into the Consent Decree, it was led to believe that CCI would be welcome to move to the tower located at Lorain County Community College ("LCCC") by counsel for Defendants; (ii) in October 2025, CCI was informed by LCCC that it was waiting to complete a contract with T-Mobile before confirming any lease and LCCC would need to consider the matter at a board meeting scheduled in January 2026; (iii) after the January 2026 board meeting, LCCC informed CCI that the deal with T-Mobile was still not finalized; and (iv) CCI began looking into alternate locations but discovered that these locations involved "unanticipated time for installation of fiber optic connections." (*Id.*).

Defendants respond that CCI is providing a selective reading of the email exchange between the two sides before they entered into the Consent Decree, stating:

> CCI neglects to inform the Court that CCI attempted to incorporate a move to the LCCC Tower into the Consent Decree, but Defendants refused. The rationale was simple: Defendants do not control LCCC: "The Commissioners don't control LCCC, so there's no ability for the Commissioners to do that." (Bosak Decl., at Ex. A). When CCI's counsel raised an issue with Defendants' refusal to include assurances with respect to LCCC, Defendants' counsel again reiterated that Defendants would not agree to such a term. (Id.) ("my clients are not willing to mention LCCC in the consent decree.") These communications came after the FCC approval email that CCI claims to have misinterpreted. Fundamentally, there was no misunderstanding regarding Defendants' position prior to the Consent Decree, . . .

(ECF No. 67, PageID #1065).  The Court has reviewed the email exchange and agrees with Defendants' position that there was no agreement or assurances that CCI would be able to move to the LCCC tower and it was made clear that Defendants had no control over LCCC.  (ECF No. 67-1, PageID #1072–84).  Nor has CCI provided any evidence, aside from speculation, that Defendants have any control over LCCC or influenced LCCC to stall or decline leasing space to CCI.  The Consent Decree also states, per the mutual agreement of the parties, that "The Tower Lease shall not extend, and CCI shall not remain on the Tower, beyond March 14, 2026."  (ECF No. 56, PageID #893, ¶ 3).

LCCC not agreeing to a lease, or delaying an agreement, and unforeseen fiber optic issues are not changed circumstances that were uncontemplated at the time of the Consent Decree.  CCI's ability to move their equipment to LCCC was not a certainty and was not agreed to when the Consent Decree was entered.  CCI was aware that it had six months to remove its equipment from the Burns Tower and find a replacement location.[1]  Doubts as to whether CCI could secure a lease at LCCC should have become apparent at the meeting with LCCC in October 2025.  At that point CCI should have been fully aware that they might need to find a replacement location and that a move to LCCC was uncertain.  It appears that CCI did not actively look for alternative locations

---

[1] It had even more time to look for a replacement location when Defendants originally terminated the lease in August 2025.

7

to LCCC until January/February 2026, (ECF No. 66-1, PageID #1028, ¶ 27), and CCI informed the Court during the March 12, 2026 status conference that it had procured new locations but it now requires an additional two and a half to three months to make those locations suitable. The Court finds that CCI has not established a significant change in circumstances that was either wholly unanticipated at the time it entered into the Consent Decree or which warrants the extraordinary remedy of granting a modification of the Consent Decree. *See Northridge Church*, 647 F.3d at 613–14; *Vanguards of Cleveland*, 23 F.3d at 1018. Accordingly, the Motion to Modify (ECF No. 66) is **DENIED**.

C.      **Contempt**

Defendants request that the Court hold CCI in contempt for violating the Consent Decree and enter a civil contempt fine equal to $500 per day that CCI remains on the Burns Tower. (ECF No. 67, PageID #1067–69). CCI responds that this request is procedurally improper, and argues that the requested $500 figure is unsupported and far exceeds actual damage to Defendants. (ECF No. 69, PageID #1118–20). The Court declines to consider the request for contempt at this time, in light of the parties agreeing to maintain the status quo until the resolution of the pending motions and the Court's preference to resolve such a request with a separate motion and full briefing. Thus, the request for sanctions is **DENIED WITHOUT PREJUDICE**.

IV.      **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Modify (ECF No. 66) is **DENIED.**

     **IT IS SO ORDERED.**

Date: March 20, 2026

_____

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**